No. 25-30128

# In the United States Court of Appeals for the Fifth Circuit

DEEP SOUTH TODAY, doing business as Verite News; GANNET COMPANY, INCORPORATED; GRAY LOCAL MEDIA, INCORPORATED; NEXSTAR MEDIA, INCORPORATED; SCRIPPS MEDIA, INCORPORATED; TEGNA, INCORPORATED,

*Plaintiffs-Appellees/Cross-Appellants*

v.

LIZ MURRILL, in her official capacity as Attorney General of Louisiana; ROBERT P. HODGES, in his official capacity as Superintendent of the Louisiana State Police; HILLAR C. MOORE, III, in his official capacity as District Attorney of East Baton Rouge Parish,

*Defendants-Appellants/Cross-Appellees.*

---

On Appeal from the United States District Court
for the Middle District of Louisiana,
No. 3:24-cv-0623, Hon. John W. deGravelles

---

**OPENING BRIEF OF APPELLANTS**

---

ELIZABETH B. MURRILL
Attorney General of Louisiana

OFFICE OF THE ATTORNEY GENERAL
1885 N. 3rd St.
Baton Rouge, LA 70802
(225) 888-7903
HuettemannC@ag.louisiana.gov

J. BENJAMIN AGUIÑAGA
Solicitor General

ZACHARY FAIRCLOTH
Deputy Solicitor General

CAITLIN A. HUETTEMANN
Assistant Solicitor General

*Counsel for Defendants-Appellants*

## CERTIFICATE OF INTERESTED PERSONS

A certificate of interested persons is not required here because, under the fourth sentence of Fifth Circuit Rule 28.2.1, Appellants—as "governmental" parties—need not furnish a certificate of interested persons.

/s/ Caitlin A. Huettemann
CAITLIN A. HUETTEMANN

## STATEMENT REGARDING ORAL ARGUMENT

Because this appeal raises nuanced issues of law and involves various constitutional claims, Appellants respectfully request oral argument.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ....................................... iii

STATEMENT REGARDING ORAL ARGUMENT .................................iv

TABLE OF AUTHORITIES ..................................................................viii

INTRODUCTION ..................................................................................1

JURISDICTIONAL STATEMENT ..........................................................4

ISSUES PRESENTED ............................................................................4

STATEMENT OF THE CASE ................................................................5

I.   Louisiana Lawmakers Prioritize Protecting Peace Officers. ...........5

II.  Before Act 259 Even Takes Effect, Plaintiff Media Organizations
     Sue the Attorney General, the Superintendent of State Police,
     and the East Baton Rouge Parish District Attorney. ......................7

III. The District Court Denies Defendants' Motion to Dismiss and
     Grants a Preliminary Injunction. .................................................10

SUMMARY OF THE ARGUMENT .......................................................11

STANDARD OF REVIEW....................................................................15

ARGUMENT .......................................................................................17

I.   The District Court Lacks Subject Matter Jurisdiction....................17

     A.   Plaintiffs Lack Article III Standing on Each Claim. ...............18

          1.   Plaintiffs do not have standing for their void-for-
               vagueness claim (Count III). .............................................19

2. Plaintiffs do not have standing for their First Amendment claims (Counts I & II). ...................22

B. Plaintiffs' Claims Are Not Ripe...............................27

C. Attorney General Murrill and Colonel Hodges are Entitled to Sovereign Immunity. ............................30

II. The District Court Erred in Granting the Preliminary Injunction.......................................................36

A. Plaintiffs Are Not Likely to Succeed on the Merits of Their Fourteenth Amendment Void-for-Vagueness Claim...............................................................36

B. The Balance of the Equities Favors the State. .........44

III. Each of Plaintiffs' Claims Fails on its Merits. ...............46

A. Plaintiffs' Fourteenth Amendment Void-for-Vagueness Claim Fails (Count III). .............................47

B. Plaintiffs' First Amendment As-Applied Claim Fails (Count I)............................................................47

1. Act 259 regulates conduct, not speech...............48

2. At most, Act 259 is a content-neutral law with only incidental impact on speech. ...........................52

3. In any event, Act 259 satisfies intermediate scrutiny......53

IV. The District Court Erred in Enjoining Defendants From Enforcing Act 259 Across the State. ..............................59

CONCLUSION ...............................................................61

CERTIFICATE OF SERVICE.............................................63

CERTIFICATE OF COMPLIANCE .......................................................64

# TABLE OF AUTHORITIES

| Cases | Page(s) |
|---|---|

*Ariz. Broads. Ass'n v. Brnovich,*
   626 F. Supp. 3d 1102 (D. Ariz. 2022) .................................................. 49

*Ass'n of Am. Physicians & Surgeons Educ. Found. v. Am. Bd. of Internal Med.,*
   103 F.4th 383 (5th Cir. 2024) ............................................................. 29

*Ass'n of Club Execs. of Dall., Inc. v. City of Dallas,*
   83 F.4th 958 (5th Cir. 2023), *cert. denied,* 144 S. Ct. 1064 (2024) ...................................................................................................... 55

*Attala Cnty., Miss. Branch of NAACP v. Evans,*
   37 F.4th 1038 (5th Cir. 2022) ............................................................. 18

*Barnes v. Felix,*
   No. 23-1239, __ U.S. __, 2025 WL 1401083 (U.S. May 15, 2025) (Kavanaugh, J., concurring) ............................... 5

*Big Tyme Invs., L.L.C. v. Edwards,*
   985 F.3d 456 (5th Cir. 2021)......................................................... 16, 17

*Boos v. Barry,*
   485 U.S. 312 (1988) ............................................................................. 40

*Braidwood Mgmt., Inc., v. EEOC,*
   70 F.4th 914 (5th Cir. 2023) ................................................... 12, 27, 29

*Branzburg v. Hayes,*
   408 U.S. 665 (1972) ................................................................. 24, 50, 51

*Broadrick v. Oklahoma,*
   413 U.S. 601 (1973) ............................................................................. 38

*Brown v. Kemp,*
    86 F.4th 745 (7th Cir. 2023) ............................................................. 52

*Califano v. Yamasaki,*
    442 U.S. 682 (1979) ......................................................................... 60

*Case v. Ivey,*
    542 F. Supp. 3d 1245 (M.D. Ala. 2021), *aff'd*, 2022 WL
    2441578 (11th Cir. July 5, 2022) ..................................................... 42

*Choice Inc. of Tex. v. Greenstein,*
    691 F.3d 710 (5th Cir. 2012) ........................................................... 29

*City of Austin v. Paxton,*
    943 F.3d 993 (5th Cir. 2019) ........................................................... 30

*City of Austin v. Reagan Nat'l Advert. of Austin, LLC,*
    596 U.S. 61 (2022) ........................................................................... 52

*City of Chicago v. Morales,*
    527 U.S. 41 (1999) ................................................................... *passim*

*City of Houston v. Hill,*
    482 U.S. 451 (1987) ......................................................................... 49

*Clapper v. Amnesty Int'l USA,*
    568 U.S. 398 (2013) ......................................................................... 20

*Coates v. City of Cincinnati,*
    402 U.S. 611 (1971) ......................................................................... 40

*Colautti v. Franklin,*
    439 U.S. 379 (1979) ......................................................................... 41

*Ctr. for Individual Freedom v. Carmouche,*
    449 F.3d 655 (5th Cir. 2006) ........................................................... 29

ix

*Daves v. Dallas Cnty.*,
   64 F.4th 616 (5th Cir. 2023) (en banc), *cert. denied*,
   144 S. Ct. 548 (2024) .......................................................... 15

*Deep S. Ctr. for Env't Just. v. EPA*,
   No. 24-60084, __ F. 4th __, 2025 WL 1452098 (5th Cir.
   May 21, 2025) ............................................................. 20, 26

*Dennis Melancon, Inc. v. City of New Orleans*,
   703 F.3d 262 (5th Cir. 2012) ............................................ 16

*Dialysis Newco, Inc. v. Cmty. Health Sys. Grp. Health Plan*,
   938 F.3d 246 (5th Cir. 2019) ............................................ 44

*Dobbs v. Jackson Women's Health Org.*,
   597 U.S. 215 (2022) ....................................................... 44

*Duhe v. City of Little Rock*,
   902 F.3d 858 (8th Cir. 2018) ............................................ 42

*E.T. v. Paxton*,
   19 F.4th 760 (5th Cir. 2021) ............................................ 45

*E.T. v. Paxton*,
   41 F.4th 709 (5th Cir. 2022) ............................................ 17

*FDA v. All. for Hippocratic Med.*,
   602 U.S. 367 (2024) ....................................................... 26

*Gill v. Whitford*,
   585 U.S. 48 (2018) ......................................................... 60

*Gonzales v. Carhart*,
   550 U.S. 124 (2007) ....................................................... 41

*Grayned v. City of Rockford*,
   408 U.S. 104 (1972) ....................................................... 39

*Haverkamp v. Linthicum,*
    6 F.4th 662 (5th Cir. 2021) ................................................. 4

*Hill v. Colorado,*
    530 U.S. 703 (2000) ............................................. 39, 41, 53

*Hines v. Pardue,*
    117 F.4th 769 (5th Cir. 2024) ......................... 48, 49, 53, 54

*Holder v. Humanitarian L. Project,*
    561 U.S. 1 (2010) ...................................... 3, 28, 41, 43

*Hous. Chronicle Publ'g Co. v. City of League City,*
    488 F.3d 613 (5th Cir. 2007) ............................................. 23

*In re Express-News Corp.,*
    695 F.2d 807 (5th Cir. 1982) ............................................. 49

*Int'l Soc'y for Krishna Consciousness of Atlanta v. Eaves,*
    601 F.2d 809 (5th Cir. 1979) ............................................. 23

*James v. Cleveland Sch. Dist.,*
    45 F.4th 860 (5th Cir. 2022) ............................................. 44

*Jiao v. Xu,*
    28 F.4th 591 (5th Cir. 2022) ....................................... 17, 46

*Johnson v. Morales,*
    946 F.3d 911 (6th Cir. 2020) ..................................... *passim*

*Justice v. Hosemann,*
    771 F.3d 285 (5th Cir. 2014) ..................................... *passim*

*Kincaid v. Gov't of D.C.,*
    854 F.3d 721 (D.C. Cir. 2017) (Kavanaugh, J.) ............................ 39, 40

*Kling v. Hebert,*
    60 F.4th 281 (5th Cir. 2023) ............................................. 16

*Kolender v. Lawson,*
461 U.S. 352 (1983) ..................................................................... 38, 40

*Labrador v. Poe,*
144 S. Ct. 921 (2024) ................................................................... 59, 60

*In re Lease Oil Antitrust Litig. (No. II),*
200 F.3d 317 (5th Cir. 2000) ...................................................... 17, 46

*Little v. KPMG LLP,*
575 F.3d 533 (5th Cir. 2009) ............................................................. 16

*LLEH, Inc. v. Wichita Cnty.,*
289 F.3d 358 (5th Cir. 2002) ...................................................... 54, 55

*Magee v. City of S. Padre Island,*
463 F. App'x 377 (5th Cir. 2012) (per curiam) ............................ 37, 39

*Magnolia Marine Transp. Co. v. Laplace Towing Corp.,*
964 F.2d 1571 (5th Cir. 1992) ............................................................. 17

*McCullen v. Coakley,*
573 U.S. 464 (2014) .......................................................................... 53

*Mi Familia Vota v. Ogg,*
105 F.4th 313 (5th Cir. 2024) ................................................... *passim*

*Miss. State Democratic Party v. Barbour,*
529 F.3d 538 (5th Cir. 2008) ........................................ 22, 23, 28, 29

*Monsanto Co. v. Geertson Seed Farms,*
561 U.S. 139 (2010) .......................................................................... 18

*Moody v. NetChoice, LLC,*
603 U.S. 707 (2024) ........................................................ 1, 14, 23, 37

*Morgan v. White,*
    964 F.3d 649 (7th Cir. 2020) ............................................................ 48

*Munn v. City of Ocean Springs,*
    763 F.3d 437 (5th Cir. 2014) ............................................................ 37

*Murthy v. Missouri,*
    603 U.S. 43 (2024) ............................................ 18, 25, 26, 27

*Nat'l Endowment for the Arts v. Finley,*
    524 U.S. 569 (1998) ............................................................ 38

*Nat'l Press Photographers Ass'n v. McCraw,*
    90 F.4th 770 (5th Cir.), *cert. denied sub nom. Nat'l Press*
    *Photographers v. Higgins,* 145 S. Ct. 140 (2024) ...................... *passim*

*Nicodemus v. City of S. Bend,*
    711 F. Supp. 3d 1015 (N.D. Ind. 2024), *aff'd,* No. 24-1099,
    2025 WL 1409737 (7th Cir. May 15, 2025) ................................ *passim*

*Nicodemus v. City of S. Bend,*
    No. 24-1099, __ F.4th __, 2025 WL 1409737 (7th Cir. May
    15, 2025) ...................................................................... *passim*

*NiGen Biotech, L.L.C. v. Paxton,*
    804 F.3d 389 (5th Cir. 2015) ............................................................ 30

*Palmer ex rel. Palmer v. Waxahachie Indep. Sch. Dist.,*
    579 F.3d 502 (5th Cir. 2009) ............................................................ 55

*Perkins v. Hart,*
    No. 22-30456, 2023 WL 8274477 (5th Cir. Nov. 30, 2023) ........... 57, 58

*Reps. Comm. for Freedom of the Press v. Rokita,*
    751 F. Supp. 3d 931 (S.D. Ind. 2024) .................................................. 7

*Roark & Hardee LP v. City of Austin,*
    522 F.3d 533 (5th Cir. 2008) ........................................................ 28, 34

*Robicheaux v. Caldwell,*
    986 F. Supp. 2d 749 (E.D. La. 2013) .................................................. 32

*Seals v. McBee,*
    898 F.3d 587 (5th Cir. 2018), *as revised* (Aug. 9, 2018) ..................... 34

*Smith v. Edwards,*
    88 F.4th 1119 (5th Cir. 2023) ............................................................. 16

*Soc'y of Separationists, Inc. v. Herman,*
    959 F.2d 1283 (5th Cir. 1992) (en banc) ............................................ 19

*Socialist Lab. Party v. Gilligan,*
    406 U.S. 583 (1972) ........................................................................... 28

*Sorrell v. IMS Health Inc.,*
    564 U.S. 552 (2011) ........................................................................... 48

*Speaks v. Kruse,*
    445 F.3d 396 (5th Cir. 2006) .............................................................. 22

*Sw. Airlines Pilots Ass'n v. Sw. Airlines Co.,*
    120 F.4th 474 (5th Cir. 2024) ....................................................... 16, 17

*Swint v. Chambers Cnty. Comm'n,*
    514 U.S. 35 (1995) ....................................................................... 17, 46

*Tanner v. City of Va. Beach,*
    674 S.E.2d 848 (Va. 2009) .................................................................. 40

*Tex. All. for Retired Ams. v. Scott,*
    28 F.4th 669 (5th Cir. 2022) ..................................................... *passim*

*Texas v. United States,*
    523 U.S. 296 (1998) ........................................................................... 29

*Thomas v. Union Carbide Agric. Prods. Co.*,
    473 U.S. 568 (1985) ........................................................... 27

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021) ..................................................... 18, 27

*Turner Broad. Sys., Inc. v. FCC*,
    512 U.S. 622 (1994) ........................................................ 54

*Turner v. Lieutenant Driver*,
    848 F.3d 678 (5th Cir. 2017) .................................... 44, 50, 58

*United States v. Batchelder*,
    442 U.S. 114 (1979) ........................................................ 39

*United States v. Clark*,
    582 F.3d 607 (5th Cir. 2009) ............................................. 38

*United States v. Johnson*,
    911 F.3d 849 (7th Cir. 2018) ............................................. 41

*United States v. Nieves-Castano*,
    480 F.3d 597 (1st Cir. 2007) ............................................. 42

*United States v. Williams*,
    553 U.S. 285 (2008) ........................................................ 38

*Urb. Devs. LLC v. City of Jackson*,
    468 F.3d 281 (5th Cir. 2006) ............................................. 16

*Vill. of Hoffman Ests. v. Flipside*,
    455 U.S. 489 (1982) .................................................... 38, 39

*Villarreal v. City of Laredo*,
    94 F.4th 374 (5th Cir.) (en banc), *cert. granted, judgment
    vacated sub nom. Villarreal v. Alaniz*, 145 S. Ct. 368
    (2024) .............................................................. 24, 50, 51

*Virginia v. Hicks,*
539 U.S. 113 (2003) ........................................................ 48, 51

*Vivint La., LLC v. City of Shreveport,*
213 F. Supp. 3d 821 (W.D. La. 2016) ................................ 55

*Ward v. Rock Against Racism,*
491 U.S. 781 (1989) ........................................................ 38

*Wash. State Grange v. Wash. State Republican Party,*
552 U.S. 442 (2008) ..................................................... 37, 39

*Whatley v. Zatecky,*
833 F.3d 762 (7th Cir. 2016) .......................................... 42

*White Hat v. Landry,*
475 F. Supp. 3d 532 (M.D. La. 2020) ................................ 32

*Williams v. Davis,*
No. 22-30181, 2023 WL 119452 (5th Cir. Jan. 6, 2023) (per
curiam), *cert. denied*, 143 S. Ct. 2464 (2023) ..................... 31

## Statutes

28 U.S.C. § 1292(a)(1) .............................................. 4, 17, 46

La. R.S. 14:109 .......................................................... *passim*

La. R.S. 14:409 ............................................................ 6, 7

La. R.S. 40:1379(A) ...................................................... 34

## Other Authorities

2024 La. Sess. Law Serv. Act 259 .................................. *passim*

Fed. R. Civ. P. 12(b)(1) ................................................ 16

Ind. Code § 35-44.1-2-14 ......................................................57

La. Const. art. IV § 8 ..........................................................32

La. Const. art. V § 26 .........................................................32

## INTRODUCTION

Facial challenges to the law are "hard to win." *Moody v. NetChoice, LLC*, 603 U.S. 707, 723 (2024). As the Supreme Court has reinforced time and time again, courts should, preferably, resolve constitutional claims on a case-by-case basis. *Id.* Doing so, says the Court, avoids the "'speculation' about the law's coverage and its future enforcement" that would "'short circuit the democratic process' by preventing duly enacted laws from being implemented in constitutional ways." *Id.* Bringing a facial claim against a law, "even when a facial suit is based on the First Amendment," thus places a great burden on a plaintiff to prove the statute's unconstitutionality. *Id.*

Plaintiffs here could not meet that burden. As the district court rightly held, Plaintiffs failed to allege a First Amendment facial-overbreadth claim against Louisiana's Act 259, a generally applicable criminal law passed to protect peace officers performing their lawful duties. In the face of an overwhelming number of constitutional applications of the Act, Plaintiffs could only name a single allegedly unconstitutional application—injury to their own professed newsgathering rights. That was not enough.

Plaintiffs' as-applied First Amendment challenge should have failed for similar reasons: To this day, Plaintiffs cannot point to a single application of Act 259, to themselves or anyone else, since the date the Complaint was filed. Without a factual record to support Plaintiffs' claim, the district court plainly lacked jurisdiction to entertain it. Yet even on its merits, the First Amendment challenge is doomed to fail, primarily because Act 259, a conduct-based statute, does not implicate any First Amendment rights at all.

Reading the writing on the wall, Plaintiffs (mid-district-court briefing, no less) switched gears and turned what was a sparsely-mentioned Fourteenth Amendment void-for-vagueness claim into their star argument. Following the trend of other litigants nationwide post-*Moody*, Plaintiffs here attempt to turn a failed pre-enforcement facial First Amendment challenge into a winning pre-enforcement facial vagueness attack. But that effort skirts the text of the statute, improperly mixes First and Fourteenth Amendment standards, and ignores the Supreme Court's caution against the speculation inherent in facial challenges.

Plaintiffs here want to eat their cake and have it, too. They want a

ruling that Act 259 violates their First Amendment rights because it is vague and standardless, and yet they want a ruling that Act 259 violates the Fourteenth Amendment because it chills their newsgathering rights. But these standards don't mix. *Holder v. Humanitarian L. Project*, 561 U.S. 1, 25 (2010). And Plaintiffs cannot have both outcomes without providing an independent legal basis for either. Such a tactic is merely a device to get around the naturally difficult pleading standards attendant to a First Amendment facial challenge by improperly infusing one analysis with the other. This Court should decline to entertain Plaintiffs' artful pleading here.

## JURISDICTIONAL STATEMENT

This Court has appellate jurisdiction over the district court's order because it grants a preliminary injunction based on Plaintiffs' void-for-vagueness claim, *see* 28 U.S.C. § 1292(a)(1), and because it denies state official Defendants' sovereign immunity, *see Haverkamp v. Linthicum*, 6 F.4th 662, 669 (5th Cir. 2021).

## ISSUES PRESENTED

1.      Whether the district court lacked subject matter jurisdiction where (A) Plaintiffs lack Article III standing, (B) Plaintiffs' claims are not ripe, and (C) Attorney General Murrill and Colonel Hodges are entitled to sovereign immunity.

2.      Whether the district court erred in granting an overbroad preliminary injunction based on Plaintiffs' facial Fourteenth Amendment void-for-vagueness claim where that claim is unlikely to succeed on its merits and the equities favor the State.

3.      Whether the district court erred in denying the motion to dismiss Plaintiffs' Fourteenth Amendment void-for-vagueness claim and as-applied First Amendment claim where both claims fail on jurisdiction and on their merits.

# STATEMENT OF THE CASE

## I. LOUISIANA LAWMAKERS PRIORITIZE PROTECTING PEACE OFFICERS.

Police officers regularly face situations fraught with danger to both themselves and the community. ROA.211. Oftentimes, they are left with "no particularly good or safe options," but they remain duty-bound to "avoid[] danger to the community" with "life-or-death decisions that must be made in a few seconds in highly stressful and unpredictable circumstances." *Barnes v. Felix*, No. 23-1239, __ U.S. __, 2025 WL 1401083, at *8 (U.S. May 15, 2025) (Kavanaugh, J., concurring). In Louisiana, it is no different: Twenty-seven Louisiana State Police officers have been killed in the line of duty, with scores more injured. ROA.211.

During the 2024 legislative session, Louisiana lawmakers sought to give officers one more tool to stave off those high risk situations when officers lawfully engage in their law enforcement duties. See 2024 La. Sess. Law Serv. Act 259 (H.B. 173) (codified at La. R.S. 14:109) ("Act 259"). Act 259 criminalizes a "person [] knowingly or intentionally approach[ing] within twenty-five feet of a peace officer who is lawfully engaged in the execution of his official duties after the peace officer has ordered the person to stop approaching or to retreat," La. R.S. 14:109(A),

unless the defendant "neither received nor understood" "the lawful order or command," which was not "capable of being received or understood under the conditions," La. R.S. 14:109(C). Act 259 violations carry a fine of "not more than five hundred dollars" and no more than "sixty days" of prison time. La. R.S. 14:109(D).

Consider what the text of Act 259 actually says. The law "prohibits a person from knowingly or intentionally approaching an officer within 25 feet after being ordered not to approach" or to retreat. *Nicodemus v. City of S. Bend*, No. 24-1099, __ F.4th __, 2025 WL 1409737, at *6 (7th Cir. May 15, 2025). Key to the Act's application is the word "approach," which "triggers the buffer law twice over." *Id.* at *7; *see* La. R.S. 14:409 (entitled "*Approaching* a peace officer lawfully engaged in law enforcement duties" (emphasis added)). *First*, an officer can invoke Act 259 by giving someone an order to "stop approaching." It follows that "[s]omeone who is not 'approaching' in the first place cannot logically be ordered to 'stop approaching'" or to retreat. *Nicodemus*, 2025 WL 1409737, at *7. *Second*, after the order is given, only someone who "knowingly or intentionally approach[es] within twenty-five feet of" the officer violates the Act and so risks criminal liability. La. R.S. 14:409(A);

*see Nicodemus*, 2025 WL 1409737, at *7–8.

Now consider what the text of Act 259 does *not* say. The law does not say "that an officer may use the buffer law to order a person to move *away* to a point that is 25 feet or more from the officer." *Nicodemus*, 2025 WL 1409737, at *8. In other words, any feared floating "forcefield" created by the Act is unfounded and unsupported by the text. *Contra* ROA.224 (quoting *Reps. Comm. for Freedom of the Press v. Rokita*, 751 F. Supp. 3d 931, 948 (S.D. Ind. 2024)); *see* ROA.244, 247. What's more, the Act says nothing at all about newsgathering, video or audio recording, photographing, or the like. *See* La. R.S. 14:409. The Act speaks only to "approaching"—no more, no less.

## II. BEFORE ACT 259 EVEN TAKES EFFECT, PLAINTIFF MEDIA ORGANIZATIONS SUE THE ATTORNEY GENERAL, THE SUPERINTENDENT OF STATE POLICE, AND THE EAST BATON ROUGE PARISH DISTRICT ATTORNEY.

Plaintiffs are a collection of legacy media organizations—operators of newspapers and radio and television stations—who claim to "represent the interest of journalists" that they employ to "cover the activities of Louisiana law enforcement." ROA.18. On July 31, 2024, they sued Louisiana Attorney General Elizabeth Murrill, Superintendent of Louisiana State Police Colonel Robert P. Hodges, and East Baton Rouge

Parish District Attorney Hillar C. Moore, III, all in their official capacities, to declare Act 259 unconstitutional and to enjoin its enforcement. ROA.17. The next day, on August 1, 2024, the Act went into effect.

Plaintiffs claim they "intend to engage in peaceful, nonobstructive newsgathering within 25 feet of law enforcement officers performing their duties in public spaces," like Mardi Gras, the Super Bowl, crime scenes, and public official press conferences. ROA.25; *see* ROA.14–20. With Act 259, in Plaintiffs' view, their employees could not decline an officer's order "to move unreasonably far away" or an attempt "to debilitate or deter non-obstructive newsgathering." ROA.21. That matters, Plaintiffs say, because "25 feet is often too far to obtain a clear line of sight to newsworthy events" and "to reliably capture audio recordings," conduct "interviews," or "ask questions of officers or witnesses." ROA.21–22. Without clear audio and video, Plaintiffs claim to fear, for example, that reporters might "mislead[]" the audience into believing that an illegal arrest was legally sound. ROA.21–22. Plaintiffs separately hypothesize that compliance might be impossible with "fast-moving crowd scenes" and "no way to retreat through a densely packed

crowd where there is not enough space to withdraw without trespassing on private property, or where multiple officers have issued overlapping instructions." ROA.22. Plaintiffs presume their "proposed course of conduct is proscribed by the Act," ROA.25, and so the Act will "burden the exercise of First Amendment rights," ROA.21.

The Complaint contains three § 1983 claims: an "As Applied" First Amendment claim (Count I), a "Facial Overbreadth" First Amendment claim (Count II), and a "Violation of the Fourteenth Amendment (Void for Vagueness)" claim based on *City of Chicago v. Morales*, 527 U.S. 41, 56 (1999) (Count III). ROA.24–28. The Complaint seeks a declaration that "the Act violates the First and Fourteenth Amendments of the Constitution on its face and as applied to Plaintiffs' peaceful, nonobstructive efforts to document officers performing duties in public spaces." ROA.29. They also ask for injunctive relief "restraining Defendants from enforcing the Act"—presumably anywhere and against anyone. ROA.29.

Neither Plaintiffs themselves nor any of their employees have been the subject of the central prerequisite in Act 259—an order to stop approaching or to retreat—much less an arrest for failure to comply with

such an order, or a prosecution under Act 259 by anyone (let alone the named Defendants). ROA.211–12, 215. Nonetheless, Plaintiffs filed a preliminary-injunction motion, seeking injunctive relief along the same lines as the Complaint. ROA.89–126. Defendants thereafter filed a motion to dismiss Plaintiffs' Complaint in its entirety. ROA.173–209.

### III. THE DISTRICT COURT DENIES DEFENDANTS' MOTION TO DISMISS AND GRANTS A PRELIMINARY INJUNCTION.

The parties filed consolidated briefing on Defendants' motion to dismiss and Plaintiffs' motion for preliminary injunction. ROA.85–88, 167–168. The district court held a hearing on both motions on December 11, 2024. ROA.168, 376–423 (Hr. Transcript).

On January 31, 2025, the district court issued its ruling and order, granting in part and denying in part the motion to dismiss and granting the motion for preliminary injunction based on the void-for-vagueness claim. ROA.307. The district court rejected each of Defendants' jurisdictional arguments, finding that Plaintiffs' claims are ripe, that Plaintiffs satisfied the elements of Article III standing for each claim, and that neither Attorney General Murrill nor Colonel Hodges is entitled to sovereign immunity. ROA.316, 324, 326, 335. On the merits, the district court denied Defendants' motion to dismiss the as-applied claim (Count

I), finding that Plaintiffs sufficiently alleged Act 259 is not narrowly tailored. ROA.346. But it granted Defendants' motion to dismiss the facial-overbreadth claim (Count II), holding that Plaintiffs provided "no supporting factual allegations" for that claim. ROA.352. Despite leave to amend to cure those deficiencies, Plaintiffs chose not to amend, so their "facial challenge … is dismissed with prejudice." ROA.366. Finally, the district court denied Defendants' motion to dismiss the void-for-vagueness claim (Count III) and granted Plaintiffs' preliminary-injunction motion on that ground. ROA.359, 362.

Defendants timely filed their notice of appeal. ROA.368–69. Thereafter, Plaintiffs filed a notice of cross-appeal to challenge the court's dismissal of their facial-overbreadth challenge. ROA.370–71.

## SUMMARY OF THE ARGUMENT

**I.** The district court lacked subject matter jurisdiction to entertain Plaintiffs' claims in the first instance. Any and all of these jurisdictional defects warrant reversal and judgment in Defendants' favor.

*Standing.* Plaintiffs lack Article III standing to bring each of their claims against these Defendants, primarily because Act 259 has never been enforced against them. For the vagueness claim, Fifth Circuit

precedent makes clear that a plaintiff who has never been arrested under an allegedly vague criminal statute lacks standing to preemptively challenge that statute under the Fourteenth Amendment's Due Process Clause. *Nat'l Press Photographers Ass'n v. McCraw*, 90 F.4th 770, 782 (5th Cir.), *cert. denied sub nom. Nat'l Press Photographers v. Higgins*, 145 S. Ct. 140 (2024). As for the First Amendment claims, Plaintiffs' exclusive reliance on their purportedly chilled newsgathering as their sole Article III injury collapses under this Court's precedents. Plaintiffs lack the developed factual record required for their as-applied claim, and they are not entitled to any special standing deference simply because of their asserted status as journalists. Nor do Plaintiffs so much as mention any Defendant by name in the factual allegations of their Complaint. As such, Plaintiffs cannot show an injury-in-fact traceable to these Defendants sufficient for Article III purposes.

*Ripeness*. Plaintiffs' claims are also not ripe, for many the same reasons: Act 259 has never been enforced against Plaintiffs or their employees. Plaintiffs have thus failed to show how their claims are "fit for judicial decision," or what "hardship to the parties" would occur if the court withheld consideration. *Braidwood Mgmt., Inc., v. EEOC*, 70 F.4th

914, 930 (5th Cir. 2023). Those ripeness principles are especially strong for facial-overbreadth and void-for-vagueness claims, where Plaintiffs fail to allege any facts that could form the basis for those claims. And there is no practical impediment to Plaintiffs filing an appropriately ripened suit if they actually are subject to an order under Act 259 in the future.

*Sovereign Immunity*. Attorney General Murrill and Colonel Hodges are entitled to sovereign immunity for each of Plaintiffs' claims. Neither has the requisite authority to enforce Act 259 specifically, and Plaintiffs certainly have not demonstrated either's willingness to enforce this law. And, as is clear from Plaintiffs' ripeness and standing problems, there is no "ongoing violation" of federal law sufficient to justify the *Ex parte Young* exception where Act 259 has never been enforced against Plaintiffs by anyone, let alone these Defendants.

**II.** Even setting aside the jurisdictional defects, the district court erred in granting Plaintiffs' request for a preliminary injunction based on the Fourteenth Amendment void-for-vagueness claim. Plaintiffs are not likely to succeed on the merits of that claim, which fails under this Court's void-for-vagueness precedents and the test articulated in the

Supreme Court's fractured decision in *City of Chicago v. Morales*, 527 U.S. 41 (1999). For Act 259 provides fair notice of its requirements and does not vest officers with unfettered discretion to enforce it—and especially not so in every application of the law.

Plaintiffs' dependence on some heightened vagueness scrutiny under their First Amendment right to newsgather is woefully misplaced. The Supreme Court has long rejected injecting the First Amendment into a Due Process analysis. And to do so here based on flawed First Amendment claims would only end-run the Supreme Court's overbreadth rule in *Moody v. NetChoice, LLC,* 603 U.S. 707 (2024). Plaintiffs thus cannot succeed on the merits of their vagueness claim. More, the balance of the equities favors the State, where it and the public have an interest in the enforcement of the law, especially laws like Act 259 passed to ensure public safety.

At a minimum, the district court erred in entering an overbroad injunction that extends beyond the named Plaintiffs to all individuals across the State. As this Court and the Supreme Court have cautioned, such orders exceed a district court's equitable authority. So, at the very least, the Court should vacate the injunction's reach beyond the parties

to this lawsuit.

**III.** Finally, each of Plaintiffs' claims fails on its merits and should have been dismissed. For all the same reasons that Plaintiffs are not likely to succeed on the merits of their vagueness claim, the district court likewise erred in declining to dismiss that claim. For the as-applied First Amendment challenge, Plaintiffs failed to state a claim because Act 259 does not regulate speech at all. At absolute most, it is a conduct-based, content-neutral law of general applicability that only incidentally burdens speech. And the Act plainly survives intermediate scrutiny because it advances the State's important interests in law enforcement and community safety and the efficient administration of justice, and the law reasonably advances those interests. Plaintiffs thus cannot succeed on their as-applied claim.

Accordingly, the Court should reverse the district court's order, vacate its preliminary injunction, and dismiss Plaintiffs' claims for lack of jurisdiction or on their merits.

## STANDARD OF REVIEW

*Jurisdiction.* "[A] federal court may not rule on the merits of a case without first determining its jurisdiction." *Daves v. Dallas Cnty.*, 64 F.4th

616, 623 (5th Cir. 2023) (en banc), *cert. denied*, 144 S. Ct. 548 (2024). Ripeness, standing, and sovereign immunity are all jurisdictional questions to be considered first. *See Urb. Devs. LLC v. City of Jackson*, 468 F.3d 281, 292 (5th Cir. 2006) (ripeness); *Little v. KPMG LLP*, 575 F.3d 533, 540 (5th Cir. 2009) (standing); *Kling v. Hebert*, 60 F.4th 281, 284 (5th Cir. 2023) (sovereign immunity). This Court's review of the denial of a motion to dismiss under Rule 12(b)(1) is de novo. *Sw. Airlines Pilots Ass'n v. Sw. Airlines Co.*, 120 F.4th 474, 481 (5th Cir. 2024).

*Preliminary Injunction*. This Court "review[s] a district court's grant of a preliminary injunction under an abuse-of-discretion standard." *Smith v. Edwards*, 88 F.4th 1119, 1124 (5th Cir. 2023). A preliminary injunction is an "extraordinary remedy," and the "burden of persuasion on all ... requirements" is on the moving party. *Big Tyme Invs., L.L.C. v. Edwards*, 985 F.3d 456, 464 (5th Cir. 2021) (quotation omitted). Indeed, a preliminary injunction "should not be granted unless the party seeking it has clearly carried the burden of persuasion on all four requirements." *Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 268 (5th Cir. 2012) (cleaned up).

"A preliminary injunction is warranted only 'if the movant

establishes: (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest." *Big Tyme Invs., L.L.C.*, 985 F.3d at 463–64 (quotation omitted).

*Motion to Dismiss.* Because the district court's "order[] … granting" the "injunction[]" denied Defendants' motion to dismiss, 28 U.S.C. § 1292(a)(1), that denial is also before this Court—so this Court can reverse and render. *See Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 51 (1995); *Magnolia Marine Transp. Co. v. Laplace Towing Corp.*, 964 F.2d 1571, 1580–81 & n.8 (5th Cir. 1992); *In re Lease Oil Antitrust Litig. (No. II)*, 200 F.3d 317, 319–20 (5th Cir. 2000); *Jiao v. Xu*, 28 F.4th 591, 596–97 (5th Cir. 2022). This Court reviews de novo the denial of a motion to dismiss. *Sw. Airlines Pilots Ass'n*, 120 F.4th at 481.

## ARGUMENT

## I. THE DISTRICT COURT LACKS SUBJECT MATTER JURISDICTION.

Because "Article III jurisdiction is always first," this case need not proceed to the merits. *E.T. v. Paxton*, 41 F.4th 709, 714 (5th Cir. 2022) (quotation omitted). Dismissal is warranted because (A) Plaintiffs lack

standing on each claim against these Defendants, (B) Plaintiffs' claims are not ripe, and (C) Attorney General Murrill and Colonel Hodges are entitled to sovereign immunity.

### A. Plaintiffs Lack Article III Standing on Each Claim.

This appeal can "begin—and—end with standing." *Murthy v. Missouri*, 603 U.S. 43, 56 (2024). As part of the Constitution's "case-or-controversy requirement," a plaintiff must make the tripartite standing showing of: (1) "an injury that is 'concrete, particularized, and actual or imminent'"; (2) that is "fairly traceable to the challenged action"; and (3) that is "redressable by a favorable ruling." *Attala Cnty., Miss. Branch of NAACP v. Evans*, 37 F.4th 1038, 1042 (5th Cir. 2022) (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010)).

Importantly, "standing is not dispensed in gross," which means that "'plaintiffs must demonstrate standing for each claim that they press' against each defendant, 'and for each form of relief that they seek.'" *Murthy*, 603 U.S. at 61 (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021)). And when, as here, a plaintiff seeks "prospective equitable relief, a plaintiff must demonstrate continuing harm or a 'real and immediate threat of repeated injury in the future.'" *Evans*, 37 F.4th

at 1042 (quoting *Soc'y of Separationists, Inc. v. Herman*, 959 F.2d 1283, 1285 (5th Cir. 1992) (en banc)). Plaintiffs cannot establish a single element of standing to support their Due Process and First Amendment claims, let alone all three.

### 1. Plaintiffs do not have standing for their void-for-vagueness claim (Count III).

Plaintiffs' *only* theory of standing for their vagueness claim has been their purportedly chilled newsgathering. ROA.111. But, under this Court's precedent, a plaintiff who has "never been arrested or prosecuted for violating" a criminal statute "lack[s] standing to preemptively challenge [it] under the Due Process Clause." *Nat'l Press Photographers Ass'n*, 90 F.4th at 782. That is because, when "the available evidence suggests that Defendants have never enforced [the statute] against Plaintiffs (or anybody else)," "[t]he issue of whether the [challenged] provisions are unlawfully vague in their proscriptions is therefore a mere hypothetical dispute lacking the concreteness and imminence required by Article III." *Id.*

Much the same here. No "peace officer has ordered [a] person to stop approaching or to retreat" under Act 259. La. R.S. 14:109(A); *see* ROA.212, 215. Even read in the light most favorable to Plaintiffs, the

pleadings show that their alleged injury relies on a chain of contingent events: (1) one of Plaintiffs' employees will approach an officer performing his lawful duties, (2) that officer will order that employee to stop approaching or retreat arbitrarily and indiscriminately, (3) that employee will fall out of compliance with the officer's order—and because the law is vague—(4) she will be arrested for her failure to follow the officer's order to stop approaching or retreat. Not one "of these events is 'certainly impending,' and [Plaintiffs] must show that *all* of them are." *Deep S. Ctr. for Env't Just. v. EPA*, No. 24-60084, __ F. 4th __, 2025 WL 1452098, at *8 (5th Cir. May 21, 2025) (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 (2013)). That is why without evidence of any arrest or prosecution under Act 259, Plaintiffs lack an injury sufficient to assert their void-for-vagueness facial challenge.

To be sure, "vagueness *may* be grounds for a pre-enforcement challenge insofar as it chills protected speech under the First Amendment." *Nat'l Press Photographers*, 90 F. 4th at 782 n.32 (emphasis added). But, as *National Press Photographers* makes clear, it is not enough that a law might "prevent[] [a media plaintiff] from capturing newsworthy subjects cheaply and safely" or that it offers "no specific

exemption for the press." *Id.* at 788. The law must, instead, facially "implicate the First Amendment" to give rise to standing for a vagueness claim. *Id.* at 782 n.32; *accord Johnson v. Morales*, 946 F.3d 911, 928–29 (6th Cir. 2020) ("she only has standing to challenge its purported vagueness as applied to the facts of her case"). Put otherwise: Plaintiffs cannot bootstrap unfounded First Amendment injuries into standing for a void-for-vagueness claim.

Plaintiffs' *only* theory of standing for their vagueness claim thus depends on whether Act 259 implicates the First Amendment on its face. It does not. *See infra* Section III.B. And even the district court flatly rejected that notion: "Nothing in the language of the Act is directed at speech or newsgathering. The application of the Act does not necessarily involve the regulation of speech or newsgathering; rather, the Act is directed at conduct." *Compare* ROA.343 (citations omitted), *with Nat'l Press Photographers*, 90 F.4th at 787–88 ("Nothing in the No-Fly provisions has anything to do with speech or expression."). Accordingly, Plaintiffs lack standing to assert a pre-enforcement facial void-for-vagueness claim.

### 2. Plaintiffs do not have standing for their First Amendment claims (Counts I & II).

Plaintiffs also lack standing to sustain their First Amendment challenges to Act 259. They once again rely exclusively on their purportedly chilled newsgathering as their sole Article III injury. ROA.111. That theory collapses under this Court's precedents for both their facial and as-applied claims.

To begin, this Court evaluates standing for facial and as-applied challenges independently—but some principles overlap. *See Justice v. Hosemann*, 771 F.3d 285, 292 (5th Cir. 2014). "To prove standing to raise a First Amendment facial challenge," "a plaintiff must produce evidence of 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by statute.'" *Miss. State Democratic Party v. Barbour*, 529 F.3d 538, 545 (5th Cir. 2008) (quoting *Speaks v. Kruse*, 445 F.3d 396, 399 (5th Cir. 2006)). Generally, "[i]n First Amendment pre-enforcement challenges, chilling a plaintiff's speech is a constitutional harm adequate to satisfy the injury-in-fact requirement." *Justice*, 771 F.3d at 291 (citation and internal quotation omitted). But even "when a group of plaintiffs has general standing to challenge the constitutionality of a statute, the plaintiffs might not have developed a

sufficiently concrete record to sustain their as-applied challenge." *Id.* at 292; *see Hous. Chronicle Publ'g Co. v. City of League City*, 488 F.3d 613, 618 (5th Cir. 2007).

**a.** For the facial-overbreadth claim, Plaintiffs lacked standing. (Though the district court was correct ultimately to dismiss Plaintiffs' overbreadth claim on the merits. ROA.349–352.) Facial challenges already "strain the limits of the federal courts' constitutional authority to decide only actual 'Cases' and 'Controversies.'" *Moody*, 603 U.S. at 778 (Alito, J., concurring). Alleging a "subjective chill" is thus insufficient. *Justice*, 771 F.3d at 291. Instead, the plaintiff must allege that he is "seriously interested in disobeying" a law, and defendants are "seriously intent on enforcing" it. *Id.* (citation and internal quotation omitted); *see, e.g., Int'l Soc'y for Krishna Consciousness of Atlanta v. Eaves*, 601 F.2d 809, 815 (5th Cir. 1979); *Hous. Chronicle*, 488 F.3d at 619.

On that front, Plaintiffs' only allegation is their serious intent to newsgather. *See* ROA.111. That may be so, but Act 259 does not "proscribe[]" *that* conduct. *See Barbour*, 529 F.3d at 545. The Act proscribes "knowingly or intentionally approach[ing]" an officer after being "ordered … to stop approaching or to retreat." La. R.S. 14:109(A).

Nothing about newsgathering, videoing, recording, broadcasting, reporting, or livestreaming. Nor do Plaintiffs disagree. But abiding by this generally applicable law, they say, might "shut down otherwise-lawful reporting" and "force[]" journalist "to err on the side of caution"—which confers an Article III injury. ROA.112. Respectfully, no.

Plaintiffs want a generalized journalism standing that this Court and the Supreme Court have rejected time and again. Of course, "there is no journalist privilege or immunity from prosecution under generally applicable law." *Villarreal v. City of Laredo*, 94 F.4th 374, 396 (5th Cir.) (en banc), *cert. granted, judgment vacated sub nom. Villarreal v. Alaniz*, 145 S. Ct. 368 (2024). And "the First Amendment does not invalidate every incidental burdening of the press that may result from the enforcement of civil or criminal statutes of general applicability." *Branzburg v. Hayes*, 408 U.S. 665, 682 (1972). Any claim for special status here thus falls flat, where Act 259 constitutes a generally applicable law with no reference to First Amendment-protected activity.

**b.** Those same failures (and more) bleed into Plaintiffs' as-applied standing theory. For a "developed factual record is essential" for an as-applied First Amendment claim. *Justice*, 771 F.3d at 292. After all,

federal courts redress only injuries that are "concrete, particularized, and actual or imminent." *Murthy*, 603 U.S. at 57. Where "plaintiffs request forward-looking relief, they must face 'a real and immediate threat of repeated injury'" caused by *these* defendants. *Id.* at 58. And "[p]articularized facts are what allow a court to issue a narrowly tailored and circumscribed remedy" that an as-applied claim requires. *Justice*, 771 F.3d at 292.

When "the record is bereft of facts," however, courts risks that "the scope of [any] as-applied ruling [will] necessarily [be] vague, and the hallmarks of a traditional as-applied remedy—dependability and a limited scope—[will be] entirely absent." *Id.* at 294. So, without "a sufficiently specific record," courts must "decline[] to issue as-applied remedies"—even in First Amendment cases. *Id.* (collecting cases). Precisely so here: There is no as-applied record upon which to tailor a remedy because Act 259 has never been applied by these Defendants, much less to these Plaintiffs, ROA.212, 215—or anyone as far as Defendants know.

Nor do the magic "chilling effect" words evade that Article III minimum, as the district court suggested. *See* ROA.321–322 ("Regarding

their as-applied claim, Plaintiffs have alleged a chilling effect on newsgathering, a protected First Amendment right."). *Justice* proves the opposite. The *Justice* plaintiffs argued that the law there "creat[ed] a significant chilling effect that has prevented—and continues to prevent—the Plaintiffs and other similarly situated groups from exercising their constitutional rights of free speech and association." 771 F.3d at 290. In fact, the entire point of that lawsuit was that "Mississippi's disclosure laws [would] chill their political speech." *Id.* at 291. Yet that was not enough for Article III standing to assert an as-applied claim. *Id.* So here.

**c.** One more standing problem also looms: Even if the chilling effect alone were a cognizable injury (it is not under *Justice*), Plaintiffs also have failed to show "any concrete link between their injuries and the [D]efendants' conduct," *Murthy*, 603 U.S. at 76, a "heavily fact-dependent" determination, *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 383 (2024). "That requirement serves 'to ensure that in fact, the asserted injury was the consequence of'" Defendant's action. *Deep S. Ctr.*, 2025 WL 1452098, at *11 (quoting *Murthy*, 603 U.S. at 69 n.8). Yet across eight pages of "Factual Allegations," Plaintiffs never mention a single Defendant, instead "treat[ing]" them "as a unified whole," even though

the Supreme Court's "decisions make clear that 'standing is not dispensed in gross.'" *Murthy*, 603 U.S. at 61 (quoting *TransUnion*, 594 U.S. at 431). Accordingly, Plaintiffs altogether fail to allege how their supposed injury (for any claim) is traceable to *these* Defendants.

## B. Plaintiffs' Claims Are Not Ripe.

Those standing deficiencies likewise require dismissal on ripeness grounds. The day before Act 259 even became law, Plaintiffs sought to enjoin officers statewide from issuing an order that no officer has ever issued before. ROA.29. Those claims are not ripe because (1) they are not "fit for judicial decision," and (2) there would be no "hardship to the parties" if the court withheld its consideration. *Braidwood Mgmt.*, 70 F.4th at 930.

**1.** A claim is "'fit for judicial decision' if it presents a pure question of law that needs no further factual development." *Id.* If a claim is "contingent [on] future events that may not occur as anticipated, or indeed may not occur at all," then the claim is not ripe. *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580–81 (1985). So here.

Plaintiffs' fundamental ripeness problem is that no "peace officer has ordered [a] person to stop approaching or to retreat" under Act 259.

La. R.S. 14:109(A); *see* ROA.212, 215. Yet the district court concluded a "factual inquiry"—and thus "further factual development"—is "not necessary" for "facial and vagueness challenges" and "certainly impending" enforcement is enough for the as-applied claim. ROA.315. But the exact opposite is true under this Court's precedents.

Ripeness principles are especially strong for claims of facial-overbreadth and void-for-vagueness. "In the context of pre-enforcement review, which is still the case for the uncharged Plaintiff, examining facial vagueness is often difficult, perhaps impossible, because facts are generally scarce." *Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 547 (5th Cir. 2008). For "'gradations of fact or charge would make a difference as to criminal liability,' and so 'adjudication of the reach and constitutionality of [the statute] must await a concrete fact situation.'" *Holder*, 561 U.S. at 25 (citation omitted); *see Socialist Lab. Party v. Gilligan*, 406 U.S. 583, 587–88 (1972).

Pre-enforcement suits do not change that "the existence and extent of" purportedly unconstitutional applications of a statute "are factual questions that cannot be assessed until [the State] has made some effort to enforce the existing law." *Barbour*, 529 F.3d at 547. And nearly always

"'[t]he operation of the statute is better grasped when viewed in light of a particular application.'" *Id.* (quoting *Texas v. United States*, 523 U.S. 296, 301 (1998)). The district court's merits analysis only proves the point: It assumes an entirely hypothetical officer issuing an Act 259 order "for no reason at all," thereby subjecting "every person … to the arbitrary and discriminatory enforcement of the Act." ROA.358–359. That is the precise "speculation" that the fitness prong guards against. *See Braidwood Mgmt.*, 70 F.4th at 926.

**2.** Plaintiffs also face no hardship from denying review at this time. *See Ass'n of Am. Physicians & Surgeons Educ. Found. v. Am. Bd. of Internal Med.*, 103 F.4th 383, 396 (5th Cir. 2024). The type of hardship relevant to ripeness "inhere[s] in legal harms, such as the harmful creation of legal rights or obligations; practical harms on the interests advanced by the party seeking relief, and the harm of being forced to modify one's behavior in order to avoid future consequences." *Choice Inc. of Tex. v. Greenstein*, 691 F.3d 710, 715 (5th Cir. 2012) (cleaned up). It also "must arise from a fear of prosecution that is not 'imaginary or wholly speculative.'" *Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, 660 (5th Cir. 2006) (citation omitted). Here, Act 259 creates no legal

rights or obligations, nor does it force anyone to modify behavior—absent specific circumstances and a yet-issued order. In fact, Plaintiffs "routinely encounter … members of the State Police" and come in "close contact with officers from a range of law enforcement agencies." ROA.18. So there is no practical impediment to Plaintiffs filing an appropriately ripened suit if they actually are subject to an order under Act 259.

**C. Attorney General Murrill and Colonel Hodges are Entitled to Sovereign Immunity.**

Attorney General Murrill and Colonel Hodges, in their official capacities, are also entitled to sovereign immunity. *See City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019) (official capacity claims against state officials "are effectively suits against a state"). Nor can Plaintiffs invoke the *Ex parte Young* equitable exception, which "permits plaintiffs to sue a state officer in his official capacity for an injunction to stop ongoing violations of federal law." *Tex. All. for Retired Ams. v. Scott*, 28 F.4th 669, 671 (5th Cir. 2022). The district court was wrong to conclude otherwise for at least two independent reasons.

**1.** Plaintiffs do not allege any "ongoing violation[] of federal law. *Id.* But for *Ex parte Young* to apply, "a complaint must allege that the defendant *is violating* federal law." *NiGen Biotech, L.L.C. v. Paxton*, 804

F.3d 389, 394 (5th Cir. 2015). Where a state official "neither enforced the challenged statute against anyone nor threatened to do so," there is no "ongoing conduct" sufficient to trigger *Ex parte Young. Mi Familia Vota v. Ogg*, 105 F.4th 313, 332–33 (5th Cir. 2024); *see, e.g.*, *Williams v. Davis*, No. 22-30181, 2023 WL 119452, at *6 (5th Cir. Jan. 6, 2023) (per curiam), *cert. denied*, 143 S. Ct. 2464 (2023).

Plaintiffs all but concede they sued before Act 259 had any effect. *See* ROA.12. And their repeated claim that Act 259 "*will* directly burden the exercise of First Amendment rights," ROA.21, 23 (emphasis added), effectively admits that there is no *ongoing* violation of federal law right now. That alone forecloses any invocation of *Ex parte Young*.

**2.** Even if an ongoing violation exists (it does not), Plaintiffs do not allege that Attorney General Murrill and Colonel Hodges have the requisite authority to enforce Act 259. To invoke *Ex parte Young*, a plaintiff must allege that "the officer sued has some connection with the enforcement of the challenged act." *Scott*, 28 F.4th at 672 (cleaned up). Although the Fifth Circuit's conception of "how much of a 'connection' has been hard to pin down," "some guideposts have emerged": (1) "an official must have more than the general duty to see that the laws of the state

are implemented"; (2) "the official must have the particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty"; and (3) "enforcement means compulsion or constraint." *Id.* (cleaned up). As to the last requirement, "[i]f the official does not compel or constrain anyone to obey the challenged law, enjoining that official could not stop any ongoing constitutional violation." *Id.* The Complaint fails under each of these guideposts.

For Attorney General Murrill, the Complaint emphasizes that she is the chief legal officer of the State, and so may, "upon the written request of a district attorney, … advise and assist in the prosecution of any criminal case." ROA.16 (quoting La. Const. art. IV § 8). But these are just allegations that Attorney General Murrill has a "general duty to see that the laws of the state are implemented," which is insufficient. *Scott*, 28 F.4th at 672. Indeed, "the Attorney General only has the authority to advise and assist in the prosecution of a criminal case upon request of a district attorney, and/or when authorized for cause by a court which would have original jurisdiction." *White Hat v. Landry*, 475 F. Supp. 3d 532, 549 (M.D. La. 2020) (citing La. Const. art. IV § 8, art. V § 26); *see Robicheaux v. Caldwell*, 986 F. Supp. 2d 749, 752 (E.D. La. 2013) ("The

Attorney General's sweeping responsibility to enforce the laws of the State of Louisiana lacks the *Ex parte Young* specificity nexus between the Attorney General and the alleged unconstitutional provisions that is essential to defeat sovereign immunity.").

Skirting that commonsense conclusion, Plaintiffs claim that the Attorney General recently entered a cooperative endeavor agreement with the Orleans Parish District Attorney that would give her authority "to prosecute any and all criminal matters in Orleans Parish resulting from an arrest or investigation conducted by Louisiana State Police." ROA.17; *see* ROA.333. But that nebulous political agreement is a far cry from an allegation that Attorney General Murrill has a "particular *duty* to enforce" *this* Act through "compulsion or constraint." *Scott*, 28 F.4th at 672 (emphasis added). Without that direct nexus, Attorney General Murrill "is not a proper defendant under *Ex parte Young*" and the claims against her must be dismissed. *Id.* And, at a minimum, any purported exception to sovereign immunity arising from the agreement would extend only to the scope of that agreement—Orleans Parish. *See* ROA.17.

As for Colonel Hodges, the Complaint emphasizes that he is the Superintendent of the Louisiana State Police, who is charged to "prevent

and detect crime, apprehend criminals, enforce the criminal and traffic laws of the state, [and] keep the peace and good order in the state in the enforcement of the state's police powers." ROA.17 (citing La. R.S. 40:1379(A)). But again, such allegations of a "general duty to see that the laws of the state are implemented" are insufficient. *Scott*, 28 F.4th at 672. Plaintiffs do not allege that Colonel Hodges would implement Act 259 through "compulsion or constraint." *Id.* Their allegations stray afield from ordinary examples of compulsion and constraint like "prohibiting payment of claims under [an] abortion statute," "rate-setting," "sending letters threatening formal enforcement," or a "threat of criminal prosecution." *City of Austin*, 943 F.3d at 1001–02 (collecting cases). These examples underscore that *Ex parte Young* does not save Plaintiffs' claims against Colonel Hodges.

As a final point, neither Attorney General Murrill nor Colonel Hodges has shown "a demonstrated willingness" to exercise any duty to enforce Act 259.[1] On all fours is *National Press Photographers*

---

[1] The district court held that Attorney General Murrill's and the State Police's failure to disavow enforcing the Act constitutes an additional basis for *Ex parte Young*'s application. ROA.334. In doing so, the court relied solely on *Seals v. McBee*, 898 F.3d 587 (5th Cir. 2018), *as revised* (Aug. 9, 2018), a standing case that did not address sovereign immunity or *Ex parte Young* at all. *But see Mi Familia Vota*, 105 F.4th at 330 ("[W]hat is sufficient for standing will not necessarily establish an

*Association v. McCraw*, 90 F.4th 770 (5th Cir. 2024). Like there, Plaintiffs here do not even allege that Defendants or their agencies actually enforced the Act or attempted to prosecute anyone for an alleged violation of the Act—"not even a scintilla of enforcement. Not even an iota of a scintilla. Zilch." *Id.* at 786; *see* ROA.212, 215. Even if "the *assumed* substantial threat of future enforcement" qualifies as an injury-in-fact under the Article III standing analysis, *supra* Section I.A., such a conclusion "does not necessarily conflict with the fact that Defendants have not shown a demonstrated willingness to exercise [any alleged] enforcement duties under *Ex parte Young*." *Nat'l Press Photographers*, 90 F.4th at 786. Put otherwise: The *Ex Parte Young* analysis does not relax for a First Amendment case. *See id.* Attorney General Murrill and Colonel Hodges are plainly entitled to sovereign immunity.

\* \* \*

The district court lacked jurisdiction over Plaintiffs' claims since the day the Complaint was filed. Any of these jurisdictional defects warrants reversal and dismissal of Plaintiffs' Complaint in its entirety.

---

enforcement connection."). No holding by this Court regarding state officials' sovereign immunity has ever required such officials to affirmatively disavow enforcement of a law to be entitled to immunity—because no such rule exists.

## II. THE DISTRICT COURT ERRED IN GRANTING THE PRELIMINARY INJUNCTION.

Even if the district court had jurisdiction to entertain Plaintiffs' claims, it erred in granting a preliminary injunction based on the void-for-vagueness challenge because (A) Plaintiffs are not likely to succeed on the merits of that claim, and (B) the balance of the equities favors the State.

### A. Plaintiffs Are Not Likely to Succeed on the Merits of Their Fourteenth Amendment Void-for-Vagueness Claim.

Plaintiffs originally billed this case as a watershed First Amendment lawsuit. *See* ROA.11–30. That is until Defendants pointed out that a plaintiff's First Amendment challenge to a near identical law in Indiana was correctly dismissed for a multitude of reasons in a thorough opinion by the Southern District of Indiana. *See Nicodemus v. City of S. Bend*, 711 F. Supp. 3d 1015, 1025 (N.D. Ind. 2024), *aff'd*, No. 24-1099, 2025 WL 1409737 (7th Cir. May 15, 2025). The Seventh Circuit's affirmation of that opinion since only confirms what was true all along: Plaintiffs are exceedingly unlikely to succeed on their First Amendment claims. *See Nicodemus*, 2025 WL 1409737, at *11; *accord* ROA.350.

So Plaintiffs pivoted. Surprisingly, it was to their scarcely mentioned facial void-for-vagueness claim based on the Fourteenth

Amendment, ROA.27–28, 122–24—notwithstanding this Court's precedent foreclosing pre-enforcement standing for that claim, *supra* Section I.A.1. Jurisdiction aside, Plaintiffs' vagueness claim is an empty repackage of their facial-overbreadth claim to dodge the burdens of *Moody v. NetChoice, LLC*, 603 U.S. 707 (2024). Nonetheless, it fails under this Court's void-for-vagueness precedents and the test articulated in the Supreme Court's fractured decision in *City of Chicago v. Morales*, 527 U.S. 41 (1999).

"Vagueness doctrine is an outgrowth not of the First Amendment, but of the Due Process Clause." *Munn v. City of Ocean Springs*, 763 F.3d 437, 439 (5th Cir. 2014). But "facial challenges [are] hard to win"—First Amendment and Due Process Clause alike. *Moody*, 603 U.S. at 723. For that reason, this Court makes even "facial vagueness challenges … generally 'disfavored for several reasons'"—not least "the fact that facial invalidity claims often 'rest on speculation.'" *Magee v. City of S. Padre Island*, 463 F. App'x 377, 380 (5th Cir. 2012) (per curiam) (quoting *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450 (2008)); *see supra* Sections I.A, B. So Plaintiffs' proposed "[f]acial invalidation 'is, manifestly, strong medicine' that 'has been employed by the Court

sparingly and only as a last resort.'" *Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 580 (1998) (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973)).

"To be unconstitutionally vague, a statute must be impermissibly vague in *all its applications,* including its application to the party bringing the vagueness challenge." *United States v. Clark*, 582 F.3d 607, 612–13 (5th Cir. 2009) (cleaned up) (emphasis added); *see Vill. of Hoffman Ests. v. Flipside*, 455 U.S. 489, 495 (1982) (courts "should uphold the challenge only if the enactment is impermissibly vague in all of its applications"). Insufficient is "the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved." *United States v. Williams*, 553 U.S. 285, 306 (2008). For "perfect clarity and precise guidance have never been required." *Id.* at 304 (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989)).

A vagueness plaintiff must prove that the challenged criminal law—in every application—fails to "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357

(1983); *see Morales*, 527 U.S. at 56. And the plaintiff must do so without "go[ing] beyond the statute's facial requirements" and "speculat[ing] about 'hypothetical' or 'imaginary' cases." *Magee*, 463 F. App'x at 380 (quoting *Wash. State Grange*, 552 U.S. at 449–50); *see Hill v. Colorado*, 530 U.S. 703, 733 (2000) ("speculation about possible vagueness in hypothetical situations not before the Court will not support a facial attack on a statute when it is surely valid 'in the vast majority of its intended applications'"). That is because hypotheticals are "of no due process significance unless the possibility ripens into a prosecution." *Vill. of Hoffman*, 455 U.S. at 503 n.21.

Without discussing its applications, Plaintiffs claim that Act 259 facially fails to provide fair notice and is susceptible to arbitrary and discriminatory enforcement—akin to the anti-loitering ordinance in *Morales*. ROA.122–23. "As always, enforcement requires the exercise of some degree of police judgment." *Grayned v. City of Rockford*, 408 U.S. 104, 114 (1972). In fact, "Supreme Court precedent teaches that the presence of enforcement discretion alone does not render a statutory scheme unconstitutionally vague." *Kincaid v. Gov't of D.C.*, 854 F.3d 721, 729 (D.C. Cir. 2017) (Kavanaugh, J.) (collecting cases); *see United States*

*v. Batchelder*, 442 U.S. 114, 123–26 (1979).

What matters for due process purposes is whether a law makes criminal an officer's subjective judgment beyond a citizen's control. Examples abound: criminalizing behavior that an officer subjectively believes to be "annoying" or disruptive, *Coates v. City of Cincinnati*, 402 U.S. 611, 615 (1971), or criminalizing sounds that an officer subjectively believes to be excessive, *Tanner v. City of Va. Beach*, 674 S.E.2d 848, 853 (Va. 2009), or criminalizing persons that an officer subjectively believes to be not "credible" and "reliable," *Kolender*, 461 U.S. at 361.

To be sure, Act 259 permits enforcement discretion, but nothing in the law "give[s] police 'absolute discretion' to 'decide what activities' constitute criminal offenses." *Kincaid*, 854 F.3d at 729 (quoting *Morales*, 527 U.S. at 61). The Act criminalizes "knowingly or intentionally approach[ing]" an officer and only under very narrow circumstances. La. R.S. 14:109(A); *see Boos v. Barry*, 485 U.S. 312, 332 (1988) (rejecting vagueness challenge where statute "is crafted for a particular context and given that context, it is apparent" what conduct is prohibited). Only against the small class of approachers could an officer even "invoke the law by ordering someone to 'stop approaching'" or retreat. *Nicodemus*,

2025 WL 1409737, at \*3. And "once told to stop approaching, only someone who nevertheless 'knowingly or intentionally approaches' within 25 feet of the officer violates the buffer law and risks being convicted." *Id.* But whether a citizen "approaches" is matter of *actus reus* objective fact that calls for zero subjectivity from an officer.

The "knowingly or intentionally" *mens rea* component of Act 259 is independently problematic for Plaintiffs. For a lacking *mens rea* requirement was the straw that broke the *Morales* anti-loitering ordinance. *See Morales*, 527 U.S. at 83 (Scalia, J., dissenting). Not so here. Long before *Morales*, the Supreme Court regularly recognized that the "constitutionality of a vague statutory standard is closely related to whether that standard incorporates a requirement of *mens rea*." *Colautti v. Franklin*, 439 U.S. 379, 395 (1979) (collecting cases). And since *Morales*, the Court has only reaffirmed the longstanding principle that "scienter requirements alleviate vagueness concerns." *Gonzales v. Carhart*, 550 U.S. 124, 149 (2007); *Holder*, 561 U.S. at 21 ("the knowledge requirement of the statute further reduces any potential for vagueness, as we have held with respect to other statutes containing a similar requirement"); *Hill*, 530 U.S. at 732; *see, e.g., United States v. Johnson*,

911 F.3d 849, 853 (7th Cir. 2018); *Duhe v. City of Little Rock*, 902 F.3d 858, 864 (8th Cir. 2018); *Whatley v. Zatecky*, 833 F.3d 762, 780 (7th Cir. 2016); *United States v. Nieves-Castano*, 480 F.3d 597, 603 (1st Cir. 2007). So Plaintiffs' *Morales*-style void-for-vagueness claim is, at the very least, unlikely to succeed if it states a plausible claim at all.

Plaintiffs' back-up notice theory—that 25 feet is "vague," ROA.123–124—is wrong in both premise and practice. For one, nothing about the precise distance of 25 feet is vague. Indeed, as courts recognized in the context of social-distancing mandates during the COVID-19 pandemic, "there is nothing vague about what the [buffer] provision requires—[25] feet of separation." *Case v. Ivey*, 542 F. Supp. 3d 1245, 1271 (M.D. Ala. 2021), *aff'd*, 2022 WL 2441578 (11th Cir. July 5, 2022). In fact, "it is difficult to envision a requirement with more mathematical precision." *Id.* For another, Act 259 does not effectuate some "float[ing]" force field in all events. *Contra* ROA.126; ROA.356 ("any person, at any time, partaking in any activity (or engaging in no activity) near law enforcement may be given an order to retreat"). The Act, instead, permits officers to give *one* order—"stop approaching or [] retreat" La. R.S. 14:109(A)—not move along, not stay beyond a roving force field, not

stop recording. *See Nicodemus*, 2025 WL 1409737, at *3. And even then, an officer's recourse is only to arrest someone who decides to "knowingly or intentionally *approach*." La. R.S. 14:109(A) (emphasis added). So Plaintiffs' alternative theory is also a nonstarter.

To revive their vagueness claim, Plaintiffs retreat to First Amendment principles to distinguish their case, *see* ROA.358—never mind that *those* claims fail at the pleading stage, *infra* Section III.B; ROA.350 (dismissing facial-overbreadth claim). More fundamentally, though, that sort of muddying of the Due Process analysis with the First Amendment is precisely what the Supreme Court cautioned against in *Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010). A "vagueness challenge does not turn on whether a law applies to a substantial amount of protected expression." *Id.* at 20. Put otherwise, a law that is not vague does not suddenly become so because someone engaged in First Amendment-protected activity might follow the law.

One last point bears mention: What Plaintiffs' invocation of the First Amendment tacitly admits is that *Morales* is a substantive due process decision to its core. *See* 527 U.S. at 85 (Scalia, J., dissenting); *id.* at 105 (Thomas, J., dissenting). Now that the "Supreme Court [has]

recently clarified how to assess this kind of claim," the burden befalls *Plaintiffs* to show their claim meets that clarified standard. *James v. Cleveland Sch. Dist.*, 45 F.4th 860, 866 (5th Cir. 2022) (citing *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 237–39 (2022)). Sure, their right to newsgather by approaching a police officer within 25 feet might fit within the "rights guaranteed by the first eight Amendments." *See* ROA.25 (citing *Turner v. Lieutenant Driver*, 848 F.3d 678, 689 (5th Cir. 2017)). But they never explain how that purported right is "'deeply rooted in [our] history and tradition' and [is] 'essential to our Nation's 'scheme of ordered liberty.'" *James*, 45 F.4th at 866 (citing *Dobbs*, 597 U.S. at 237–38). "[I]n light of subsequent Supreme Court authority," that gap warrants at least some caution before "extend[ing] [*Morales*]'s reasoning to the facts of [this] case." *Dialysis Newco, Inc. v. Cmty. Health Sys. Grp. Health Plan*, 938 F.3d 246, 257–59 (5th Cir. 2019).

*     *     *

For these reasons, Plaintiffs' Fourteenth Amendment void-for-vagueness claim is not likely to succeed on its merits.

## B. The Balance of the Equities Favors the State.

The equities likewise favor Defendants. To conclude otherwise, the

district court (and Plaintiffs) collapsed the merits with the equities. ROA.363–364. When the equities are given due consideration, though, Defendants prevail.

*First*, Plaintiffs will not suffer any irreparable harm from the absence of an injunction. Plaintiffs' motion dedicates only one sentence to the issue—and that sentence simply invokes the merits of their First Amendment claim. *See* ROA.124–25. For the same reasons that this case is not ripe, Plaintiffs lack standing, and Plaintiffs fail to state a claim, they also have not identified imminent irreparable harm. And to be specific: That Plaintiffs cannot point to any instance when Act 259 has been implemented against them, much less in an unconstitutional way, underscores Plaintiffs' inability to show any imminent irreparable harm. *See* ROA.212, 215.

*Second*, for similar reasons, the equities and the public interest cut against an injunction. While Plaintiffs face no imminent irreparable harm absent an injunction, both the State of Louisiana and the public suffer from enjoining a duly enacted law—and especially one aimed at public safety. *See, e.g.*, *E.T. v. Paxton*, 19 F.4th 760, 770 (5th Cir. 2021) ("When a statute is enjoined, the State necessarily suffers the irreparable

harm of denying the public interest in the enforcement of its laws."
(cleaned up)). The equities thus tilt in Defendants' favor.

## III.   EACH OF PLAINTIFFS' CLAIMS FAILS ON ITS MERITS.

This Court should also reverse the district court's errant denial of
Defendants' motion to dismiss Plaintiffs' void-for-vagueness and First
Amendment as-applied claims. In the same order below, the district court
both refused to dismiss those claims and granted a preliminary
injunction. The Court thus has statutory jurisdiction, 28 U.S.C.
§ 1292(a)(1), including pendent appellate jurisdiction to review (1) all of
the jurisdictional issues that go equally to the injunction and the denial
of the motion to dismiss, (2) the void-for-vagueness issues that both
foreclose an injunction and warrant outright dismissal, and (3) the First
Amendment issues that are pervasive in the district court's order. *See
Swint*, 514 U.S. 35, 51 (1995) (ensuring pendent appellate jurisdiction
over "inextricably intertwined" issues); *Lease Oil Antitrust Litig.*, 200
F.3d at 320 (exercising jurisdiction over denial of motion to dismiss where
issues "are so entangled as to arrive here together"); *Jiao*, 28 F.4th at 596
(addressing "assertions regarding [the] motion to dismiss that are
intertwined with the rest of this appeal").

## A. Plaintiffs' Fourteenth Amendment Void-for-Vagueness Claim Fails (Count III).

For all the jurisdictional and merits reasons that the district court erred in granting the preliminary injunction on vagueness grounds, the district court similarly erred in failing to dismiss Plaintiffs' void-for-vagueness claim on its merits. *Supra* Sections I, II. Because Plaintiffs fail to state a claim under the Due Process Clause, the claim must be dismissed.

## B. Plaintiffs' First Amendment As-Applied Claim Fails (Count I).

The district court likewise erred in denying the motion to dismiss Count I because Plaintiffs cannot state a plausible as-applied First Amendment claim, both as a jurisdictional matter and as a merits matter. Strikingly, Plaintiffs failed to allege any application of Act 259 at all, *supra* Sections I.A, B, and no one in Defendants' orbit has even issued an order, made an arrest, or prosecuted a case under Act 259, ROA.212, 215. No matter the hypothetical application, though, Plaintiffs' claim fails for at least three reasons: (1) the Act does not regulate speech or expressive conduct at all; (2) if it did, the Act would still be a content-neutral reasonable time, place, and manner restriction; and (3) in all events, the Act survives even intermediate scrutiny.

47

### 1. Act 259 regulates conduct, not speech.

The First Amendment protects "the freedom of speech." U.S. Const. amend. 1. Although sometimes "generally applicable regulations of conduct" may raise expressive-conduct or speech issues, that is only when "a particular act constitutes protected speech, rather than unprotected conduct." *Hines v. Pardue*, 117 F.4th 769, 776 (5th Cir. 2024) (cleaned up). That means, even for an as-applied challenge, the first step is identifying whether the law primarily affects speech or unprotected conduct "by looking at what triggers coverage under the statute." *Id.* at 777 (cleaned up). That laws "regulating conduct often have incidental effects on speech" "does not require courts to treat them as if they were regulations of speech." *Morgan v. White*, 964 F.3d 649, 652 (7th Cir. 2020); *see Sorrell v. IMS Health Inc.*, 564 U.S. 552, 567 (2011) ("[T]he First Amendment does not prevent restrictions directed at commerce or conduct from imposing incidental burdens on speech."). To be subject to First Amendment scrutiny, the law must be "specifically addressed to speech or to conduct necessarily associated with speech." *Virginia v. Hicks*, 539 U.S. 113, 124 (2003). Act 259 doesn't fit that bill.

Under the plain terms of Act 259, "what triggers coverage" is

physical encroachment—"approach[ing]"—not speech. *See Hines*, 117 F.4th at 777. Again, the text of the Act provides: "No person shall knowingly or intentionally *approach* within twenty-five feet of a peace officer who is lawfully engaged in the execution of his official duties after the peace officer has ordered the person to stop approaching or to retreat." La. R.S. 14:109(A) (emphasis added). So the Act applies to anyone who "approaches" an officer after being told to stop approaching or to retreat. *Id.* No more, no less.

What the Act does *not* say tells the rest of the story. Nothing in the Act mentions newsgathering, recording, photographing, or documenting. *Contra* ROA.117. The Act does not ban "verbal interruptions of police officers," *City of Houston v. Hill*, 482 U.S. 451, 461 (1987), or "forbid[] any person to interview" an officer, bystander, or victim, *In re Express-News Corp.*, 695 F.2d 807, 808 (5th Cir. 1982). The Act does not give officers license to confiscate a journalist's camera, physically block the journalist, or arrest a journalist for recording. Nor does the text of the Act prohibit "mak[ing] a video recording of law enforcement activity." *Ariz. Broads. Ass'n v. Brnovich*, 626 F. Supp. 3d 1102, 1105 (D. Ariz. 2022). "Never once does [the Act] permit law enforcement to stop the public's ability to

49

record." *Nicodemus*, 711 F. Supp. 3d at 1025.

In truth, there is nothing inherently expressive about what the Act *does* proscribe—"approach[ing] within twenty-five feet of a peace officer who is lawfully engaged in the execution of his official duties." La. R.S. 14:109(A). Nor do Plaintiffs say otherwise. Act 259 is thus nothing more than a movement restriction, not a speech restriction. *See Nat'l Press Photographers*, 90 F.4th at 788 ("These are flight restrictions, not speech restrictions."). Because Act 259 has "nothing to do with speech or even expressive activity," it does "not implicate the First Amendment" at all. *Id.* The analysis can end there.

Sidestepping that threshold inquiry entirely, Plaintiffs complain that their ability to effectively record and newsgather may be hampered by Act 259. The right to record and gather news, though, "is not absolute," *Turner*, 848 F.3d at 688, and the right extends only to "news gathering by 'means within the law,'" *Villarreal*, 94 F.4th at 396 (quoting *Branzburg*, 408 U.S. at 681–82). And that certainly does not include "a right to put a mic at the officer's mouth, or that of a victim, suspect, informant, arrestee, or witness, or to put a camera in their faces." *Nicodemus*, 711 F. Supp. 3d at 1026.

To the extent Plaintiffs claim some special status as "journalists" or "newsgatherers," the Supreme Court "has been unequivocal that there is no journalist privilege or immunity from prosecution under generally applicable law." *Villarreal*, 94 F.4th at 396; *see supra* Section I.A.2. "Newsmen have no constitutional right of access to the scenes of crime or disaster when the general public is excluded, and they may be prohibited from attending or publishing information about trials if such restrictions are necessary to assure a defendant a fair trial before an impartial tribunal." *Villarreal*, 94 F.4th at 396 (quoting *Branzburg*, 408 U.S. at 684–85). Nor are Plaintiffs entitled to some heightened status here.

The district court, while recognizing that "[t]he right to gather the news is not unlimited," ROA.343, found that "newsgathering may be inhibited by an order to retreat" under the Act. ROA.342. That alone, in its view, allowed Plaintiffs' claim to wade into First Amendment territory. This overlooks the wealth of case law limiting that exact inquiry when a statute like Act 259 does not regulate speech at all. *See, e.g.*, *Virginia*, 539 U.S. at 124. And it completely ignores the actual text of the Act, which explicitly regulates conduct, not speech or any other form of expressive activity. Because Act 259 has "nothing to do with

speech or even expressive activity," it does "not implicate the First Amendment" at all. *Nat'l Press Photographers Ass'n*, 90 F.4th at 788. This Court's analysis can and should end there.

### 2. At most, Act 259 is a content-neutral law with only incidental impact on speech.

If the First Amendment were implicated (and it is not), the Act is plainly a content-neutral law with only incidental impact on speech (if any). Here, the neutrality inquiry is easy because Act 259's text "is agnostic as to content." *City of Austin v. Reagan Nat'l Advert. of Austin, LLC*, 596 U.S. 61, 69 (2022). Again, the Act's text says only that "[n]o person shall knowingly or intentionally approach within twenty-five feet of a peace officer who is lawfully engaged in the execution of his official duties after the peace officer has ordered the person to stop approaching or to retreat." La. R.S. 14:109(A). It is plainly content neutral with, at most, minimal incidental effects on speech.[2]

The district court agreed in large part with these points: (1) "[n]othing in the language of the Act is directed at speech or newsgathering," ROA.343; (2) "the Act is directed at conduct," not speech,

---

[2] Plaintiffs do not contend that Act 259 constitutes a viewpoint-discriminatory law besides a fleeting citation to *Brown v. Kemp*, 86 F.4th 745 (7th Cir. 2023). Nor could they.

*id.*; and (3) "the Act is conduct-based and content-neutral," ROA.344. Plaintiffs' arguments to the contrary were and are unavailing.

On Plaintiffs' telling, the Act is content-based because it "inevitably will discourage filming the police." ROA.114. That is just wrong. Generally applicable laws are content-neutral when a violation of "the Act depends not on *what* [people] say, but simply on *where* they say it." *McCullen v. Coakley*, 573 U.S. 464, 479 (2014) (cleaned up) (emphases added). And "a facially neutral law" like Act 259 "does not become content based simply because it may disproportionately affect speech on certain topics." *Id.* at 480. Plaintiffs are likewise incorrect that any statute involving officer discretion "can never qualify as content-neutral." ROA.241. The fact that law enforcement officers have the ability to enforce the law with discretion does not transform the law itself into a content-based speech restriction. If this were true, the buffer zone laws in *Hill* and *McCullen* too would have been content-based—they were not, and neither is Act 259.

### 3. In any event, Act 259 satisfies intermediate scrutiny.

If subject to First Amendment scrutiny at all, intermediate scrutiny applies to Act 259 as a content-neutral restriction. *See Hines*, 117 F.4th

at 774 n.22 (courts "apply intermediate scrutiny only if the law regulates speech directly (and in a content-neutral way), not merely incidentally").[3] The Act's public safety mission easily satisfies the intermediate scrutiny rubric. It need only "further[] an important or substantial governmental interest" that is "unrelated to the suppression of free expression" and that incidentally burdens First Amendment speech "no greater than is essential to the furtherance of that interest." *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 662 (1994) (cleaned up). Act 259 "need not be the least speech-restrictive means of advancing the Government's interests," so long as it "promotes a substantial government interest that would be achieved less effectively absent the regulation." *Id.* (cleaned up).

Begin with the incidental burden. Sure, Act 259 might "prevent[] a recording within" as close of proximity as Plaintiffs would like, "but not every recording." *Nicodemus*, 711 F. Supp. 3d at 1025. Given today's

---

[3] There is some confusion within the Circuit as to what specific test applies to this type of law. *See, e.g.*, *LLEH, Inc. v. Wichita Cnty.*, 289 F.3d 358, 365 (5th Cir. 2002) (stating lack of clarity between tests for time, place, and manner regulations and laws with incidental limitations on speech). And there is support for the argument that something *less* than intermediate scrutiny applies to regulations that only incidentally regulate speech, such as this Act. *See Hines*, 117 F.4th at 774 n.22 ("But because our precedent—and that of the Supreme Court—suggests otherwise, we apply intermediate scrutiny *only if the law regulates speech directly* (and in a content-neutral way), not merely incidentally." (emphasis added)). Regardless, even under intermediate scrutiny, Plaintiffs' challenge to Act 259 fails.

technology, "it seems rather strained to argue that citizens will suffer a substantial burden on their ability to record meaningfully." *Id.* And imposing what amounts to the "width of a two-car garage, or the length of a typical garden hose, or just small steps beyond an NBA three-point line, isn't a substantial burden on the right to record." *Id.*

That incidental effect is the molehill next to the mountain of substantial government interests motivating Act 259. To start, perhaps most obviously, Act 259 protects peace officers lawfully engaged in their duties. ROA.211; *see, e.g.*, *Ass'n of Club Execs. of Dall., Inc. v. City of Dallas*, 83 F.4th 958, 966 (5th Cir. 2023) (substantial interest in lowering violence and crime rates), *cert. denied*, 144 S. Ct. 1064 (2024); *Palmer ex rel. Palmer v. Waxahachie Indep. Sch. Dist.*, 579 F.3d 502, 511 (5th Cir. 2009) (substantial interest in "providing a safer and orderly learning environment"); *LLEH, Inc. v. Wichita Cnty.*, 289 F.3d 358, 366 (5th Cir. 2002) (substantial interest in "protecting the health, safety, and welfare of [] patrons and County citizens"); *Vivint La., LLC v. City of Shreveport*, 213 F. Supp. 3d 821, 825 (W.D. La. 2016) (substantial interest in protecting safety and privacy of residents from uninvited solicitors). And Plaintiffs, too, seem to all but concede that plainly important state

interest, albeit one they believed better addressed by other laws. *See* ROA.120 (Louisiana has justifiable "concerns about safety or obstruction" but could have "achieved its interests by relying on already available generic criminal statutes").

Moreover, Act 259 (1) "affords law enforcement officers the uninterrupted and unimpeded ability to do their jobs, including as examples the need to investigate, secure evidence and statements, and conduct other official police business safely"; (2) "protects the integrity of government processes as well as suspects, victims, witnesses, and other citizens interacting with law enforcement from harms"; (3) "promotes officer and public safety by ensuring that someone at a close distance cannot harm or hinder those charged with and engaged in their lawful duties"; (4) "protects arrestees, suspects, victims, informants, witnesses, and other citizens from harm and inappropriate disclosure of confidential investigative facts" by "dissipat[ing] the risk of exposure or marginalization of a victim who might be endangered or embarrassed from immediately adjacent recording" and "protect[ing] the privacy interests of third-parties who might be targeted (but not charged) or who might be witnesses or informants"; (5) "mitigates impairing law

enforcement's ability to acquire information effectively or endangering their safety by distracting them from their official duties with happenings in their immediate vicinity"; and (6) aids in "effectuating arrests and the like." *Nicodemus*, 711 F. Supp. 3d at 1023 (citing Ind. Code § 35-44.1-2-14). Any and all of these substantial government interests justify Act 259 under an intermediate scrutiny framework, and each is plainly furthered by the Act's public safety tool—clearly used sparingly, ROA.211, 213.

Presuming the State's interests substantial (for good reason), the district court found Plaintiffs had sufficiently stated an as-applied claim. ROA.344–345. That is because Act 259 is not, in the district court's view, narrowly tailored. According to that court, "the government interests could be achieved by a smaller buffer zone, which would allow them to gather the news more easily" or it could only allow orders for someone who actually "interfere[s] with the lawful execution of the officer's duties." ROA.345. Or the statute could not exist at all because there are already "existing statute[s] that prohibit[] obstruction of police." ROA.345.[4]

---

[4] Also off the mark is Plaintiffs' reliance on *Perkins v. Hart*, No. 22-30456, 2023

Respectfully, that is nothing more than strict scrutiny masquerading as the *Turner* test. "The inquiry boils down to whether the 'time, place, and manner' regulation at issue is 'reasonable.'" *Nicodemus*, 2025 WL 1409737, at *9. Of course, "perfect calibration is not required." *Id.* So it can be "true that there may be some overlap between the buffer law and statutes already on the books"—but the "buffer law aims to fill gaps left by the existing statutory scheme in active investigatory situation." *Id.* at *10. Nothing about that makes it suddenly "burden[] substantially more speech than necessary to achieve its goals." *Id.* Accordingly, like the Seventh Circuit concluded for a near identical law, Act 259 is plainly "narrowly tailored." *Id.* The district court was wrong to hold otherwise.

*   *   *

Summed up: Act 259 does not implicate the First Amendment and,

---

WL 8274477, at *7 (5th Cir. Nov. 30, 2023). There, the Fifth Circuit panel considered a First Amendment retaliation claim against an officer who had "verbally taunted and shoved" a plaintiff and "intentionally moved from side to side to block [the plaintiff] from recording the arrest." *Id.* at *6–7. Nowhere does the opinion say anything about a maximum perimeter for buffer zones. At most, the unpublished opinion's fact section notes the plaintiff "was clearly close to the arrest scene" and not impeding the officer's actions. *Id.* at *7. That is a far cry from some broad legal principle about a maximum allowable perimeter for law enforcement to carry out its duties that Plaintiffs try to make it out to be.

at most, is a content-neutral reasonable time, place, and manner restriction, plainly justified by the State's interest in officers' and the public's safety. Plaintiffs thus failed to plausibly allege an as-applied First Amendment claim, and the district court should have dismissed it.

## IV. THE DISTRICT COURT ERRED IN ENJOINING DEFENDANTS FROM ENFORCING ACT 259 ACROSS THE STATE.

Finally, at a minimum, the district court erred in issuing an injunction that reaches beyond the named Plaintiffs here. Under the district court's preliminary injunction, "Defendants and their agents shall be prohibited from enforcing Louisiana Revised Statutes § 14:109." ROA.367. Such an injunction seemingly applies to any enforcement against everyone, everywhere, at any time.

But such an overbroad injunction is unlawful, and is exactly the sort of conduct that the Supreme Court rejected in *Labrador v. Poe*, 144 S. Ct. 921 (2024) (granting stay of statewide injunction "except as to the provision *to the plaintiffs* of the treatments they sought below" (emphasis added)). Or, in the words of Justices Gorsuch, Thomas, and Alito, this is an example of "certain district courts across the country [that] have not contented themselves with issuing equitable orders that redress the injuries of the plaintiffs before them, but have sought instead to govern

an entire State ... from their courtrooms." *Id.* at 926 (Gorsuch, J., concurring in the grant of stay).

The Court should vacate the injunction on the ground that it plainly exceeds the district court's equitable authority. The Supreme Court has long made clear that "a federal court may not issue an equitable remedy 'more burdensome to the defendant than necessary to [redress]' the plaintiff's injuries." *Id.* at 923 (Gorsuch, J., concurring in the grant of stay) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)). For example, the Supreme Court has embraced "the rule that a 'remedy must of course be limited to the inadequacy that produced the injury in fact that the plaintiff has established.'" *Gill v. Whitford*, 585 U.S. 48, 68 (2018).

The injunction here violates that rule. Even if Plaintiffs had sufficiently alleged injury to themselves because of Act 259 (they did not), there is no basis to extend the injunction beyond remedying those specifically alleged injuries by enjoining Defendants from enforcing the law against Plaintiffs. If nothing else, therefore, the Court should vacate the injunction to the extent it applies beyond these named Plaintiffs.

## CONCLUSION

The Court should reverse, vacate the injunction, and dismiss for lack of jurisdiction or for failure to state a claim—or alternatively, remand for the district court to do the same.

Dated:   May 27, 2025

Respectfully submitted,

Elizabeth B. Murrill
Attorney General of Louisiana

*/s/ Caitlin Huettemann*
J. Benjamin Aguiñaga
Solicitor General
Zachary Faircloth
Deputy Solicitor General
Caitlin A. Huettemann
Assistant Solicitor General
Office of the Attorney General
1885 N. 3rd St.
Baton Rouge, LA 70802
(225) 888-7903
HuettemannC@ag.louisiana.gov

*Counsel for Defendants-Appellants*

**CERTIFICATE OF SERVICE**

I certify that on May 27, 2025, I filed the foregoing brief with the Court's CM/ECF system, which will automatically send an electronic notice of filing to all counsel of record.

*/s/ Caitlin Huettemann*
CAITLIN A. HUETTEMANN

## CERTIFICATE OF COMPLIANCE

Pursuant to Fifth Circuit Rule 32.3, the undersigned certifies that this motion complies with:

(1) the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7) because it contains 12,197 words; and

(2) the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Century Schoolbook) using Microsoft Word 2016 (the same program used to calculate the word count).

*/s/ Caitlin Huettemann*
CAITLIN A. HUETTEMANN

Dated: May 27, 2025