**No. 25-30128**

# In the United States Court of Appeals for the Fifth Circuit

DEEP SOUTH TODAY, doing business as Verite News; GANNET COMPANY, INCORPORATED; GRAY LOCAL MEDIA, INCORPORATED; NEXSTAR MEDIA, INCORPORATED; SCRIPPS MEDIA, INCORPORATED; TEGNA, INCORPORATED,

*Appellees/Cross-Appellants*,

v.

LIZ MURRILL, in her official capacity as Attorney General of Louisiana; ROBERT P. HODGES, in his official capacity Superintendent of the Louisiana State Police; HILLAR C. MOORE, III, in his official capacity as District Attorney of East Baton Rouge Parish,

*Appellants/Cross-Appellees*,

On Appeal from the United States District Court for the Middle District of Louisiana, No. 3:24-cv-623, Hon. John W. deGravelles

**BRIEF FOR AMICI CURIAE the TEXAS CIVIL RIGHTS PROJECT AND the SOUTHERN POVERTY LAW CENTER in SUPPORT OF APPELLEES/CROSS-APPELLANTS**

Griffin S. Rubin
  *Counsel of Record*
SBAITI & COMPANY PLLC
Dallas Arts Tower
2200 Ross Avenue, Suite 4900W
Dallas, TX 75201
(214) 214-3414
gsr@sbaitilaw.com

*Counsel for* Amici Curiae

## SUPPLEMENTAL STATEMENT OF INTERESTED PERSONS

Pursuant to Circuit Rule 26.1 and Federal Rule of Appellate Procedure 29(a)(4)(A), *amici curiae* the Texas Civil Rights Project and the Southern Poverty Law Center state that they are nonprofit corporations with no parent corporation. No publicly held corporation owns 10 percent or more of their stock.

Pursuant to Circuit Rule 29.2, the undersigned counsel of record certifies that the following listed persons and entities have an interest in the outcome of this case. These representations are made so the judges of this Court may evaluate possible disqualification or recusal.

| | |
|---|---|
| **Amici Curiae:** | The Texas Civil Rights Project<br>The Southern Poverty Law Center |
| **Counsel for**<br>**Amici Curiae:** | SBAITI & COMPANY PLLC<br>Griffin S. Rubin (gsr@sbaitilaw.com) |

*/s/ Griffin S. Rubin*
Griffin S. Rubin
*Attorney of Record for* Amici Curiae
*the Texas Civil Rights Project and*
*the Southern Poverty Law Center*

## TABLE OF CONTENTS

Supplemental Statement of Interested Persons ............................................................ i

Table of Authorities ............................................................................................... iii

Interest of Amici Curiae ........................................................................................... 1

Introduction and Summary of Argument ................................................................ 1

Argument ................................................................................................................. 2

I.     As-Applied Challenges Consider the Text of a Statute *and* the Particular Facts at Issue ................................................................................................. 3

     A.     Applicable Law ................................................................................. 3

     B.     Application ......................................................................................... 6

II.     Appellees' Actions Constitute Speech-Facilitating Conduct Warranting Heightened Scrutiny Under the First Amendment ....................................... 7

     A.     Applicable Law ................................................................................. 7

     B.     Application ....................................................................................... 14

III.     Concluding That Appellees' Actions Is Speech-Facilitating Conduct As-Applied Is Important to This Circuit's First Amendment Jurisprudence ..... 17

Conclusion ............................................................................................................. 21

Certificate of Service ............................................................................................. 22

Certificate of Compliance ..................................................................................... 23

# Table of Authorities

## Cases

*ACLU v. Alvarez,*
  679 F.3d 583 (7th Cir. 2012) ........................................................................ 10, 19

*Ams. for Prosperity Found. v. Bonta,*
  594 U.S. 595 (2021) ........................................................................................ 3

*Anderson v. City of Hermosa Beach,*
  621 F.3d 1051 (9th Cir. 2010) ................................................................ 12, 13

*Assoc. Press v. NLRB,*
  301 U.S. 103 (1937) ...................................................................................... 16

*Branzburg v. Hayes,*
  408 U.S. 665 (1972) ................................................................................. 15, 16

*Brown v. Entm't Merchs. Ass'n,*
  564 U.S. 786 (2011) ...................................................................................... 13

*Brown v. Kemp,*
  86 F.4th 745 (7th Cir. 2023) ........................................................................ 13

*Buehrle v. City of Key West,*
  813 F.3d 973 (11th Cir. 2015) ..................................................................... 11

*Cablevision Sys. Corp. v. FCC,*
  597 F.3d 1306 (D.C. Cir. 2010) .................................................................... 18

*Citizens United v. FEC,*
  558 U.S. 310 (2010) ................................................................................... 3, 10

*City of Boerne v. Flores,*
  521 U.S. 507 (1997) ...................................................................................... 18

*City of Los Angeles v. Patel*,
   576 U.S. 409 (2015) ..................................................................... 3

*Collins v. Ainsworth*,
   382 F.3d 529 (5th Cir. 2004) ...................................................... 13

*Dallas v. Stanglin*,
   490 U.S. 19 (1989) ........................................................................ 8

*Doe v. Reed*,
   561 U.S. 186 (2010) ...................................................................... 5

*Estes v. Texas*,
   381 U.S. 532 (1965) .................................................................... 19

*Fields v. City of Philadelphia*,
   862 F.3d 353 (3d Cir. 2017) ...................................................15, 19

*Free Speech Coal., Inc. v. Paxton*,
   --- U.S. ----, No. 23-1122, 2025 WL 1773625 (U.S. June 27, 2025) ................... 18

*Glik v. Cunniffe*,
   655 F.3d 78 (1st Cir. 2011) .....................................................15, 19

*Golden Glow Tanning Salon, Inc. v. City of Columbus*,
   52 F.4th 974 (5th Cir. 2022) ...................................................... 18

*Gonzales v. Carhart*,
   550 U.S. 124 (2007) ...................................................................... 4

*Healthy Vision Ass'n v. Abbott*,
   138 F.4th 385 (5th Cir. 2025) .................................................... 18

*Hill v. Colorado*,
   530 U.S. 703 (2000) .................................................................... 13

*Hines v. Pardue*,
   117 F.4th 769 (5th Cir. 2024) ......................................... 5, 7, 9, 14, 18

*Houchins v. KQED, Inc.*,
438 U.S. 1 (1978) ........................................................................ 16

*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*,
515 U.S. 557 (1995) ..................................................................... 10

*Irizarry v. Yehia*,
38 F.4th 1282 (10th Cir. 2022) ...................................................... 19

*Jenevein v. Willing*,
493 F.3d 551 (5th Cir. 2007) ........................................................... 8

*Justice v. Hoseman*,
771 F.3d 285 (5th Cir. 2014) ........................................................... 5

*Leathers v. Medlock*,
499 U.S. 439 (1991) ..................................................................... 19

*Luis v. United States*,
578 U.S. 5 (2016) ........................................................................ 11

*McConnell v. FEC*,
540 U.S. 93 (2003) ...................................................................... 12

*McCullen v. Coakley*,
573 U.S. 464 (2014) ..................................................................... 16

*McGuire v. Reilly*,
386 F.3d 45 (1st Cir. 2004) ............................................................. 4

*Minneapolis Star & Tribune Co. v. Minn. Comm'r of Rev.*,
460 U.S. 575 (1983) ..................................................................... 11

*Moody v. NetChoice, LLC*,
603 U.S. 707 (2024) .................................................................... 3, 4

*Nat'l Inst. of Fam. & Life Advocs. v. Becerra*,
  585 U.S. 755 (2018) ...................................................................... 9

*Ness v. City of Bloomington*,
  11 F.4th 914 (8th Cir. 2021) ......................................................... 14

*Nicodemus v. City of South Bend*,
  137 F.4th 654 (7th Cir. 2025) ........................................................ 16

*NRA of Am. v. Vullo*,
  602 U.S. 175 (2024) ...................................................................... 10

*Pac. Coast Horseshoeing Sch., Inc. v. Kirchmeyer*,
  961 F.3d 1062 (9th Cir. 2020) ....................................................... 18

*People for the Ethical Treatment of Animals, Inc. v. N.C. Farm Bureau Fed'n, Inc.*,
  60 F.4th 815 (4th Cir. 2023) ......................................................... 14

*Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*,
  460 U.S. 37 (1983) ........................................................................ 16

*Project Veritas v. Schmidt*,
  125 F.4th 929 (9th Cir. 2025) (en banc) ....................................... 11

*Reed v. Goertz*,
  136 F.4th 535 (5th Cir. 2025) .......................................................... 4

*Sanjour v. EPA*,
  56 F.3d 85 (D.C. Cir. 1995) (en banc) ............................................. 5

*Smith v. City of Cumming*,
  212 F.3d 1332 (11th Cir. 2000) ..................................................... 19

*Tex. Democratic Party v. Abbott*,
  978 F.3d 168 (5th Cir. 2020) ........................................................... 3

*Texas v. Johnson*,
  491 U.S. 397 (1989) ........................................................................ 9

*Thomas v. Collins,*
   323 U.S. 516 (1945) ...................................................................... 9, 17

*Tinker v. Des Moines Indep. Cmty. Sch. Dist.,*
   393 U.S. 503 (1969) ............................................................................ 9

*Turner Broad. Sys. v. FCC,*
   512 U.S. 622 (1994) .......................................................................... 17

*Turner v. Driver,*
   848 F.3d 678 (5th Cir. 2017) ............................................................ 10

*United States v. Adams,*
   914 F.3d 602 (8th Cir. 2019) .............................................................. 5

*United States v. Giglio,*
   126 F.4th 1039 (5th Cir. 2025) ........................................................... 4

*United States v. Hansen,*
   599 U.S. 762 (2023) ............................................................................ 3

*United States v. Kimble,*
   --- F.4th ----, No. 23-50874, 2025 WL 1793832 (5th Cir. June 30, 2025) ............ 9

*United States v. Marcavage,*
   609 F.3d 264 (3d Cir. 2010) ........................................................... 4, 6

*United States v. O'Brien,*
   391 U.S. 367 (1968) ............................................................................ 8

*United States v. Pollard,*
   326 F.3d 397 (3d Cir. 2003) ............................................................. 19

*United States v. Skrmetti,*
   145 S. Ct. 1816 (2015) ...................................................................... 18

*Wash. State Grange v. Wash. State Republican Party*,
552 U.S. 442 (2008)......................................................................3

*W. Watersheds Project v. Michael*,
869 F.3d 1189 (10th Cir. 2017)........................................... 11

**Constitutional Provisions**

U.S. CONST. amend. I.....................................................................7

**Other Authorities**

Ashutosh Bhagwat, *Producing Speech*,
56 WM. & MARY L. REV. 1029 (2015)........................................10

Dan T. Coenen, *Free Speech and Generally Applicable Laws: A New Doctrinal Synthesis*,
103 IOWA L. REV. 435 (2018)........................................ 14

Elena Kagan, *Regulation of Hate Speech and Pornography After* R.A.V.,
60 U. CHI. L. REV. 873 (1993) .........................................9

Geoffrey R. Stone, *Government Secrecy vs. Freedom of the Press*,
1 HARV. L. & POL'Y REV. 185 (2007) .........................................8

Jane Bambauer, *Is Data Speech?*,
66 STAN L. REV. 57 (2014) .............................................7

Jocelyn Simonson, *Beyond Body Cameras: Defending a Robust Right to Record the Police*,
104 GEO L.J. 1559 (2016)..............................................10

Justin Marceau & Alan K. Chen, *Free Speech and Democracy in the Video Age*,
116 COLUM. L. REV. 991 (2016) ........................................ 12, 14, 20

Leslie Kendrick, *Use Your Words: On the "Speech" in "Freedom of Speech"*,
116 MICH. L. REV. 686 (2018) ........................................7

Michael W. McConnell, *Reconsidering* Citizens United *as a Press Clause Case*,
123 Yale L. J. 412 (2013) ................................................................. 17

Richard H. Fallon, Jr., *As-Applied and Facial Challenges and Third-Party Standing*,
113 Harv. L. Rev. 1321 (2000)........................................................4

Srikanth Srinivasan, *Incidental Restrictions of Speech and the First Amendment: A Motive-Based Rationalization of the Supreme Court's Motive-Based Rationalization of the Supreme Court's Jurisprudence*,
12 Const. Comment. 401 (1995) .................................................8

Wesley J. Campbell, *Speech-Facilitating Conduct*,
68 Stan. L. Rev. 1 (2016) .....................................................10, 11

## INTEREST OF AMICI CURIAE[1]

The Texas Civil Rights Project (TCRP) is a non-profit organization made up of Texas lawyers and advocates who strive to advance the civil rights of Texans. For more than thirty years, TCRP has litigated and advocated to advance the rights of the state's most vulnerable populations. This frequently includes litigation and advocacy to defend Texans' First Amendment rights.

The Southern Poverty Law Center (SPLC) is a catalyst for racial justice in the South and beyond, working in partnership with communities to dismantle white supremacy, strengthen intersectional movements, and advance the human rights of all people.

*Amici* submit this brief in support of Appellees/Cross-Appellants.

## INTRODUCTION AND SUMMARY OF ARGUMENT

This action presents several intricate jurisdictional and merits questions regarding Act 259 (the Act), Louisiana's newly enacted law proscribing any person from "knowingly or intentionally approach[ing] within twenty-five feet of a peace officer who is lawfully engaged in the execution of his official duties after the peace

---

[1] Pursuant to Federal Rule of Appellate Procedure 29(a), *amici* certify that the parties have consented to the filing of this brief. No counsel for a party authored the brief in whole or in part. No party, counsel for a party, or any person other than *amici* and their counsel made a monetary contribution intended to fund the preparation or submission of this brief.

officer has ordered the person to stop approaching or to retreat." For immediate purposes, *amici* focus on Appellees' as-applied claim under the First Amendment.

*Amici* agree with the district court's disposition of this claim. *Amici* also agree that intermediate scrutiny is the appropriate standard here. But they part ways with the district court on *why* intermediate scrutiny applies. The district court looked only to the plain language of the Act and viewed the conduct at issue as an incidental burden on speech. Properly considered, the Act, as applied under these circumstances, directly affects Appellees' free-speech rights.

This conclusion is crucial for two primary reasons. First, as opposed to the lax rational-basis standard to which conduct regulations are ordinarily subject, the lowest echelon of constitutional scrutiny the Act's restriction of Appellees' speech would face is intermediate scrutiny, which helps to shield protected expression from state overreach. Second, the speech–conduct line, though often difficult to discern, will be more well defined, ensuring that crucial antecedent steps to First Amendment activity are not treated as mere non-expressive conduct.

## Argument

The district court held that the Act, as applied to Appellees, violated the First Amendment. *See* ROA.342-346. While the district court correctly applied intermediate scrutiny, *see* ROA.343-344, *amici* disagree with two conclusions the

district court drew along the way supporting its decision. First, the district court, in conducting its as-applied analysis, evaluated the question based on "the language of the Act." ROA.342. Second, the district court held that the Act primarily regulates conduct. ROA.342. These determinations were not correct, and *amici* consider each in turn.

## I. As-Applied Challenges Consider the Text of a Statute *and* the Particular Facts at Issue

### A. Applicable Law

Two general paths exist to challenge a statute's constitutionality: on its face or as applied. *See Tex. Democratic Party v. Abbott*, 978 F.3d 168, 182 (5th Cir. 2020). While "the distinction between facial and as-applied challenges" is not "well defined," it is "instructive and necessary" regarding "the breadth of the remedy" courts employ. *Citizens United v. FEC*, 558 U.S. 310, 331 (2010).

"A facial challenge is an attack on a statute itself . . . ." *City of Los Angeles v. Patel*, 576 U.S. 409, 415 (2015). For such a challenge to succeed, the statute must be "unconstitutional in all of its applications."[2] *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008). But "[f]or a host of good reasons, courts

---

[2] In the First Amendment context, the inquiry is slightly different, asking "whether 'a substantial number of the law's applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.'" *Moody v. NetChoice, LLC*, 603 U.S. 707, 723 (2024) (brackets omitted) (first quoting *United States v. Hansen*, 599 U. S. 762, 769 (2023); and then quoting *Ams. for Prosperity Found. v. Bonta*, 594 U. S. 595, 615 (2021)).

usually handle constitutional claims case by case, not en masse," *Moody*, 603 U.S. at 723—these are as-applied challenges. *See Gonzales v. Carhart*, 550 U.S. 124, 168 (2007) ("[A]s-applied challenges are the basic building blocks of constitutional adjudication.") (quoting Richard H. Fallon, Jr., *As-Applied and Facial Challenges and Third-Party Standing*, 113 Harv. L. Rev. 1321, 1328 (2000))). They attack a statute's constitutionality based on the complaining party's actions and the surrounding circumstances. *See United States v. Giglio*, 126 F.4th 1039, 1045 (5th Cir. 2025) ("adjudicating as-applied challenges" requires consideration of "the particularities of an individual's circumstances"). In other words, courts "look not just at the contours of the rule at issue and the liberty it supposedly offends [as in facial challenges], but also to the facts relevant to either or both." *Reed v. Goertz*, 136 F.4th 535, 542 (5th Cir. 2025).

The analytical difference between facial and as-applied challenges is paramount. Facial challenges "test[] a law's constitutionality based on its text alone and do[] not consider the facts or circumstances of a particular case." *United States v. Marcavage*, 609 F.3d 264, 273 (3d Cir. 2010); *McGuire v. Reilly*, 386 F.3d 45, 57 (1st Cir. 2004) (stating that a facial challenge "turns not on the historical facts of how the statute has been applied, but on the words of the statute"). As-applied challenges, by contrast, "ask[] the reviewing court to declare the disputed statute unconstitutional

'on the facts of the particular case.'" *United States v. Adams*, 914 F.3d 602, 605 (8th Cir. 2019) (quoting *Sanjour v. EPA*, 56 F.3d 85, 92 n.10 (D.C. Cir. 1995) (en banc)). *Compare, e.g.*, *Justice v. Hosemann*, 771 F.3d 285, 295–301 (5th Cir. 2014) (facial challenge), *with id.* at 292–95 (as-applied challenge). Phrased differently, as-applied challenges are "fact-specific" and "center[] on the implementation of [a law] by the enforcing authority." *Hines v. Pardue*, 117 F.4th 769, 787 (5th Cir. 2024) (Ramirez, J., concurring); *see Doe v. Reed*, 561 U.S. 186, 194 (2010) (summarizing that "what matters" when distinguishing facial and as-applied challenges is whether the "claim and the relief that would follow . . . reach beyond the particular circumstances of the[] plaintiffs").

This distinction is important—applying the wrong standard can produce deeply flawed results given the relative difficulties of prevailing under each type of challenge. For instance, applying the as-applied framework in a facial challenge will make success more readily achievable, potentially leading to the invalidation of a duly enacted law with many constitutional applications. Just as well, applying the facial framework in an as-applied challenge will decrease the odds of success, potentially leaving a complaining party subject to an unconstitutional application of a law simply because the law is not unconstitutional in every application. The facial/as-applied distinction also matters because, in the First Amendment context, it is inherently

intertwined with the inquiry discussed in Section II *infra* regarding whether an act is speech or conduct—since facial challenges deal with more than a single set of circumstances, the speech–conduct determination is by nature less specific than in an as-applied situation.

### B.     Application

The district court applied the facial framework to Appellees' as-applied challenge. Doing so was error.

Despite acknowledging the as-applied nature of the challenge, *e.g.*, ROA.337, the district court centered its analysis on "the language of the Act," ROA.343. As explained above, however, examining a law's constitutionality "based on its text alone" is the test for a *facial* challenge. *See Marcavage*, 609 F.3d at 273. Whether the Act's language is "directed at speech or newsgathering" is far from dispositive in the as-applied context. The district court additionally found that applying "the Act does not necessarily involve the regulation of speech or newsgathering" and is therefore "directed at conduct." ROA.343. Despite initially sounding like a statement made in an as-applied challenge, closer scrutiny demonstrates otherwise. The district court's words—that applying the Act "does not necessarily involve" the regulation of protected expression—shed light on the scope of the conducted analysis: because

speech or newsgathering is not *necessarily* involved in applying the Act, the district court was considering more than just Appellees' particular circumstances.

Given the as-applied nature of the challenge, the proper inquiry is whether by "engag[ing] in peaceful, nonobstructive newsgathering within 25 feet of law enforcement officers performing their duties in public space," *see* ROA.25, Appellees may be held liable under the Act without violating their First Amendment rights.

## II. Appellees' Actions Constitute Speech-Facilitating Conduct Warranting Heightened Scrutiny Under the First Amendment

### A. Applicable Law

The First Amendment forbids laws "abridging the freedom of speech." U.S. Const. amend. I. The word "speech" in the First Amendment is a term of art, though. Not all speech is protected by the First Amendment, and some conduct may be imbued with sufficient expressive qualities to receive First Amendment protection. *See Hines*, 117 F.4th at 775 & n.26 (collecting cases). *See generally* Leslie Kendrick, *Use Your Words: On the "Speech" in "Freedom of Speech,"* 116 Mich. L. Rev. 667, 686–97 (2018).

Drawing a comprehensive, workable line between speech and conduct has proven challenging—as one scholar opined, "Distinguishing speech from conduct is the First Amendment's Sisyphean task." Jane Bambauer, *Is Data Speech?*, 66 Stan. L. Rev. 57, 78 (2014). Nearly all conduct in which a person may engage bears "some

kernel of expression," but "such a kernel is not sufficient to bring" the conduct within the First Amendment's aegis. *Dallas v. Stanglin*, 490 U.S. 19, 25 (1989); *United States v. O'Brien*, 391 U.S. 367, 376 (1968) (rejecting "the view that an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea"); *see* Geoffrey R. Stone, *Government Secrecy vs. Freedom of the Press*, 1 Harv. L. & Pol'y Rev. 185, 208 (2007) ("[A]lmost every law can have an incidental effect on speech."). Yet starting from the premise that a generally applicable conduct regulation will rarely implicate the First Amendment is just as problematic, likely trampling the constitutional rights of speakers and listeners alike. *See generally* Srikanth Srinivasan, *Incidental Restrictions of Speech and the First Amendment: A Motive-Based Rationalization of the Supreme Court's Motive-Based Rationalization of the Supreme Court's Jurisprudence*, 12 Const. Comment. 401, 403–07 (1995).

Because no formal test cleanly delineates which acts receive First Amendment protection, the speech–conduct distinction remains "notoriously foggy." *Jenevein v. Willing*, 493 F.3d 551, 562 (5th Cir. 2007). It is nevertheless imperative to try to sort out. As now-Justice Kagan has explained:

> When "conduct" becomes a synonym for "speech" (or "speech" for "conduct"), the command of the First Amendment becomes incoherent; depending on whether the paradigm of conduct or speech holds sway, government can regulate either almost everything or almost

nothing. The speech/conduct line is hard to draw, but it retains much meaning in theory, and even more in practice.

Elena Kagan, *Regulation of Hate Speech and Pornography After* R.A.V., 60 U. Chi. L. Rev. 873, 884 (1993); *see Hines*, 117 F.4th at 777 ("'[C]alling an act 'speech' or 'conduct' (or 'actions') does not make it speech or conduct for First Amendment analysis. . . . It is a court's duty to consider a 'restriction's effect, as applied, in a very practical sense'—not to follow whatever label a state professes." (brackets omitted) (quoting *Thomas v. Collins*, 323 U.S. 516, 536 (1945))); *cf. United States v. Kimble*, --- F.4th ----, No. 23-50874, 2025 WL 1793832, at *6 (5th Cir. June 30, 2025) ("Although Congress can label certain classes of people—such as felons—dangerous, courts cannot grant those determinations blanket deference because the 'shifting benchmark' of felony status 'should not define the limits of the Second Amendment.'" (citation omitted)). Indeed, "[w]hile drawing the line between speech and conduct can be difficult," the Supreme Court has "long drawn it." *Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 585 U.S. 755, 769 (2018).

Over time, various categories of protected expression have emerged. The most straightforward is conventional speech—the spoken and written word. *See Texas v. Johnson*, 491 U.S. 397, 404 (1989). There is also expressive conduct, which is action intended to convey a message. *See id.* at 404–05. Quintessential examples include wearing an armband as an anti-war statement, *Tinker v. Des Moines Indep.*

*Cmty. Sch. Dist.*, 393 U.S. 503, 514 (1969), and participating in a parade, *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557, 568–69 (1995).

Relevant here, another group of protected acts is conduct necessary to engage in First Amendment activity.[3] *See, e.g.*, *Turner v. Driver*, 848 F.3d 678, 689 (5th Cir. 2017) ("[T]he First Amendment protects the act of making film, as 'there is no fixed First Amendment line between the act of creating speech and the speech itself.'" (quoting *ACLU v. Alvarez*, 679 F.3d 583, 596 (7th Cir. 2012))). Speech-facilitating conduct[4] is vital to protecting liberties the First Amendment safeguards. As the Supreme Court has recognized, "[l]aws enacted to control or suppress speech may operate at different points in the speech process." *Citizens United*, 558 U.S. at 336. Simply because a state actor targets a non-expressive step rather than the end result in an expressive process does not mean that the state actor may escape constitutional scrutiny. *See NRA of Am. v. Vullo*, 602 U.S. 175, 190 (2024) ("[A] government official cannot do indirectly what she is barred from doing directly."). Were it otherwise, "the government could bypass the Constitution by 'simply proceeding upstream and

---

[3] This is not to say that such antecedent conduct is expressive itself. *See, e.g.*, Ashutosh Bhagwat, *Producing Speech*, 56 WM. & MARY L. REV. 1029, 1042 (2015) ("The act of recording is not itself expressive in the way that burning a flag is expressive because it does not communicate a message; it creates a message to be communicated later."); *see also* Jocelyn Simonson, *Beyond Body Cameras: Defending a Robust Right to Record the Police*, 104 GEO. L.J. 1559, 1570 (2016) ("[T]here is a general consensus that to record an official in public implicates the First Amendment because it is either expressive conduct itself or conduct that is essentially preparatory to speech.").

[4] *See generally* Wesley J. Campbell, *Speech-Facilitating Conduct*, 68 STAN. L. REV. 1 (2016).

damming the source' of speech."[5] *W. Watersheds Project v. Michael*, 869 F.3d 1189, 1196 (10th Cir. 2017) (brackets omitted) (quoting *Buehrle v. City of Key West*, 813 F.3d 973, 977 (11th Cir. 2015)); *see* Campbell, *supra*, at 55 ("[T]he First Amendment must extend some protection for speech-facilitating conduct; otherwise the government could starve the supply of speech. Restrictions on speech, after all, can occur at different stages of the speech process.").

For instance, consider *Minneapolis Star & Tribune Co. v. Minnesota Commissioner of Revenue*, 460 U.S. 575 (1983). There, the state legislature imposed a tax on "[i]nk and paper used in publications," which ended up as "the only items subject to the . . . tax that were components of goods to be sold at retail." *Id.* at 578. Because the tax "single[d] out the press," an industry grounded in the freedom of speech, the First Amendment imposed "a heavy burden" on the state to justify the law, which it ultimately could not carry. *See id.* at 592–93. Even though using ink and paper to print publications was not itself expressive, it constituted conduct that facilitated expression, thereby warranting First Amendment protection. *See id.* at 582 (identifying the tax's constitutional infirmity as "burden[ing] rights protected by the First Amendment"); *see also Project Veritas v. Schmidt*, 125 F.4th 929, 943 (9th Cir.

---

[5] The principle that "[c]onstitutional rights . . . implicitly protect those closely related acts necessary to their exercise" pervades civil rights jurisprudence. *See, e.g.*, *Luis v. United States*, 578 U.S. 5, 25–28 (2016) (Thomas, J., concurring in the judgment) (Second Amendment and Sixth Amendment).

2025) (en banc) ("The various links in the chain of speech creation present opportunities for suppression: 'Control any cog in the machine, and you can halt the whole apparatus.'" (quoting *McConnell v. FEC*, 540 U.S. 93, 251 (2003) (Scalia, J., concurring in part and dissenting in part))); Justin Marceau & Alan K. Chen, *Free Speech and Democracy in the Video Age*, 116 COLUM. L. REV. 991, 1021 (2016) ("[P]rotecting speech at the point it is communicated is worthless if the state can prevent its creation.").

As another example, take tattooing. When a city effectively banned tattoo parlors via its municipal code, the complaining party readily established that tattoos are a protected form of expression. *See Anderson v. City of Hermosa Beach*, 621 F.3d 1051, 1060–61 (9th Cir. 2010). The Ninth Circuit then held that the actual process of tattooing is likewise due First Amendment protection, just not for the same reason as tattoos themselves are. *See id.* at 1061–62. It explained:

> "[T]he Supreme Court . . . has [n]ever drawn a distinction between the process of creating a form of pure speech (such as writing or painting) and the product of these processes (the essay or the artwork) in terms of the First Amendment protection afforded. Although writing and painting can be reduced to their constituent acts, and thus described as conduct, we have not attempted to disconnect the end product from the act of creation. . . . The process of expression through a medium has never been thought so distinct from the expression itself that we could disaggregate Picasso from his brushes and canvas, or that we could value Beethoven without the benefit of strings and woodwinds. In other words, we have never seriously questioned that the processes of writing

words down on paper, painting a picture, and playing an instrument are
purely expressive activities entitled to full First Amendment protection.

*Id.* at 1061–62 (emphasis omitted). Because the tattooing process is akin to "writing words down or drawing a picture," the court found it "inextricably intertwined with the purely expressive product (the tattoo)," thereby requiring "full First Amendment protection." *Id.* at 1062. As in *Minneapolis Star*, the First Amendment did not shield the tattooing process because the process is itself expressive, but rather because it facilitates speech, *i.e.*, a tattoo. *See ibid.* ("[A] tattoo cannot be created without the tattooing process any more than the Declaration of Independence could have been created without a goose quill, foolscap, and ink."); *see also, e.g.*, *Collins v. Ainsworth*, 382 F.3d 529, 544–45 (5th Cir. 2004) (scrutinizing roadblocks and vehicle checkpoints for violating the First Amendment when they led up to a concert).

These cases exemplify that it "makes no difference" whether "government regulation applies to creating, distributing, or consuming speech," *Brown v. Entm't Merchs. Ass'n*, 564 U.S. 786, 792 n.1 (2011)—"the First Amendment protects conduct and activities necessary for expression," *Brown v. Kemp*, 86 F.4th 745, 779 (7th Cir. 2023); *see Hill v. Colorado*, 530 U.S. 703, 745 (2000) (Scalia, J., dissenting) ("There comes a point . . . at which the regulation of action intimately and unavoidably connected with traditional speech is a regulation of speech itself.");

Marceau & Chen, *supra*, at 1018 ("The protection of acts that are the necessary antecedents to speech is essential to the protection of the speech itself.").

### B.    Application

The district court concluded that the Act primarily governs conduct, and any effect on Appellees' First Amendment rights was "incidental" to the regulated conduct. ROA.343. This conclusion is erroneous.

In its analysis, the district court did not consider the particular circumstances of what Appellees pleaded as the conduct at issue. *See Hines*, 117 F.4th at 777 ("[The Court] must determine . . . whether [the plaintiff]'s course of action involved speech."); *see also, e.g.*, *Ness v. City of Bloomington*, 11 F.4th 914, 923 (8th Cir. 2021) ("Whether the ordinance proscribes speech, conduct, or both depends on the particular activity in which an actor seeks to engage."). The district court appeared to rely on the Act's "general applicab[ility]"[6] and the notion that it concerned conduct to conclude that the Act, at most, incidentally burdened Appellees' First Amendment rights. *See* ROA.343. Apart from improperly applying the facial

---

[6] Appellants make much of the Act being a generally applicable conduct regulation. *See, e.g.*, Blue Br. at 48-50. But that data point is not analytically helpful here. *See* Dan T. Coenen, *Free Speech and Generally Applicable Laws: A New Doctrinal Synthesis*, 103 Iowa L. Rev. 435, 438 (2018) ("[D]ecisions that call for deferential review of 'generally applicable laws' based on their 'incidental' effects have not supplied useful definitions of these key terms."). Moreover, "[l]aws cast in broad terms can restrict speech as much as laws that single it out." *People for the Ethical Treatment of Animals, Inc. v. N.C. Farm Bureau Fed'n, Inc.*, 60 F.4th 815, 827 (4th Cir. 2023).

framework to an as-applied challenge, the district court erred because it did not consider the conduct at issue in the specific circumstances Appellees actually pleaded.

As well, the district court emphasized Appellees' status as "journalists" and the notion that their activities generally constituted "newsgathering." ROA.343. Whether they are journalists or were generally engaged in newsgathering is of little import because "the First Amendment does not guarantee the press a constitutional right of special access to information not available to the public generally." *Branzburg v. Hayes*, 408 U.S. 665, 684 (1972); *see, e.g.*, *Fields v. City of Philadelphia*, 862 F.3d 353, 359 (3d Cir. 2017) ("[R]ecording police activity in public falls squarely within the First Amendment right of access to information. As no doubt the press has this right, so does the public."). These points also bypass the heart of the analysis since the specifically alleged conduct was not considered.

Here, Appellees challenge the Act's constitutionality as applied to their "engag[ing] in peaceful, nonobstructive newsgathering within 25 feet of law enforcement officers performing their duties in public space." ROA.25. Nothing in the pleaded conduct would inhibit law enforcement officers from carrying out their duties given the conduct's "peaceful, nonobstructive" nature. *See Glik v. Cunniffe*, 655 F.3d 78, 84 (1st Cir. 2011) (determining that the "peaceful recording of an arrest"

is "not reasonably subject to limitation" so long as it "does not interfere with the police officers' performance of their duties"). And that the pleaded conduct would occur in a "public space" also avoids any issue regarding an invasion of privacy or property rights. *See Assoc. Press v. NLRB*, 301 U.S. 103, 132–33 (1937) (holding newspaper publishers have "no special privilege to invade the rights and liberties of others); *see also McCullen v. Coakley*, 573 U.S. 464, 476 (2014) ("[E]ven though the Act says nothing about speech on its face, . . . it restricts access to traditional public fora and is therefore subject to First Amendment scrutiny."); *Nicodemus v. City of South Bend*, 137 F.4th 654, 663 (7th Cir. 2025) ("Nowhere are the First Amendment's protections stronger than in public streets, sidewalks, parks, and similar locations, as these places 'have immemorially been held in trust for the use of the public . . . .'" (quoting *Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*, 460 U.S. 37, 45 (1983))).

Because the pleaded conduct concerns individuals "gather[ing] news ' . . . by means within the law,'" *Houchins v. KQED, Inc.*, 438 U.S. 1, 11 (1978) (plurality opinion) (quoting *Branzburg*, 408 U.S. at 681–82), these actions constitute

speech-facilitating conduct protected by the First Amendment: gathering information to inform the public on matters of public concern.[7]

## III.  Concluding That Appellees' Actions Is Speech-Facilitating Conduct As-Applied Is Important to This Circuit's First Amendment Jurisprudence

Concluding that Appellees' conduct as applied under the Act is speech-facilitating conduct deserving of considerable First Amendment protection is crucial here (and in future cases) for at least two overarching reasons.

First, properly categorizing Appellees' pleaded acts as speech-facilitating conduct on an as-applied basis strengthens the base-level protection afforded to that conduct. Enforcing "a generally applicable law" like the Act "may or may not be subject to heightened scrutiny under the First Amendment." *Turner Broad. Sys. v. FCC*, 512 U.S. 622, 640 (1994). Determining whether such "heightened scrutiny"

---

[7] What's more, and importantly for *amici*'s purposes, this conclusion does not stop with free speech—it logically extends to all First Amendment protections. *See Thomas*, 323 U.S. at 530 ("It was not by accident or coincidence that the rights to freedom in speech and press were coupled in a single guaranty with the rights of the people peaceably to assemble and to petition for redress of grievances. All these, though not identical, are inseparable. They are cognate rights, and therefore are united in the First Article's assurance.") (citation omitted)).

For instance, non-expressive conduct facilitating the right to assemble and the right to petition are just as imperative to exercising those First Amendment rights as the pleaded conduct here is to Appellees' free speech. Say that a group of peaceful protestors congregates at the northeastern edge of Audubon Park to take a trolley on the St. Charles Streetcar Line to reach Canal Street (where the permitted protest is set to occur). Prior to the protest, however, the city council passes an ordinance precluding the use of trolleys to attend protests. No one would seriously contend that the ordinance could survive First Amendment scrutiny even though it only regulates conduct—impairing the protestors' ability to peaceably assemble and petition their government by restricting conduct facilitating the exercise of those rights would not pass constitutional muster. *See* Michael W. McConnell, *Reconsidering* Citizens United *as a Press Clause Case*, 123 Yale L.J. 412, 421 (2013) (providing the original version of this hypothetical).

applies turns on whether the law in question "burdens a fundamental right, such as the right to free speech." *Pac. Coast Horseshoeing Sch., Inc. v. Kirchmeyer*, 961 F.3d 1062, 1068 (9th Cir. 2020). If so, then strict or intermediate scrutiny applies. *Ibid.* If not, then rational basis applies. *Golden Glow Tanning Salon, Inc. v. City of Columbus*, 52 F.4th 974, 979 (5th Cir. 2022).

The applicable level of scrutiny is "enormously consequential." *United States v. Skrmetti*, 145 S. Ct. 1816, 1872 (2025) (Sotomayor, J., dissenting). Under either heightened-scrutiny test, the government bears the burden. *See Hines*, 117 F.4th at 789 (Ramirez, J., concurring) (strict scrutiny); *id.* at 779 (majority opinion) (intermediate scrutiny). And both tests are onerous. *See Free Speech Coal., Inc. v. Paxton*, No. 23-1122, --- U.S. ----, 2025 WL 1773625, at *11 (U.S. June 27, 2025) ("Strict scrutiny . . . is 'the most demanding test known to constitutional law.'" (quoting *City of Boerne v. Flores*, 521 U. S. 507, 534 (1997))); *Hines*, 117 F.4th at 779 ("[I]ntermediate scrutiny is no gimme for the government: 'Intermediate scrutiny is still tough scrutiny, not a judicial rubber stamp.'" (original alterations omitted) (quoting *Cablevision Sys. Corp. v. FCC*, 597 F.3d 1306, 1323 (D.C. Cir. 2010) (Kavanaugh, J., dissenting))). By contrast, the burden under rational-basis review falls to the complaining party, *see Healthy Vision Ass'n v. Abbott*, 138 F.4th 385, 407 (5th Cir. 2025), and is nearly impossible to satisfy given rational basis's "extremely

low" threshold for the government, *United States v. Pollard*, 326 F.3d 397, 408 (3d Cir. 2003).

This is why ensuring the application of the appropriate standard (as applied or facial) in First Amendment challenges is crucial. The practical effect of applying the wrong standard can be devastating to state actors and citizens alike. Take this case for instance—regardless of how this Court treats the facial challenge, failing to consider the Act's impact on the pleaded conduct enables Appellants to suppress Appellees' free-speech rights as newsgatherers.[8] In other words, this sort of facial-versus-as-applied mismatch can have a cascading effect, *e.g.*, the wrong test leading

---

[8] As the district court considered, though, the First Amendment activity journalists engage in is not the sole province of the press. See ROA.405 (district court asking questions regarding a newsgathering citizen). Journalists are "entitled to the same rights as the general public," *Estes v. Texas*, 381 U.S. 532, 540 (1965)—to the extent observing or recording interactions with law enforcement constitutes protected newsgathering, journalists and citizens share that right equally, *see Smith v. City of Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000) ("[T]he press generally has no right to information superior to that of the general public."); *see also Glik*, 655 F.3d at 84 ("[C]hanges in technology and society have made the lines between private citizen and journalist exceedingly difficult to draw. . . . Such developments make clear why the news-gathering protections of the First Amendment cannot turn on professional credentials or status."). In this context, *amici* seek to protect individual rights from state actors whose actions transgress constitutional lines, and when citizens observe and record law enforcement officers performing their official duties in public spaces, *amici* are better equipped to stand up for the public's civil rights. *See, e.g.*, *Fields*, 862 F.3d at 359 ("Bystander videos provide different perspectives than police and dashboard cameras, portraying circumstances and surroundings that police videos often do not capture. Civilian video also fills the gaps created when police choose not to record video or withhold their footage from the public."); *see also Irizarry v. Yehia*, 38 F.4th 1282, 1289 (10th Cir. 2022) ("Filming the police and other public officials as they perform their official duties acts as 'a watchdog of government activity'" and furthers debate on matters of public concern." (citation omitted) (quoting *Leathers v. Medlock*, 499 U.S. 439, 447 (1991))); *Alvarez*, 679 F.3d at 599–600 (exploring the history of public observation of government action and its importance to democratic self-governance).

to the application of the comparatively lax rational-basis standard when heightened scrutiny is warranted instead. Applying the appropriate constitutional-scrutiny test avoids this problem and helps shield protected expression from state overreach.

Second, applying heightened scrutiny to the pleaded conduct given its connection to free speech will further defog the speech–conduct line. This jurisprudential sorting exercise will continue to plague courts and litigants. But holding that Appellees' conduct here is speech-facilitating conduct, which warrants heightened scrutiny under the First Amendment (despite lacking an inherently expressive quality), will clarify for courts and litigants that "conduct preparatory to speech is often deserving of full-dress First Amendment protection." Marceau & Chen, *supra*, at 1018. The Supreme Court has already recognized as much, and it is vital to the First Amendment rights of all for this Court to reaffirm the same.

## Conclusion

This Court should affirm the judgment of the district court.


Date:  July 3, 2025                              Respectfully submitted,

                                                 */s/ Griffin S. Rubin*
                                                 Griffin S. Rubin
                                                   *Counsel of Record*
                                                 Sbaiti & Company PLLC
                                                 Dallas Arts Tower
                                                 2200 Ross Avenue, Suite 4900W
                                                 Dallas, Texas 75201
                                                 (214) 432-2899
                                                 gsr@sbaitilaw.com

                                                 *Counsel for* Amici Curiae
                                                 *the Texas Civil Rights Project and*
                                                 *the Southern Poverty Law Center*

## CERTIFICATE OF SERVICE

I hereby certify that on July 3, 2025, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the CM/ECF system. All participants are registered CM/ECF users and will be served by the appellate CM/ECF system.

*/s/ Griffin S. Rubin*
Griffin S. Rubin

## Certificate of Compliance

This document complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and Circuit Rule 32.2 because it was produced using a computer and contains 6,040 words, excluding the parts of the document exempted by Fed. R. App. P. 32(f) and Circuit Rule 32.2. This filing complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and Circuit Rule 32.1 as well as the type-style requirements of Fed. R. App. P. 32(a)(6) because this filing has been prepared in proportionally spaced typeface using Microsoft Word in 14-point Equity A font.


Date: July 3, 2025                              */s/ Griffin S. Rubin*
                                                Griffin S. Rubin