No. 25-30128

# In the United States Court of Appeals for the Fifth Circuit

DEEP SOUTH TODAY, doing business as Verite News; GANNET COMPANY, INCORPORATED; GRAY LOCAL MEDIA, INCORPORATED; NEXSTAR MEDIA, INCORPORATED; SCRIPPS MEDIA, INCORPORATED; TEGNA, INCORPORATED,

*Plaintiffs-Appellees/*
*Cross-Appellants*

v.

LIZ MURRILL, in her official capacity as
Attorney General of Louisiana; ROBERT P. HODGES, in his official
capacity as Superintendent of the Louisiana State Police; HILLAR C.
MOORE, III, in his official capacity as District Attorney of East Baton
Rouge Parish,

*Defendants-Appellants/*
*Cross-Appellees.*

———————————————

On Appeal from the United States District Court
for the Middle District of Louisiana,
No. 3:24-cv-0623, Hon. John W. deGravelles

———————————————

**APPELLANTS/CROSS-APPELLEES' REPLY BRIEF**

———————————————

*(Counsel listed on inside cover)*

ELIZABETH B. MURRILL
Attorney General of Louisiana

OFFICE OF THE ATTORNEY GENERAL
1885 N. 3rd St.
Baton Rouge, LA 70802
(225) 888-7903
HuettemannC@ag.louisiana.gov

J. BENJAMIN AGUIÑAGA
Solicitor General

ZACHARY FAIRCLOTH
Deputy Solicitor General

CAITLIN A. HUETTEMANN
Assistant Solicitor General

*Counsel for Defendants-Appellants*

## CERTIFICATE OF INTERESTED PERSONS

A certificate of interested persons is not required here because, under the fourth sentence of Fifth Circuit Rule 28.2.1, Appellants—as "governmental" parties—need not furnish a certificate of interested persons.

*/s/ Caitlin A. Huettemann*
CAITLIN A. HUETTEMANN

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS......................................... iii

TABLE OF AUTHORITIES ....................................................... vi

INTRODUCTION .................................................................. 1

ARGUMENT ....................................................................... 4

I.    THE DISTRICT COURT LACKS SUBJECT MATTER JURISDICTION............ 4

    A.    Plaintiffs Lack Article III Standing on Each Claim .................. 4

        1.    Plaintiffs do not have standing for their void-for-vagueness claim (Count III)................................5

        2.    Plaintiffs do not have standing for their First Amendment claims (Counts I & II). ...................9

    B.    Plaintiffs' Claims Are Not Ripe. ................................. 19

    C.    Attorney General Murrill and Colonel Hodges are Entitled to Sovereign Immunity. ...........................................23

II.    THE DISTRICT COURT ERRED IN GRANTING THE PRELIMINARY INJUNCTION ...................................................................29

    A.    Plaintiffs Are Not Likely to Succeed on the Merits of Their Fourteenth Amendment Void-for-Vagueness Claim. .............. 30

    B.    The Balance of the Equities Favors the State. ........................ 36

III.    EACH OF PLAINTIFFS' CLAIMS FAILS ON ITS MERITS. ........................ 37

    A.    Plaintiffs' Fourteenth Amendment Void-for-Vagueness Claim Fails (Count III). ...........................................38

B.  Plaintiffs' First Amendment As-Applied Claim
Fails (Count I). .......................................................... 38

C.  Plaintiffs' First Amendment Facial-Overbreadth Claim
Fails (Count II. .......................................................... 43

IV.  THE DISTRICT COURT ERRED IN ENJOINING DEFENDANTS FROM
ENFORCING ACT 259 ACROSS THE STATE ........................................... 46

CONCLUSION ........................................................ 48

CERTIFICATE OF SERVICE ................................................. 50

CERTIFICATE OF COMPLIANCE ....................................... 51

# TABLE OF AUTHORITIES

**Cases**                                                           **Page(s)**

*ACLU of Ill. v. Alvarez,*
679 F.3d 583 (7th Cir. 2012) ................................................................ 15

*Ariz. Broadcasters Ass'n v. Brnovich,*
626 F. Supp. 3d 1102 (D. Ariz. 2022) .................................................. 11

*Ass'n of Am. Physicians & Surgeons Educ. Found. v. Am. Bd. of Internal Med.,*
103 F.4th 383 (5th Cir. 2024) .............................................................. 21

*Attala Cnty., Miss. Branch of NAACP v. Evans,*
37 F.4th 1038 (5th Cir. 2022) ......................................................... 4, 17

*Bailey v. Ramos,*
125 F.4th 667 (5th Cir. 2025) .............................................................. 11

*Boos v. Barry,*
485 U.S. 312 (1988) .............................................................................. 32

*Boy Scouts of America v. Dale,*
530 U.S. 640 (2000) .............................................................................. 38

*Braidwood Management, Inc. v. EEOC,*
70 F.4th 914 (5th Cir. 2023) ................................................... 15, 18, 20

*Branzburg v. Hayes,*
408 U.S. 665 (1972) .............................................................................. 12

*Broadrick v. Oklahoma,*
413 U.S. 601 (1973) .............................................................................. 30

*Choice Inc. of Tex. v. Greenstein,*
691 F.3d 710 (5th Cir. 2012) .............................................................. 21

*City of Austin v. Paxton,*
   943 F.3d 993 (5th Cir. 2019)......................................................22, 25

*City of Chicago v. Morales,*
   527 U.S. 41 (1999) ...........................................................29, 30, 32, 34

*Clapper v. Amnesty Int'l USA,*
   568 U.S. 398 (2013) ...............................................................................7

*Coates v. City of Cincinnati,*
   402 U.S. 611 (1971) .............................................................................35

*Colautti v. Franklin,*
   439 U.S. 379 (1979) .............................................................................33

*Ctr. for Individual Freedom v. Carmouche,*
   449 F.3d 655 (5th Cir. 2006)........................................................14, 21

*Deep S. Ctr. for Env't Just. v. EPA,*
   138 F.4th 310 (5th Cir. 2025) ..........................................................7, 17

*Doe v. Bolton,*
   410 U.S. 179 (1973), *abrogated by Dobbs v. Jackson
   Women's Health Org.*, 597 U.S. 215 (2022) ..........................................8

*E.T. v. Paxton,*
   19 F.4th 760 (5th Cir. 2021) ...............................................................36

*E.T. v. Paxton,*
   41 F.4th 709 (5th Cir. 2022) .................................................................3

*Eisenbach v. Zatzkin,*
   728 F. App'x 307 (5th Cir. 2018) (per curiam) ...................................11

*FDA v. All. for Hippocratic Med.,*
   602 U.S. 367 (2024) ..........................................................................7, 17

*Free Speech Coalition, Inc. v. Paxton,*
606 U.S. ----, 145 S. Ct. 2291 (2025) ........................................... *passim*

*Freedom Path, Inc. v. IRS,*
913 F.3d 503 (5th Cir. 2019) ............................................................. 20

*Gericke v. Begin,*
753 F.3d 1 (1st Cir. 2014) .......................................................... 10, 11

*Gonzales v. Carhart,*
550 U.S. 124 (2007) .................................................................... 2, 33

*Google, Inc. v. Hood,*
822 F.3d 212 (5th Cir. 2016) ................................................. 13, 19, 21

*Grayned v. City of Rockford,*
408 U.S. 104 (1972) ....................................................................... 31

*Hill v. Colorado,*
530 U.S. 703 (2000) ....................................................................... 31

*Hines v. Pardue,*
117 F.4th 769 (5th Cir. 2024) ....................................................... 2, 38

*Holder v. Humanitarian Law Project,*
561 U.S. 1 (2010) ..................................................................... *passim*

*Hous. Chron. Pub. Co. v. City of League City,*
488 F.3d 613 (5th Cir. 2007) ............................................................ 10

*Int'l Soc'y for Krishna Consciousness of Atlanta v. Eaves,*
601 F.2d 809 (5th Cir. 1979) ............................................................ 10

*Johnson v. Morales,*
946 F.3d 911 (6th Cir. 2020) ....................................................... *passim*

*Justice v. Hosemann,*
771 F.3d 285 (5th Cir. 2014) ...................................................... *passim*

*Kincaid v. Gov't of D.C.,*
854 F.3d 721 (D.C. Cir. 2017) (Kavanaugh, J.) ............... 31, 32, 34, 35

*Kolender v. Lawson,*
461 U.S. 352 (1983) ........................................................ 30, 35

*Lujan v. Defs. of Wildlife,*
504 U.S. 555 (1992) ............................................................... 15

*Magee v. City of S. Padre Island,*
463 F. App'x 377 (5th Cir. 2012) (per curiam) ............................ 29, 31

*Mauer v. Minnesota,*
625 F.3d 489 (8th Cir. 2010) ................................................. 33

*Members of City Council of City of L.A. v. Taxpayers for
Vincent,*
466 U.S. 789 (1984) ............................................................. 44

*Mi Familia Vota v. Ogg,*
105 F.4th 313 (5th Cir. 2024) ...................................... *passim*

*Miss. State Democratic Party v. Barbour,*
529 F.3d 538 (5th Cir. 2008) ........................................... 19, 20

*Monsanto Co. v. Geertson Seed Farms,*
561 U.S. 139 (2010) ............................................................... 4

*Moody v. NetChoice, LLC,*
603 U.S. 707 (2024) .................................................... *passim*

*Morgan v. White,*
964 F.3d 649 (7th Cir. 2020) ................................................. 38

*Munn v. City of Ocean Springs,*
763 F.3d 437 (5th Cir. 2014) ................................................. 29

*Murthy v. Missouri,*
   603 U.S. 43 (2024) ..................................................... *passim*

*Nat'l Endowment for the Arts v. Finley,*
   524 U.S. 569 (1998) ............................................................ 29

*Nat'l Press Photographers Ass'n v. McCraw,*
   90 F.4th 770 (5th Cir.), *cert. denied sub nom. Nat'l Press
   Photographers v. Higgins,* 145 S. Ct. 140 (2024) ....................... *passim*

*Neese v. Becerra,*
   123 F.4th 751 (5th Cir. 2024) ............................................... 3

*NetChoice, L.L.C. v. Fitch,*
   134 F.4th 799 (5th Cir. 2025) ............................................. 45

*Nicodemus v. City of S. Bend, Ind.,*
   137 F.4th 654 (7th Cir. 2025) ........................................ 39, 41

*NiGen Biotech, L.L.C. v. Paxton,*
   804 F.3d 389 (5th Cir. 2015) .............................................. 22

*Osborne v. Ohio,*
   495 U.S. 103 (1990) ........................................................ 34

*In re Paxton,*
   60 F.4th 252 (5th Cir. 2023) ............................................. 27

*Roark & Hardee LP v. City of Austin,*
   522 F.3d 533 (5th Cir. 2008) .................................... 19, 24, 26

*Rusanowsky v. City of Dallas,*
   2025 WL 855317 (5th Cir. Mar. 19, 2025) .......................... 11

*Seals v. McBee,*
   898 F.3d 587 (5th Cir. 2018), *as revised* (Aug. 9, 2018) .............. 26

*Shuttlesworth v. City of Birmingham*,
   382 U.S. 87 (1965) ......................................................... 33, 34

*Shuttlesworth v. City of Birmingham*,
   399 F.2d 529 (5th Cir. 1968) ............................................. 33

*Soc'y of Separationists, Inc. v. Herman*,
   959 F.2d 1283 (5th Cir. 1992) (en banc) ............................... 4

*Socialist Lab. Party v. Gilligan*,
   406 U.S. 583 (1972) ........................................................... 19

*Sorrell v. IMS Health Inc.*,
   564 U.S. 552 (2011) ........................................................... 38

*Speech First, Inc. v. Fenves*,
   979 F.3d 319 (5th Cir. 2020),
   *as revised* (Oct. 30, 2020) .................................... 9, 11, 14, 35

*Susan B. Anthony List v. Driehaus*,
   573 U.S. 149 (2014) ............................................................. 3

*Tanner v. City of Va. Beach*,
   674 S.E.2d 848 (Va. 2009) ................................................. 35

*Tex. All. for Retired Ams. v. Scott*,
   28 F.4th 669 (5th Cir. 2022) ............................. 22, 23, 25, 26

*Texas v. United States*,
   523 U.S. 296 (1998) ........................................................... 20

*Thomas v. Union Carbide Agric. Prods. Co.*,
   473 U.S. 568 (1985) ........................................................... 18

*TikTok Inc. v. Garland*,
   604 U.S. ----, 145 S. Ct. 57 (2025) ..................................... 39

*TransUnion LLC v. Ramirez,*
  594 U.S. 413 (2021) ...................................................................... 4, 17

*Trump v. CASA, Inc.,*
  606 U.S. ----, 145 S. Ct. 2540 (2025) ......................................... 3, 45, 46

*Trump v. Hawaii,*
  585 U.S. 667 (2018) ......................................................................... 46

*Turner Broad. Sys., Inc. v. F.C.C.,*
  520 U.S. 180 (1997) ......................................................................... 39

*Turner v. Lieutenant Driver,*
  848 F.3d 678 (5th Cir. 2017) ........................................................... 10

*United States v. Batchelder,*
  442 U.S. 114 (1979) ......................................................................... 31

*United States v. Bonin,*
  932 F.3d 523 (7th Cir. 2019) ........................................................... 43

*United States v. Clark,*
  582 F.3d 607 (5th Cir. 2009) ........................................................... 30

*United States v. Hansen,*
  599 U.S. 762 (2023) ......................................................................... 43

*United States v. Williams,*
  553 U.S. 285 (2008) .................................................................... 30, 42

*Vill. of Hoffman Ests. v. Flipside,*
  455 U.S. 489 (1982) .................................................................... 30, 31

*Villarreal v. City of Laredo,*
  94 F.4th 374 (5th Cir.) (en banc), *cert. granted, judgment
  vacated sub nom. Villarreal v. Alaniz,* 145 S. Ct. 368
  (2024) ............................................................................................. 12

*Ward v. Rock Against Racism,*
    491 U.S. 781 (1989) ...................................................................... 30, 40

*Wash. State Grange v. Wash. State Republican Party,*
    552 U.S. 442 (2008) ...................................................................... 29, 31

*White Hat v. Murrill,*
    141 F.4th 590 (5th Cir. 2025) ................................................ 24, 25, 26

*Whole Woman's Health v. Jackson,*
    595 U.S. 30 (2021) ................................................................................ 3

*Williams v. Davis,*
    No. 22-30181, 2023 WL 119452 (5th Cir. Jan. 6, 2023)
    (per curiam), *cert. denied*, 143 S. Ct. 2464 (2023) ............................. 23

## Statutes

La. R.S. 14:109(A) ............................................................................. *passim*

La. R.S. 40:1379(A) .................................................................................. 26

## Other Authorities

La. Const. art. IV § 8 ............................................................................. 24

2024 La. Sess. Law Serv. Act 259 ......................................................... 45

# INTRODUCTION

The Louisiana Legislature enacted Act 259 as a modest public-safety prophylactic: If an officer clearly orders a person within 25 feet to stop approaching or to retreat, the person must stop approaching the officer. *See* La. R.S. 14:109(A). Plaintiffs—legacy media organizations—challenge that common-sense protection as impeding their "newsgathering" on vagueness and First Amendment grounds. The district court enjoined the Act statewide—notwithstanding that no officer anywhere had issued even a precautionary order under the Act.

To defend that injunction, Plaintiffs treat bedrock limits on federal judicial power as optional. Because pre-enforcement suits are sometimes justiciable, they say this one must be—"whatever the form of words used." Red Br. 68. But their pre-enforcement claims are riddled with jurisdictional defects. This Court's precedents foreclose their theory for facial vagueness attacks on generally applicable criminal laws. *Nat'l Press Photographers Ass'n v. McCraw*, 90 F.4th 770, 782 (5th Cir. 2024). And their inability to identify a single order, arrest, or prosecution under Act 259—by anyone, against anyone—also leaves their claims speculative, untraceable, unripe, and outside *Ex parte Young*.

1

Their merits theories are no sounder. Applying the correct constitutional principles, this case is easy: Act 259 is a facially content-neutral public safety measure that fits squarely within the bounds of established First and Fourteenth Amendment precedent. Plaintiffs offer no serious reason their claims escape those precedents.

*First*, far from unconstitutionally vague, the Act is anchored to clear, objective factual predicates: (i) a clear order to stop approaching or retreat, and (ii) a knowing approach within twenty-five feet. La. R.S. 14:109(A). Those elements give ordinary people fair notice and constrain enforcement—and especially so given "scienter requirements alleviate vagueness concerns." *Gonzales v. Carhart*, 550 U.S. 124, 149 (2007). Strangely, nor do Plaintiffs say otherwise.

*Second*, Act 259 regulates approach, not speech. Based on the plain text of the Act, nothing about Plaintiffs' newsgathering or speech triggers the Act, so First Amendment scrutiny is unwarranted altogether. *See Hines v. Pardue*, 117 F.4th 769, 775 (5th Cir. 2024). At most, any incidental effect on newsgathering would subject the law to intermediate scrutiny, which simply does not require the State to enact hypothetical less-speech-restrictive laws. *Free Speech Coalition, Inc. v. Paxton*, 145 S.

Ct. 2291, 2317–18 (2025).

*Third*, Plaintiffs' half-hearted facial-overbreadth argument does not even grapple with whether a "substantial number" of the law's applications are unconstitutional "relative to [its] plainly legitimate sweep." *Moody v. NetChoice, LLC*, 603 U.S. 707, 723 (2024). That is fatal.

This Court should reverse the district court's preliminary injunction. At minimum, the scope of the injunction cannot stand, as any relief must be party-specific. *Trump v. CASA, Inc.*, 145 S. Ct. 2540, 2550–57 (2025).

# ARGUMENT

## I. THE DISTRICT COURT LACKS SUBJECT MATTER JURISDICTION.

"Article III jurisdiction is always first"—whether a pre-enforcement suit or not. *E.T. v. Paxton*, 41 F.4th 709, 714 (5th Cir. 2022) (quotation omitted). Dismissal remains warranted on Plaintiffs' pre-enforcement challenges to Act 259 because (A) Plaintiffs still lack standing on each claim against these Defendants, (B) their pre-enforcement claims are not ripe, and (C) Attorney General Murrill and Colonel Hodges are entitled to sovereign immunity. Plaintiffs—not the State—created that laundry list of jurisdictional defects and bear the burden to clean up their mess.

But all they offer is that pre-enforcement claims *can* be justiciable, so theirs are. Respectfully, that makes no sense. Like any other claim in federal court, "[t]he right to pre-enforcement review is qualified" by Article III's case or controversy requirement. *Neese v. Becerra*, 123 F.4th 751, 753 (5th Cir. 2024) (citing *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014); and *Whole Woman's Health v. Jackson*, 595 U.S. 30, 49 (2021)). Plaintiffs are wrong to suggest *these* particular claims meet those minimum qualifications.

### A. Plaintiffs Lack Article III Standing on Each Claim.

This appeal can "begin—and—end with standing." *Murthy v.*

4

*Missouri*, 603 U.S. 43, 56 (2024). As part of the Constitution's "case-or-controversy requirement," a plaintiff must make the tripartite standing showing of: (1) "an injury that is 'concrete, particularized, and actual or imminent'"; (2) that is "fairly traceable to the challenged action"; and (3) that is "redressable by a favorable ruling." *Attala Cnty., Miss. Branch of NAACP v. Evans*, 37 F.4th 1038, 1042 (5th Cir. 2022) (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010)).

Because "standing is not dispensed in gross," "'plaintiffs must demonstrate standing for each claim that they press' against each defendant, 'and for each form of relief that they seek.'" *Murthy*, 603 U.S. at 61 (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021)). And when, as here, a plaintiff seeks "prospective equitable relief, a plaintiff must demonstrate continuing harm or a 'real and immediate threat of repeated injury in the future.'" *Evans*, 37 F.4th at 1042 (quoting *Soc'y of Separationists, Inc. v. Herman*, 959 F.2d 1283, 1285 (5th Cir. 1992) (en banc)). Plaintiffs cannot establish any element of standing to support any of their claims.

### 1. Plaintiffs do not have standing for their void-for-vagueness claim (Count III).

Plaintiffs' only theory of standing for their vagueness claim has

been and continues to be their purportedly chilled newsgathering. ROA.111. But, under this Court's precedent, a plaintiff who has "never been arrested or prosecuted for violating" a criminal statute "lack[s] standing to preemptively challenge [it] under the Due Process Clause." *Nat'l Press Photographers Ass'n v. McCraw*, 90 F.4th 770, 782 (5th Cir. 2024), *cert. denied sub nom. Nat'l Press Photographers Ass'n v. Higgins*, 145 S. Ct. 140 (2024). When "the available evidence suggests that Defendants have never enforced [the statute] against Plaintiffs (or anybody else)," "[t]he issue of whether the [challenged] provisions are unlawfully vague in their proscriptions is therefore a mere hypothetical dispute lacking the concreteness and imminence required by Article III." *Id.*

While "vagueness *may* be grounds for a pre-enforcement challenge insofar as it chills protected speech under the First Amendment," it is not enough that a law might "prevent[] [a media plaintiff] from capturing newsworthy subjects cheaply and safely" or that it offers "no specific exemption for the press." *Id.* at 782 n.32, 788 (emphasis added). The challenged law must, instead, facially "implicate the First Amendment" to give rise to standing for a vagueness claim. *Id.* at 782 n.32; *accord*

6

*Johnson v. Morales*, 946 F.3d 911, 928–29 (6th Cir. 2020) ("she only has standing to challenge its purported vagueness as applied to the facts of her case").

Plaintiffs' reliance on *Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010), to undercut that principle is puzzling, Red Br. 27, not least because *Holder* and *National Press Photographers* espouse the same rule. True enough, pre-enforcement vagueness challenges to a criminal law *can* be "suitable for judicial review," 561 U.S. at 16—but only so in *Holder* because the Government had "charged about 150 persons" before and "those prosecutions involved the enforcement of the statutory terms at issue," *id.*; *accord Nat'l Press Photographers*, 90 F.4th at 782. More, the *Holder* statute on its face proscribed plaintiffs' intended First Amendment activity—material support for terrorist organizations. 561 U.S. at 7, 10, 16; *accord Nat'l Press Photographers*, 90 F.4th at 782 n.32.

Nothing of the sort in *National Press Photographers*—or here. Everyone agrees that no "peace officer has ordered [a] person to stop approaching or to retreat" under Act 259, La. R.S. 14:109(A)—never an order, never an arrest, never a prosecution, never a conviction, ROA.212, 215. Even read in the light most favorable to Plaintiffs then, their alleged

7

injury relies on a chain of contingent events, not one of which is "'certainly impending,'" and Plaintiffs "must show that *all* of them are." *Deep S. Ctr. for Env't Just. v. EPA*, 138 F.4th 310, 321 (5th Cir. 2025) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 (2013)).

This means Plaintiffs' only theory of standing for their vagueness claim depends on whether Act 259 implicates the First Amendment on its face. It does not. *See infra* Section III.B. Even the district court agreed: "Nothing in the language of the Act is directed at speech or newsgathering. The application of the Act does not necessarily involve the regulation of speech or newsgathering; rather, the Act is directed at conduct." *Compare* ROA.343 (citations omitted), *with Nat'l Press Photographers*, 90 F.4th at 787–88 ("Nothing in the No-Fly provisions has anything to do with speech or expression."). And Plaintiffs' rejoinder—that they are entitled to an assumption that they are "correct on the merits" for standing purposes, Red Br. 29—misses the point. Assuming the vagueness claim's merits for standing purposes does nothing to cure Plaintiffs' First Amendment theory, much less alter the statutory text of Act 259. *National Press Photographers* squarely forecloses that bootstrapping maneuver.

8

In the face of this principle, Plaintiffs attempt to distinguish *National Press Photographers* as concerning a "moribund" law. *See* Red Br. 27. Never mind that the opinion does not make that distinction or even use that word. *See Nat'l Press Photographers*, 90 F.4th at 782. Nor is that particularly surprising given that it addressed a 2019 lawsuit challenging 2013 Texas laws regulating drones—hardly dead letters. *Id.* at 777 & n.1. By contrast, the "moribund" law Plaintiffs pointed to below—and wisely hid from on appeal—was Connecticut's 1879 contraception ban. ROA.232 (quoting *Doe v. Bolton*, 410 U.S. 179 (1973), *abrogated by Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215 (2022)). The rule, and the one *National Press Photographers* and *Holder* actually supply, is straightforward: Absent any arrest or prosecution of anyone by these Defendants at the time the suit was filed, and because Act 259 does not facially proscribe Plaintiffs' newsgathering, Plaintiffs lack standing to press a facial void-for-vagueness claim.

## 2.     Plaintiffs do not have standing for their First Amendment claims (Counts I & II).

Plaintiffs also lack standing to sustain their First Amendment challenges to Act 259. Pre-enforcement or not, Article III requires a First Amendment plaintiff to show that "he (1) has an 'intention to engage in

a course of conduct arguably affected with a constitutional interest,' (2) his intended future conduct is 'arguably ... proscribed by [the challenge statute],' and (3) 'the threat of future enforcement of the [challenged statute] is substantial.'" *Speech First, Inc. v. Fenves*, 979 F.3d 319, 330 (5th Cir. 2020), *as revised* (Oct. 30, 2020). Despite Plaintiffs continual melding of the standing analyses for facial and as-applied claims, this Court evaluates standing for facial and as-applied challenges *independently. See Justice v. Hosemann*, 771 F.3d 285, 292 (5th Cir. 2014). That is because "[t]he distinction between facial and as-applied challenges bears legal significance," especially as to whether a plaintiff faces a substantial threat of future injury. *Speech First*, 979 F.3d at 334–35.

**a.** Plaintiffs lack standing for their facial-overbreadth claim.[1] Because facial challenges already "strain the limits of the federal courts' constitutional authority to decide only actual 'Cases' and 'Controversies,'" *Moody v. NetChoice, LLC*, 603 U.S. 707, 778 (2024) (Alito, J., concurring), alleging a "subjective chill" is insufficient, *Justice*,

---

[1] The district court was ultimately correct to dismiss Plaintiffs' facial-overbreadth claim on the merits. ROA.349–352; *infra* Section III.C.

771 F.3d at 291. Instead, a plaintiff must allege that he is "seriously interested in disobeying" a law, and defendants are "seriously intent on enforcing" it. *Justice*, 771 F.3d at 291 (citation and internal quotation omitted); *see, e.g.*, *Int'l Soc'y for Krishna Consciousness of Atlanta v. Eaves*, 601 F.2d 809, 815 (5th Cir. 1979); *Hous. Chron. Pub. Co. v. City of League City*, 488 F.3d 613, 619 (5th Cir. 2007).

Start with intended future conduct. Plaintiffs allege that they intend (1) to "engag[e] in peaceful, nonobstructive newsgathering within 25 feet of law enforcement officers" and (2) to "approach[] the scene of newsworthy events." Red Br. 31 (emphasis omitted) (citing ROA.23, 25). But even granting a constitutional interest in "newsgathering," *see Turner v. Lieutenant Driver*, 848 F.3d 678, 690 (5th Cir. 2017), Act 259 does nothing to limit that interest—Plaintiffs are free to video, record, broadcast, report, or livestream. An officer cannot tell you to stop that activity, only "to stop approaching or to retreat." La. R.S. 14:109(A). "Such an order, even when directed at a person who is filming, may be appropriate for legitimate safety reasons." *Gericke v. Begin*, 753 F.3d 1, 8 (1st Cir. 2014); *see Turner*, 848 F.3d at 687 n.27. Constitutionally problematic, however, is an order "specifically directed at the First

Amendment right to film police" without "the filming itself [] interfering, or [] about to interfere, with [an officer's] duties." *Gericke*, 753 F.3d at 8; *see, e.g.*, *Ariz. Broadcasters Ass'n v. Brnovich*, 626 F. Supp. 3d 1102, 1106 (D. Ariz. 2022) (enjoining law that "singles out the activity of video recording law-enforcement activity").

Plaintiffs' inability to show that Act 259 targets newsgathering poses no problem, they say, because they *also* intend to "approach[] the scene of newsworthy events." Red Br. 31 (citing ROA.23). But there is no "constitutional interest" in approaching the scene of newsworthy events. *Speech First*, 979 F.3d at 330. And this Circuit has rightly rejected attempts to twist the right to record police into the right to approach police officers in violation of criminal law. *E.g.*, *Bailey v. Ramos*, 125 F.4th 667, 672, 685 (5th Cir. 2025) (Plaintiff "went to downtown San Antonio to 'film the police,'" but "plaintiff's approaching the crime scene, which was contrary to the officer's instruction, was sufficient" probable cause for his arrest.); *Rusanowsky v. City of Dallas*, 2025 WL 855317, at *5 (5th Cir. Mar. 19, 2025) (per curiam) (Plaintiff's "identifying himself as 'press' does nothing to erase the fact that [the officer] had probable cause to arrest [plaintiff] for a misdemeanor—being a member of the

press does not provide a 'get out of jail free' card."); *Eisenbach v. Zatzkin*, 728 F. App'x 307, 311 (5th Cir. 2018) (per curiam) ("[I]n approaching the delivery truck, contrary to [the officer]'s instruction, [plaintiff]'s actions went beyond the realm of speech.").

Plaintiffs' slapping a newsgathering label on a constitutionally unprotected activity also runs headlong into this Court's repeated rejection of some generalized journalist standing. *Villarreal v. City of Laredo*, 94 F.4th 374, 396 (5th Cir.) (en banc) ("there is no journalist privilege or immunity from prosecution under generally applicable law"), *cert. granted, judgment vacated sub nom. Villarreal v. Alaniz*, 145 S. Ct. 368 (2024); *accord Branzburg v. Hayes*, 408 U.S. 665, 682 (1972). That claim for special Article III status remains unwarranted, especially where Act 259 constitutes a generally applicable law with no reference to First Amendment-protected activity.

**b.** Those same defects—and more—bleed into Plaintiffs' as-applied standing theory. A "developed factual record is *essential*" for an as-applied First Amendment claim. *Justice*, 771 F.3d at 292 (emphasis added). That is because federal courts redress only injuries that are "concrete, particularized, and actual or imminent." *Murthy*, 603 U.S. at

57. Where "plaintiffs request forward-looking relief, they must face 'a real and immediate threat of repeated injury'" caused by these Defendants. *Id.* at 58. And "[p]articularized facts are what allow a court to issue a narrowly tailored and circumscribed remedy" that an as-applied claim requires. *Justice*, 771 F.3d at 292.

When "the record is bereft of facts," courts risk that "the scope of [any] as-applied ruling [will] necessarily [be] vague, and the hallmarks of a traditional as-applied remedy—dependability and a limited scope—[will be] entirely absent." *Id.* at 294. So, without "a sufficiently specific record," courts must "decline[] to issue as-applied remedies," even in First Amendment cases. *Id.* (collecting cases). That is the situation here: There is no as-applied record upon which to tailor a remedy because Act 259 has never been applied by these Defendants, much less to these Plaintiffs. *See* ROA.212, 215. Plaintiffs' guesses, then, about how the Act may be applied to them at some future date simply do not suffice for standing purposes.

To be sure, pre-enforcement challenges do not necessitate "actual arrest or prosecution." Red Br. 33 (citing *Justice*, 771 F.3d at 291). But "invocation of the First Amendment cannot substitute for the presence of

14

an imminent, non-speculative irreparable injury." *Google, Inc. v. Hood*, 822 F.3d 212, 228 (5th Cir. 2016). For an as-applied claim, "[t]here must be some evidence that [a] rule would be applied to the plaintiff[.]" *Speech First*, 979 F.3d at 335 (concerning only a facial claim); *accord Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, 659 (5th Cir. 2006) ("The contention that a party cannot challenge a statute as-applied unless the statute has been applied to him is generally correct."). The *Justice* plaintiffs fells short on that front—so too do Plaintiffs here.

Plaintiffs' re-upped reliance on *Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010), is equally puzzling on the First Amendment front. The *Holder* plaintiffs had and intended to provide material support to terrorist organizations (that is, conduct arguably affected with a constitutional interest), and the Government agreed they would be prosecuted for *that* conduct under the statute (it was expressly proscribed by the statute). 561 U.S. at 15–16. (Plaintiffs here do not even make it that far, *supra* Section I.A.2.a). What Plaintiffs blink past is that the *Holder* plaintiffs *also* provided evidence of the substantial likelihood of their imminent prosecution under that law—that the Government defendants had "charged about 150 persons" (though not plaintiffs) under

the identical statutory provision. *Id.* at 16. And what Plaintiffs draw from to ignore that glaring fact is the *merits* of the *Holder* as-applied claim. Red Br. 33 (citing *Holder*, 561 U.S. at 28). But they do not clear the jurisdictional bar to get there.

Unable to satisfy their burden, Plaintiffs blame *Defendants* for failing to identify the allegations missing from Plaintiffs' Complaint. *See* Red Br. 32–34. This is misdirection. Of course, "the *plaintiffs* bear the burden to establish standing by setting forth 'specific facts.'" *Murthy*, 603 U.S. at 67 n.7 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). Nor does the ripeness inquiry in *Braidwood Management, Inc. v. EEOC*, 70 F.4th 914 (5th Cir. 2023), purport to invert that burden. But even under Plaintiffs' contrived test, the State has expressed time and again the contingences littered throughout Plaintiffs' Complaint, making it impossible for a court to fashion an appropriate remedy for the as-applied claim. *E.g.*, Blue Br. 20.

To this, Plaintiffs propose an as-applied remedy that, they say, both allows them to newsgather and gives officers discretion to effectuate Act 259 for "behavior that obstructs or interferes with effective law enforcement or the protection of public safety." Red Br. 34 (quoting *ACLU*

*of Ill. v. Alvarez*, 679 F.3d 583, 607 (7th Cir. 2012)). For one, that novel remedy appears nowhere in their Complaint or their preliminary injunction motion. *See* ROA.29 ("An injunction restraining Defendants from enforcing the Act."); ROA.125 ("Plaintiffs respectfully request that the Court issue a preliminary injunction prohibiting Defendants from enforcing the Act."). For another, and more fundamentally, the hypothetical remedy only proves the as-applied problem: The entire proposed injunction presupposes remedying Louisiana State Police's arresting individuals for not obstructing law enforcement duties *and* the Attorney General and East Baton Rouge District Attorney for prosecuting those individuals. But that prosecution is nowhere near the realm of substantially likely or certainly impending. *See* ROA.211–12, 214–15. Even Plaintiffs' shot-from-the-hip remedy thus lacks "the hallmarks of a traditional as-applied remedy—dependability and a limited scope." *Justice*, 771 F.3d at 294.

**c.** Even if Plaintiffs' alleged chilling effect alone were a cognizable injury-in-fact for standing purposes (it is not), Plaintiffs still fail to establish the traceability and redressability standing requirements— which they cast as the State's attempt to simply bring "the same

17

arguments in another mold." Red Br. 39 (combining standing analysis with sovereign immunity analysis). These two elements are equally foundational requirements for any plaintiff bringing any claim, and Plaintiffs here are no exception. *See Evans*, 37 F.4th at 1042.

Plaintiffs allege generally that, because "Defendants Murrill and Moore would be the prosecuting authorities," any purported injury is traceable back to those two Defendants. Red Br. 40. But that still does not show "any concrete link between their injuries and the [D]efendants' conduct," *Murthy*, 603 U.S. at 76, which is a "*heavily fact-dependent*" determination, *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 383 (2024) (emphasis added). "That requirement serves 'to ensure that in fact, the asserted injury was the consequence of'" Defendants' actions. *Deep S. Ctr. for Env't Just.*, 138 F.4th at 326 (quoting *Murthy*, 603 U.S. at 69 n.8). Yet across eight pages of "Factual Allegations" in the Complaint, Plaintiffs never mention a single Defendant, instead "treat[ing]" them "as a unified whole," even though the Supreme Court's recent "decisions make clear that 'standing is not dispensed in gross.'" *Murthy*, 603 U.S. at 61 (quoting *TransUnion*, 594 U.S. at 431). Accordingly, Plaintiffs altogether fail to allege how their supposed injury (for any claim) is

traceable to *these* Defendants—and that is fatal.

### B. Plaintiffs' Claims Are Not Ripe.

Plaintiffs' claims also fail the ripeness inquiry—again, a distinct constitutional minimum that Plaintiffs are required to establish to proceed with their lawsuit. The claims are not ripe here because (1) they are not "fit for judicial decision," and (2) there would be no "hardship to the parties" if the court withheld its consideration. *Braidwood Mgmt.*, 70 F.4th at 930.

**1.** A claim is "'fit for judicial decision' if it presents a pure question of law that needs no further factual development." *Id.* If a claim is "contingent [on] future events that may not occur as anticipated, or indeed may not occur at all," then the claim is not ripe. *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580–81 (1985). Those contingences and the need for further factual development are reason enough to dismiss Plaintiffs' claims.

Plaintiffs' main ripeness problem is that no "peace officer has ordered [a] person to stop approaching or to retreat" under Act 259. La. R.S. 14:109(A); *see* ROA.212, 215. The district court's conclusion that a "factual inquiry" and "further factual development" is "not necessary" for

19

"facial and vagueness challenges," and "certainly impending" enforcement is enough to maintain the as-applied claim, ROA.315, is directly contradicted by this Court's precedents, *see Google*, 822 F.3d at 224–25 (collecting cases) (For an as-applied claim, "our precedents lead us to conclude that this administrative subpoena was not ripe for adjudication by the district court.").

And the ripeness problems are even more pronounced for the two facial claims. "In the context of pre-enforcement review, which is still the case for the uncharged Plaintiff, examining facial vagueness is often difficult, perhaps impossible, because facts are generally scarce." *Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 547 (5th Cir. 2008). For "'gradations of fact or charge would make a difference as to criminal liability,' and so 'adjudication of the reach and constitutionality of [the statute] must await a concrete fact situation.'" *Holder*, 561 U.S. at 25 (citation omitted); *see Socialist Lab. Party v. Gilligan*, 406 U.S. 583, 587–88 (1972).

Pre-enforcement suits themselves do not change that "the existence and extent of" purportedly unconstitutional applications of a statute "are factual questions that cannot be assessed until [the State] has made some

effort to enforce the existing law." *Miss. State Democratic Party v. Barbour*, 529 F.3d 538, 547 (5th Cir. 2008). And nearly always "'[t]he operation of the statute is better grasped when viewed in light of a particular application.'" *Id.* (quoting *Texas v. United States*, 523 U.S. 296, 301 (1998)). The district court's merits analysis only proves the point: It assumes an entirely hypothetical officer issuing an Act 259 order "for no reason at all," thereby subjecting "every person … to the arbitrary and discriminatory enforcement of the Act." ROA.358–359. Plaintiffs' newfound as-applied remedy now doubles down on those misbegotten assumptions. *See* Red Br. 34.

Rather than presenting "pure questions of law," Red Br. 36, all of Plaintiffs' claims hinge on how, they speculate, Act 259 applies to their intended newsgathering. Without a hint of irony, Plaintiffs say the court should not look beyond the text for facial challenges. *Id.* (citing *Freedom Path, Inc. v. IRS*, 913 F.3d 503, 508 (5th Cir. 2019)). The State has long proposed that analysis would make the merits incredibly easy, if necessary at all. *Supra* Sections II, III. But Plaintiffs have never suggested their claims depend on the statute's text, and a cursory look at their merits briefing only crystalizes as much. *See* Red Br. 44–69. The

21

fitness prong sifts out their bald speculation. *See Braidwood Mgmt.*, 70 F.4th at 926; *Google*, 822 F.3d at 224–25.

**2.** Nor do Plaintiffs face hardship from denying review at this time. *See Ass'n of Am. Physicians & Surgeons Educ. Found. v. Am. Bd. of Internal Med.*, 103 F.4th 383, 396 (5th Cir. 2024). The type of hardship relevant here "inhere[s] in legal harms, such as the harmful creation of legal rights or obligations; practical harms on the interests advanced by the party seeking relief, and the harm of being forced to modify one's behavior in order to avoid future consequences." *Choice Inc. of Tex. v. Greenstein*, 691 F.3d 710, 715 (5th Cir. 2012) (citation modified). It also "must arise from a fear of prosecution that is not 'imaginary or wholly speculative.'" *Carmouche*, 449 F.3d at 660 (citation omitted).

Act 259 creates no legal rights or obligations, nor does it force anyone to modify behavior, absent very specific circumstances and a yet-issued order. As they reiterate at length in their briefing here, Plaintiffs "routinely encounter … members of the State Police" and come in "close contact with officers from a range of law enforcement agencies." ROA.18; Red Br. 14–17. What that means for *this case* is that there is no practical impediment to Plaintiffs filing an appropriately ripened lawsuit if they

22

actually are subject to an order, arrest, or prosecution under Act 259. Just because a pre-enforcement claim *can* be ripe, *see* Red. Br. 36, does not mean that Plaintiffs' are.

### C. Attorney General Murrill and Colonel Hodges are Entitled to Sovereign Immunity.

Attorney General Murrill and Colonel Hodges, in their official capacities, are also entitled to sovereign immunity, *City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019), and Plaintiffs cannot satisfy the *Ex parte Young* equitable exception, *Tex. All. for Retired Ams. v. Scott*, 28 F.4th 669, 671 (5th Cir. 2022) (Exception "permits plaintiffs to sue a state officer in his official capacity for an injunction to stop ongoing violations of federal law."). The district court was wrong to conclude otherwise for two reasons, neither of which Plaintiffs can overcome.

**1.** Plaintiffs do not allege any "ongoing violation[] of federal law." *Id.* Nor does their brief respond to this argument. *See* Red Br. 40–44. But for *Ex parte Young* to apply in the first place, "a complaint must allege that the defendant *is violating* federal law." *NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 394 (5th Cir. 2015). Where a state official "neither enforced the challenged statute against anyone nor threatened to do so," there is no "ongoing conduct" sufficient to trigger *Ex parte Young. Mi*

*Familia Vota v. Ogg*, 105 F.4th 313, 332–33 (5th Cir. 2024); *see, e.g.*, *Williams v. Davis*, No. 22-30181, 2023 WL 119452, at *6 (5th Cir. Jan. 6, 2023) (per curiam), *cert. denied*, 143 S. Ct. 2464 (2023).

Plaintiffs' repeated allegations that Act 259 "*will* directly burden the exercise of First Amendment rights," ROA.21, 23 (emphasis added), effectively admits that there was and is no *ongoing* violation of federal law. That alone forecloses *Ex parte Young*'s exception.

**2.** Plaintiffs also failed to allege that Attorney General Murrill and Colonel Hodges have the requisite authority to enforce Act 259. To invoke *Ex parte Young*, a plaintiff must allege that "the officer sued has some connection with the enforcement of the challenged act." *Scott*, 28 F.4th at 672 (citation modified). On the "connection" requirement, "some guideposts have emerged": (1) "an official must have more than the general duty to see that the laws of the state are implemented"; (2) "the official must have the particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty"; and (3) "enforcement means compulsion or constraint." *Id.* (citation modified). As to the last, "[i]f the official does not compel or constrain anyone to obey the challenged law, enjoining that official could not stop any ongoing

constitutional violation." *Id.* "[T]hose guideposts are sufficient to reject Plaintiffs' arguments for keeping the Attorney General [and Colonel Hodges] as [parties] to this suit." *White Hat v. Murrill*, 141 F.4th 590, 600 (5th Cir. 2025).

For Attorney General Murrill, the Complaint says only that she is the chief legal officer of the State, and so may, "upon the written request of a district attorney, ... advise and assist in the prosecution of any criminal case." ROA.16 (quoting La. Const. art. IV § 8). As this Court recently reaffirmed, the chief-legal-officer rationale, "standing alone, is insufficient because an official must have more than a 'general duty to see that the laws of the state are implemented' to trigger the *Ex Parte Young* exception." *White Hat*, 141 F.4th at 600 (quoting *City of Austin*, 943 F.3d at 999–1000). The Attorney General's "statewide supervisory authority over criminal prosecutions" likewise is insufficient because "[t]he Attorney General may only intervene 'upon the written request of a district attorney, to advise and assist in the prosecution of any criminal cases.'" *Id.* (quoting La. Const. art. IV, § 8). "Crucially, Plaintiffs do not allege that any sort of enforcement has occurred here." *Id.* at 601. "That is fatal, because [this Court's] caselaw requires 'specific enforcement

action *of the respective defendant state officials*' to apply the *Ex Parte Young* exception." *Id.* (quoting *City of Austin*, 943 F.3d at 1001).

In the face of this commonsense conclusion, Plaintiffs continue to claim (at 43) that the Attorney General's cooperative endeavor agreement with the Orleans Parish District Attorney would give her authority "to prosecute any and all criminal matters in Orleans Parish resulting from an arrest or investigation conducted by Louisiana State Police." ROA.17; *see* ROA.333. But that political agreement is a far cry from an allegation that Attorney General Murrill has a "particular *duty* to enforce" *this* Act through "compulsion or constraint." *Scott*, 28 F.4th at 672 (emphasis added). Without that direct nexus, Attorney General Murrill "is not a proper defendant under *Ex parte Young*" and the claims against her must be dismissed under controlling Fifth Circuit precedent. *Id.* At a minimum, any purported exception to sovereign immunity arising from the agreement would extend only to the scope of that agreement—Orleans Parish—an argument Plaintiffs fail to contend with. *See* ROA.17.

As for Colonel Hodges, the Complaint again says only that he is the Superintendent of the Louisiana State Police, who is charged to "prevent

and detect crime, apprehend criminals, enforce the criminal and traffic laws of the state, [and] keep the peace and good order in the state in the enforcement of the state's police powers." ROA.17 (citing La. R.S. 40:1379(A)). But again, much like with the Attorney General, such allegations of a "general duty to see that the laws of the state are implemented" are insufficient. *Scott*, 28 F.4th at 672; *White Hat*, 141 F.4th at 600. Plaintiffs do not allege that Colonel Hodges would implement Act 259 through "compulsion or constraint," *Scott*, 28 F.4th at 672, nor are their allegations anything like ordinary examples of such conduct, *see City of Austin*, 943 F.3d at 1001–02 (collecting cases). Thus, *Ex parte Young* cannot save Plaintiffs' claims against Colonel Hodges either.

Lastly, neither Attorney General Murrill nor Colonel Hodges has shown "a demonstrated willingness" to exercise any duty to enforce Act 259. The district court held—and Plaintiffs now latch onto (at 42–44)— that Attorney General Murrill's and the State Police's failure to affirmatively disavow enforcing the Act means *Ex parte Young* must apply. ROA.334. In doing so, the district court relied solely on *Seals v. McBee*, 898 F.3d 587 (5th Cir. 2018), *as revised* (Aug. 9, 2018), a standing

27

case that did not address sovereign immunity or *Ex parte Young* at all. *But see Mi Familia Vota*, 105 F.4th at 330 ("[W]hat is sufficient for standing will not necessarily establish an enforcement connection."). No holding by this Court regarding state officials' sovereign immunity has ever required such officials to affirmatively disavow enforcement of a law to be entitled to immunity. *Contra* Red Br. 44. So, for example, press interviews where the Attorney General explains a new law generally have no bearing on the *Ex parte Young* analysis. *E.g.*, *In re Paxton*, 60 F.4th 252, 257 (5th Cir. 2023) ("Whether Paxton may be sued under the *Ex parte Young* exception to sovereign immunity does not turn on Paxton's campaign statements or tweets."). *Ex parte Young* should "be assessed by reference to [State] law," *id.*, and Plaintiffs have nothing on that front.

This Court's decision in *National Press Photographers Association* drives the point home. Like there, Plaintiffs here do not allege that Defendants or their agencies actually enforced the Act or attempted to prosecute anyone for an alleged violation of the Act—"not even a scintilla of enforcement. Not even an iota of a scintilla. Zilch." *Nat'l Press Photographers*, 90 F.4th at 786; *see* ROA.212, 215. Even if "the *assumed*

28

substantial threat of future enforcement" qualifies as an injury-in-fact under the Article III standing analysis, *supra* Section I.A, such a conclusion "does not necessarily conflict with the fact that Defendants have not shown a demonstrated willingness to exercise [any alleged] enforcement duties under *Ex parte Young*." *Nat'l Press Photographers*, 90 F.4th at 786. Plaintiffs' attempts to tie the two analyses—standing and sovereign immunity—together is thus doomed to fail, especially considering the wealth of case law demonstrating that Plaintiffs' allegations regarding Attorney General Murrill and Colonel Hodges are plainly insufficient to trigger *Ex parte Young*.

\* \* \*

The district court lacked jurisdiction over each of Plaintiffs' claims from the day the Complaint was filed. Any of these jurisdictional defects warrants reversal and dismissal of Plaintiffs' Complaint, without any need to reach the merits.

## II.    THE DISTRICT COURT ERRED IN GRANTING THE PRELIMINARY INJUNCTION.

Even if the district court had jurisdiction to entertain Plaintiffs' claims (it did not), it erred in granting a preliminary injunction based on the void-for-vagueness claim because (A) Plaintiffs are not likely to

succeed on the merits of that claim, and (B) the balance of the equities favors the State.

### A. Plaintiffs Are Not Likely to Succeed on the Merits of Their Fourteenth Amendment Void-for-Vagueness Claim.

Even if Plaintiffs could overcome its jurisdictional defects, the vagueness claim fails under this Court's void-for-vagueness precedents and the test articulated in *City of Chicago v. Morales*, 527 U.S. 41 (1999). By skirting Act 259's language, relying on hypotheticals, and ignoring context, Plaintiffs make much out of what is, in reality, a generally applicable criminal statute that, like most laws, requires some degree of officer enforcement and poses no constitutional problem.

"Vagueness doctrine is an outgrowth not of the First Amendment, but of the Due Process Clause." *Munn v. City of Ocean Springs*, 763 F.3d 437, 439 (5th Cir. 2014). This Court makes "facial vagueness challenges … generally 'disfavored for several reasons'"—not least "the fact that facial invalidity claims often 'rest on speculation.'" *Magee v. City of S. Padre Island*, 463 F. App'x 377, 380 (5th Cir. 2012) (per curiam) (quoting *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450 (2008)); *see supra* Sections I.A, B. Plaintiffs' proposed "[f]acial invalidation 'is, manifestly, strong medicine' that 'has been employed by

the Court sparingly and only as a last resort.'" *Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 580 (1998) (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973)).

"To be unconstitutionally vague, a statute must be impermissibly vague in *all its applications,* including its application to the party bringing the vagueness challenge." *United States v. Clark*, 582 F.3d 607, 612–13 (5th Cir. 2009) (citation modified) (emphasis added); *see Vill. of Hoffman Ests. v. Flipside*, 455 U.S. 489, 495 (1982) (courts "should uphold the challenge only if the enactment is impermissibly vague in all of its applications"). Insufficient is "the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved." *United States v. Williams*, 553 U.S. 285, 306 (2008). For "perfect clarity and precise guidance have never been required." *Id.* at 304 (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989)).

A vagueness plaintiff must prove that, in every application, the challenged criminal law fails to "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357

(1983); *see Morales*, 527 U.S. at 56. And the plaintiff must do so without "go[ing] beyond the statute's facial requirements" and "speculat[ing] about 'hypothetical' or 'imaginary' cases." *Magee*, 463 F. App'x at 380 (quoting *Wash. State Grange*, 552 U.S. at 449–50); *see Hill v. Colorado*, 530 U.S. 703, 733 (2000) ("speculation about possible vagueness in hypothetical situations not before the Court will not support a facial attack on a statute when it is surely valid 'in the vast majority of its intended applications'"). That is because hypotheticals are "of no due process significance unless the possibility ripens into a prosecution." *Vill. of Hoffman*, 455 U.S. at 503 n.21.

On a mountain of hypotheticals, Plaintiffs claim that Act 259 facially fails to provide fair notice and is susceptible to arbitrary and discriminatory enforcement—akin to the anti-loitering ordinance in *Morales*. ROA.122–23. But, "[a]s always, enforcement requires the exercise of some degree of police judgment." *Grayned v. City of Rockford*, 408 U.S. 104, 114 (1972). In fact, "Supreme Court precedent teaches that the presence of enforcement discretion *alone* does not render a statutory scheme unconstitutionally vague." *Kincaid v. Gov't of D.C.*, 854 F.3d 721, 729 (D.C. Cir. 2017) (Kavanaugh, J.) (emphasis added) (collecting cases);

*see United States v. Batchelder*, 442 U.S. 114, 123–26 (1979).

The distinguishing factor is whether a law makes criminal an officer's subjective judgment beyond a citizen's control. *See* Blue Br. 40 (collecting cases). Act 259 permits some enforcement discretion, but nothing in the Act "give[s] police 'absolute discretion' to 'decide what activities' constitute criminal offenses." *Kincaid*, 854 F.3d at 729 (quoting *Morales*, 527 U.S. at 61). The Act criminalizes "knowingly or intentionally approach[ing]" an officer and only under very narrow circumstances. La. R.S. 14:109(A); *see Boos v. Barry*, 485 U.S. 312, 332 (1988) (rejecting vagueness challenge where statute "is crafted for a particular context and given that context, it is apparent" what conduct is prohibited). Only against this small class of approachers could an officer even invoke the Act—but whether a citizen "approaches" (and violates the Act) calls for zero subjectivity from an officer.

Several other problems plague Plaintiffs' vagueness claim. The "knowingly or intentionally" *mens rea* requirement of Act 259 is especially problematic, as *Morales* makes clear, because it was the absence of a *mens rea* requirement that doomed the anti-loitering ordinance there. *See Morales*, 527 U.S. at 83 (Scalia, J., dissenting).

Surprisingly, Plaintiffs brush off Act 259's explicit *mens rea* requirement—without mention of *Morales*. *See* Red Br. 48. But even before *Morales*, the Supreme Court regularly recognized that the "constitutionality of a vague statutory standard is closely related to whether that standard incorporates a requirement of *mens rea*." *Colautti v. Franklin*, 439 U.S. 379, 395 (1979) (collecting cases). And since *Morales*, the Court has only reaffirmed the longstanding principle that "scienter requirements alleviate vagueness concerns." *Gonzales v. Carhart*, 550 U.S. 124, 149 (2007); *see* Blue Br. 41–42 (collecting cases).

To this, Plaintiffs cite *Shuttlesworth v. City of Birmingham*, 382 U.S. 87 (1965)—17 times. That is both odd and unavailing. Act 259's hypothetical application to these Plaintiffs bears little resemblance to an "effort to convict the Reverend Shuttlesworth for his one-man blocking of the sidewalks of City of Birmingham"—in George Wallace's Alabama no less. *See Shuttlesworth v. City of Birmingham*, 399 F.2d 529, 530–32 (5th Cir. 1968) (recounting the facts of his arrest). There, "the Alabama trial court had made no findings of fact and rendered no opinion," nor was it clear "any evidence had been received or recorded in the Alabama court." *Mauer v. Minnesota*, 625 F.3d 489, 492 (8th Cir. 2010).

34

What *Shuttlesworth* says on the law actually favors the State. With all of Plaintiffs' hand waving about Act 259's unconstitutionality "need[ing] no demonstration," Red Br. 1, it might be a surprise to learn the Supreme Court in *Shuttlesworth* did not hold any law unconstitutional, though it rightly reversed Reverend Shuttlesworth's conviction. 382 U.S. at 87. Among myriad Due Process problems and the scant record, the Court feared the Alabama trial court had not applied the ordinance "[a]s subsequently construed by the Alabama Supreme Court," which "merely made it criminal for an individual who was blocking free passage along a public street to disobey a police officer's order to move." *Osborne v. Ohio*, 495 U.S. 103, 118 (1990). But *that* construction of the ordinance posed no vagueness problem for the Court. *Shuttlesworth*, 382 U.S. at 91 ("so construed, we cannot say that the ordinance is unconstitutional"). So it remanded to ensure the State prove as an element of his conviction that Reverend Shuttlesworth "obstruct[ed] free passage" of the sidewalk," *id.*—a stretch at best since he stood alone.

*Shuttlesworth* thus stands for the same proposition as *Morales*: Laws cannot "give police 'absolute discretion' to 'decide what activities'

constitute criminal offenses." *Kincaid*, 854 F.3d at 729 (quoting *Morales*, 527 U.S. at 61). But it is not "the presence of enforcement discretion alone" that "render[s] a statutory scheme unconstitutionally vague." *Id.* It is the *absence* of any objective factual predicate, and, instead, leaving criminalized conduct subjectively in the eyes of the officer. *E.g. Coates v. City of Cincinnati*, 402 U.S. 611, 615 (1971) (criminalizing "annoying" conduct); *Tanner v. City of Va. Beach*, 674 S.E.2d 848, 853 (Va. 2009) (criminalizing "excessive" noise); *Kolender*, 461 U.S. at 361 (criminalizing not being "credible" or "reliable"). Act 259, however, is so bounded by criminalizing "approaching" in narrow circumstances, La. R.S. 14:109(A)—an objective fact that would be left to a jury to find or not.

## B. The Balance of the Equities Favors the State.

The equities likewise favor Defendants. To conclude otherwise, the district court and Plaintiffs must collapse the merits with the equities. *See* ROA.363–364; Red Br. 69–70. When the equities are given their due consideration, though, the State prevails, for all the same reasons laid out in its Opening Brief. *See* Blue Br. 44–46.

*First*, Plaintiffs will not suffer any irreparable harm from the

absence of an injunction. Because Plaintiffs cannot point to any instance when Act 259 has been implemented against them, much less in an unconstitutional way, Plaintiffs cannot show any imminent irreparable harm. *See* ROA.212, 215; *supra* Section I.

*Second*, while Plaintiffs face no imminent irreparable harm absent an injunction, both the State of Louisiana and the public suffer from enjoining a duly enacted law, especially one aimed at public safety. *See, e.g.*, *E.T. v. Paxton*, 19 F.4th 760, 770 (5th Cir. 2021) ("When a statute is enjoined, the State necessarily suffers the irreparable harm of denying the public interest in the enforcement of its laws." (citation modified)). The equities thus weigh in Defendants' favor.

*    *    *

Because Plaintiffs failed to establish any of the factors justifying injunctive relief, the district court erred in granting the preliminary injunction.

## III.   EACH OF PLAINTIFFS' CLAIMS FAILS ON ITS MERITS.

This Court should also reverse the district court's denial of Defendants' motion to dismiss Plaintiffs' void-for-vagueness and First Amendment as-applied claims. And despite Plaintiffs' half-hearted

37

attempt to revive it (at 65–69), the district court got it right on the facial-overbreadth claim: Plaintiffs cannot satisfy the controlling standard for pleading facial claims under *Moody v. NetChoice, LLC*, 603 U.S. 707 (2024).

## A. Plaintiffs' Fourteenth Amendment Void-for-Vagueness Claim Fails (Count III).

For all the jurisdictional and merits reasons that the district court erred in granting the preliminary injunction on vagueness grounds, the district court similarly erred in failing to dismiss Plaintiffs' void-for-vagueness claim. *Supra* Sections I, II. Because the Court lacks subject matter jurisdiction over the claim, and because Plaintiffs fail to state a claim under the Due Process Clause, the claim must be dismissed.

## B. Plaintiffs' First Amendment As-Applied Claim Fails (Count I).

The district court also erred in denying the motion to dismiss Count I because Plaintiffs cannot state a plausible as-applied First Amendment claim. As all parties can agree, Plaintiffs failed to allege any application of Act 259 at all, *supra* Sections I.A, B, and no one has ever issued an order, made an arrest, or prosecuted a case under Act 259, ROA.212, 215. In all events, though, Plaintiffs' claim fails, as made exceedingly clear by the Supreme Court's recent decision in *Free Speech Coalition, Inc. v.*

*Paxton*, 606 U.S. ----, 145 S. Ct. 2291, 2299 (2025).

As explained at length in the State's Opening Brief (at 48–52), Act 259 regulates conduct, not speech, and therefore does not trigger First Amendment scrutiny at all. *See Hines v. Pardue*, 117 F.4th 769, 776 (5th Cir. 2024); *Morgan v. White*, 964 F.3d 649, 652 (7th Cir. 2020); *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 567 (2011) ("[T]he First Amendment does not prevent restrictions directed at commerce or conduct from imposing incidental burdens on speech."). Under the plain terms of Act 259, "what triggers coverage" is physical encroachment—approaching—not speech. *See Hines*, 117 F.4th at 777. Again, the text of the Act provides: "No person shall knowingly or intentionally *approach* within twenty-five feet of a peace officer who is lawfully engaged in the execution of his official duties after the peace officer has ordered the person to stop approaching or to retreat." La. R.S. 14:109(A) (emphasis added). So the Act applies to anyone who "approaches" an officer after being told to stop approaching or to retreat. *Id.* Act 259 need not be subjected to First Amendment scrutiny at all.

If subject to First Amendment scrutiny (it is not), Act 259 "is subject to intermediate scrutiny" because it "has 'only an incidental effect on

39

protected speech.'" *Free Speech Coal.*, 145 S. Ct. at 2306 (quoting *Boy Scouts of America v. Dale*, 530 U.S. 640, 659 (2000)); *c.f. Nicodemus v. City of S. Bend, Ind.*, 137 F.4th 654, 667 (7th Cir. 2025) (finding similar buffer law "a content-neutral restriction on the 'time, place, or manner of protected speech'" (citation omitted)). Indeed, even Plaintiffs no longer appear to argue for the application of strict scrutiny to Act 259, nor could they. *See* Red Br. 60. Their claim fails under the intermediate scrutiny framework, a test that both Plaintiffs and the district court incorrectly applied. *See* ROA.344–346; Red Br. 60–62.

"A statute survives intermediate scrutiny if it 'advances important governmental interests unrelated to the suppression of free speech and does not burden substantially more speech than necessary to further those interests.'" *Free Speech Coal.*, 145 S. Ct. at 2317 (quoting *Turner Broad. Sys., Inc. v. F.C.C.*, 520 U.S. 180, 189 (1997)). "Under intermediate scrutiny, a regulation is adequately tailored so long as the government's interest 'would be achieved less effectively absent the regulation' and the regulation 'does not burden substantially more speech than is necessary to further that interest.'" *Id.* (quoting *TikTok Inc. v. Garland*, 604 U.S. ----, 145 S. Ct. 57, 67 (2025)). Importantly, a statute's

"validity 'does not turn on [a court's] agreement with the [Legislature] concerning the most appropriate method for promoting significant government interests' or the degree to which those interests should be promoted." *Id.* (citation modified) (quoting *Ward*, 491 U.S. at 800). The choice to regulate in such circumstances "is well within the State's discretion under intermediate scrutiny." *Id.*

But narrow tailoring is reserved for *strict* scrutiny only. *Id.*; *but see* ROA.345 (district court requiring "narrow tailoring"). To require it within intermediate scrutiny is reversible legal error under *Free Speech Coalition*: "[E]ven assuming these approaches are equally or more effective, under intermediate scrutiny a 'regulation will not be invalid simply because a court concludes that the government's interest could be adequately served by some less-speech-restrictive alternative.'" 145 S. Ct. at 2318 (quoting *Ward*, 491 U.S. at 800). But the district court did just that, speculating that "the Act is not narrowly tailored because the government interests could be achieved by a smaller buffer zone, which would allow [Plaintiffs] to gather the news more easily." ROA.345 ("Examples of how the Act could be less restrictive while still achieving the governmental interests abound.").

41

Remand to correct that legal error would serve no purpose, however, because the district court agreed—outside its proposed less-speech-restrictive alternatives—that the State has numerous legitimate governmental interests supporting Act 259 and that the Act advances these interests. ROA.344–45 ("Incorporating either set of limitations would continue to further the government's legitimate interests"); *see* Blue Br. 55–57. Of course, Plaintiffs "contend that [the State] could adopt less restrictive means of" advancing those interests. *Free Speech Coal.*, 145 S. Ct. at 2318; *see* Red Br. 60–62. Yet the State's interests "would be achieved less effectively absent" Act 259, and "it cannot be said that a substantial portion of the burden" (if any) that the Act imposes "fails to advance [the State's] goals." *Free Speech Coal.*, 145 S. Ct. at 2318 (citation modified). "That is enough to show that the [Louisiana] Legislature adequately tailored [Act 259], regardless of whether some other approach might be superior." *Id.*; *see also Nicodemus*, 137 F.4th at 669 ("the buffer law is not substantially broader than necessary to achieve Indiana's interest"). Plaintiffs cannot, therefore, state an as-applied claim under the controlling intermediate scrutiny test. That claim must be dismissed.

## C. Plaintiffs' First Amendment Facial-Overbreadth Claim Fails (Count II).

The district court correctly dismissed Plaintiffs' facial-overbreadth claim because Plaintiffs completely failed to satisfy the controlling framework for such claims outlined in *Moody v. NetChoice, LLC*, 603 U.S. 707 (2024). Rather than engaging with that test in their brief here (beyond a mere two sentences, at 67), Plaintiffs brush off Supreme Court precedent as "semantic[s]," confuse the standards for as-applied and facial claims, and, even more surprisingly, attempt to inject the vagueness analysis into the mix as well. Red Br. 65. This misunderstands how facial-overbreadth claims work, and so dooms Plaintiffs' claim here.

"[F]acial challenges are disfavored." *Moody*, 603 U.S. at 744. Plaintiffs' choice to litigate their case as a facial challenge thus "comes at a cost" because the Supreme Court "has made facial challenges hard to win." *Id.* at 723; *see* ROA.26 (Plaintiffs labelling "**COUNT II**" as a "**Violation of the First Amendment (Facial Overbreadth)**"). To successfully mount such a challenge, "the question is whether a substantial number of the law's applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Moody*, 603 U.S. at 723 (citation modified); *see also United States v. Williams*, 553 U.S. 285,

43

292 (2008) (requiring plaintiff to establish that a statute "prohibits a substantial amount of protected speech," "relative to [its] plainly legitimate sweep"); *United States v. Hansen*, 599 U.S. 762, 770 (2023) ("To justify facial invalidation, a law's unconstitutional applications must be realistic, not fanciful, and their number must be substantially disproportionate to the statute's lawful sweep."). The Court must "decide which of the laws' applications violate the First Amendment, and to measure them against the rest." *Moody*, 603 U.S. at 725.

"This is a high hurdle to overcome." *Justice*, 771 F.3d at 296. "The mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge." *United States v. Bonin*, 932 F.3d 523, 536–37 (7th Cir. 2019) (citation modified). "In the absence of a lopsided ratio, courts must handle unconstitutional applications as they usually do—case-by-case." *Hansen*, 599 U.S. at 770. That requires stacking up "the numerator (the number of unconstitutional applications)" to the "denominator (the total number of possible applications)." *Moody*, 603 U.S. at 780 (Alito, J., concurring).

Plaintiffs do not attempt to satisfy this balancing test at all.[2] *See*

---

[2] Plaintiffs seem to rely alternatively on the district court's intermediate

*Members of City Council of City of L.A. v. Taxpayers for Vincent*, 466 U.S. 789, 802 (1984) ("It would therefore be inappropriate … to entertain an overbreadth challenge" where plaintiffs "have simply failed to demonstrate" the requisite imbalance.). As the district court correctly found, "[b]ecause the Act applies to any bystander, journalist or not, the Act may be applied in a number of circumstances that do not encroach on the First Amendment." ROA.350. In the face of these widespread constitutional applications, "Plaintiffs have not alleged which applications of the Act would be unconstitutional; instead they simply allege that the Act 'sweeps in an enormous breadth of protected speech and newsgathering.'" ROA.350 (quoting ROA.27). The district court was exactly right: Plaintiffs failed to establish the requisite imbalance to subject Act 259 to a facial challenge.

Ultimately, Plaintiffs want this Court, "whatever the form of words used" in each distinct claim, to hold Act 259 unlawful for the same exact

---

scrutiny analysis for the as-applied claim to support their facial claim here. But, even were that appropriate, because Plaintiffs' as-applied claim fails under the appropriate intermediate scrutiny framework, *supra* Section III.B, their attempt to use the district court's favorable holding on that claim to carry their facial claim across the line also fails. *See, e.g.*, Red Br. 68 ("But regardless, the point is academic: For the reasons already canvassed above, the Act fails an ordinary application of intermediate scrutiny…").

reason, without paying attention to the actual test that this Court and Supreme Court precedent requires for each claim. Red Br. 68. But this Court has made abundantly clear that is inappropriate. *See, e.g.*, *NetChoice, L.L.C. v. Fitch*, 134 F.4th 799, 809 (5th Cir. 2025) ("By not determining the full scope of actors regulated by the Act and the activities it regulates, the district court did not apply *Moody* in the manner now required."). The district court properly dismissed Plaintiffs' facial-overbreadth claim, and this Court should affirm.

## IV.   THE DISTRICT COURT ERRED IN ENJOINING DEFENDANTS FROM ENFORCING ACT 259 ACROSS THE STATE.

Finally, at a minimum, the district court erred in issuing an injunction that reaches beyond the named Plaintiffs here. Under the district court's preliminary injunction, "Defendants and their agents shall be prohibited from enforcing Louisiana Revised Statutes § 14:109." ROA.367. Such an injunction would apply to any enforcement against everyone, everywhere, at any time.

But as the Supreme Court recently held in *Trump v. CASA, Inc.*, 606 U.S. ----, 145 S. Ct. 2540 (2025), granting relief to an innumerable number of non-parties is unlawful. Like the injunction there, the injunction here plainly exceeds the district court's equitable authority: "A

universal injunction can be justified only as an exercise of equitable authority, yet Congress has granted federal courts *no such power*." *Trump*, 145 S. Ct. at 2550 (emphasis added). To be sure, "[t]here is scarcely a suit at law, or in equity, ... in which a general statute is interpreted, that does not involve a question in which other parties are interested." *Id.* at 2552 (citation modified). "But to allow all persons subject to the statute to be treated as parties to a lawsuit 'would confound the established order of judicial proceedings.'" *Id.* (citation omitted). "While party-specific injunctions sometimes 'advantag[e] nonparties,' they do so only incidentally." *Id.* at 2557 (quoting *Trump v. Hawaii*, 585 U.S. 667, 717 (2018) (Thomas, J., concurring)). So even "[w]hen a court concludes that the Executive Branch has acted unlawfully, the answer is not for the court to exceed its power, too." *Id.* at 2562.

The district court's injunction violates the Supreme Court's clarified rule. Even if Plaintiffs had sufficiently alleged injury to themselves because of Act 259 (they did not), there is no basis to extend the injunction beyond remedying those specifically alleged injuries by enjoining these Defendants from enforcing the law against these Plaintiffs. And Plaintiffs' gesturing (at 69) to the "loss of First

Amendment freedoms" generally cannot overcome this understanding. At a minimum, therefore, the Court should vacate the injunction to the extent it applies beyond these named Plaintiffs.

## CONCLUSION

The Court should reverse, vacate the injunction, and dismiss for lack of jurisdiction or for failure to state a claim—or alternatively, remand for the district court to do the same.

48

Dated:    July 28, 2025                    Respectfully submitted,

                                           ELIZABETH B. MURRILL
                                           Attorney General of Louisiana

                                           */s/ Caitlin Huettemann*
                                           J. BENJAMIN AGUIÑAGA
                                           Solicitor General
                                           ZACHARY FAIRCLOTH
                                           Deputy Solicitor General
                                           CAITLIN A. HUETTEMANN
                                           Assistant Solicitor General
                                           OFFICE OF THE ATTORNEY GENERAL
                                           1885 N. 3rd St.
                                           Baton Rouge, LA 70802
                                           (225) 888-7903
                                           HuettemannC@ag.louisiana.gov

                                           *Counsel for Defendants-Appellants*

49

## CERTIFICATE OF SERVICE

I certify that on July 28, 2025, I filed the foregoing brief with the Court's CM/ECF system, which will automatically send an electronic notice of filing to all counsel of record.

*/s/ Caitlin Huettemann*
CAITLIN A. HUETTEMANN

## CERTIFICATE OF COMPLIANCE

Pursuant to Fifth Circuit Rule 32.3, the undersigned certifies that this brief complies with:

(1) the type-volume limitations of Federal Rules of Appellate Procedure 32(a)(7)(B) and 28.1(e)(2)(A) because it contains 9,442 words; and

(2) the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Century Schoolbook) using Microsoft Word 2016 (the same program used to calculate the word count).

*/s/ Caitlin Huettemann*
CAITLIN A. HUETTEMANN

Dated:   July 28, 2025