No. 25-30128

_____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

_____

DEEP SOUTH TODAY, *doing business as* VERITE NEWS; GANNETT COMPANY, INCORPORATED; GRAY LOCAL MEDIA, INCORPORATED; NEXSTAR MEDIA, INCORPORATED; SCRIPPS MEDIA, INCORPORATED; TEGNA, INCORPORATED,

*Plaintiffs-Appellees/Cross-Appellants*,

*v.*

LIZ MURRILL, *in her official capacity as* ATTORNEY GENERAL OF LOUISIANA; ROBERT P. HODGES, *in his official capacity as* SUPERINTENDENT OF THE LOUISIANA STATE POLICE; HILLAR C. MOORE, III, *in his official capacity as* DISTRICT ATTORNEY OF EAST BATON ROUGE PARISH,

*Defendants-Appellants/Cross-Appellees.*

_____

On Appeal from the United States District Court for the
Middle District of Louisiana
Case No. 3:24-cv-00623 (Hon. John W. deGravelles)

_____

**REPLY BRIEF FOR PLAINTIFFS-APPELLEES/CROSS-APPELLANTS**

*[Caption Continued on Inside Cover]*

Grayson Clary
REPORTERS COMMITTEE
  FOR FREEDOM OF THE PRESS
1156 15th Street NW, Suite 1020
Washington, DC 20005
Telephone: (202) 795-9300
Facsimile: (202) 795-9310
gclary@rcfp.org

Scott L. Sternberg
M. Suzanne Montero
STERNBERG, NACCARI & WHITE, LLC
935 Gravier Street, Suite 1800
New Orleans, LA 70112
Telephone: (504) 324-1887
Facsimile: (504) 534-8961
scott@snw.law | suzy@snw.law

*Attorneys for Plaintiffs Deep South Today*, d/b/a *Verite News, Gannett Co., Inc., Gray Local Media, Inc., Nexstar Media, Inc., Scripps Media, Inc., and TEGNA Inc.*

Katie Townsend
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 229-7839
KTownsend@gibsondunn.com

*Attorney for Plaintiff Deep South Today*, d/b/a *Verite News*

# TABLE OF CONTENTS

Page

SUMMARY OF ARGUMENT ............................................................................1

ARGUMENT .................................................................................................3

    I.    The Act's plaint text allows officers to create roving forcefields. .......3

    II.   The Act violates the First Amendment on its face. .............................6

CONCLUSION ............................................................................................13

CERTIFICATE OF COMPLIANCE..................................................................15

CERTIFICATE OF SERVICE..........................................................................16

# TABLE OF AUTHORITIES

<u>Page(s)</u>

## Cases

*Ass'n of Club Execs. of Tex. v. Paxton*,
No. 24-50434 (5th Cir. July 14, 2025) ...............................................................7

*In re Crocker*,
941 F.3d 206 (5th Cir. 2019) ...............................................................5

*Doe I v. Landry*,
909 F.3d 99 (5th Cir. 2018) ...............................................................7, 12

*Free Speech Coalition v. Paxton*,
145 S. Ct. 2291 (2025) ...............................................................9

*Hines v. Pardue*,
117 F.4th 769 (5th Cir. 2024) ...............................................................9

*McCullen v. Coakley*,
573 U.S. 464 (2014) ...............................................................6, 10

*Minnesota Voters Alliance v. Mansky*,
585 U.S. 1 (2018) ...............................................................11, 12

*Moody v. NetChoice, LLC*,
603 U.S. 707 (2024) ...............................................................7, 11

*Nat'l Ass'n for Rational Sexual Offense Laws v. Stein*,
112 F.4th 196 (4th Cir. 2024) ...............................................................8

*Nat'l Press Photographers Ass'n v. McCraw*,
90 F.4th 770 (5th Cir. 2024) ...............................................................8

*Nicodemus v. City of South Bend*,
137 F.4th 654 (7th Cir. 2025) ...............................................................1, 2, 3, 5, 6, 7, 11, 12

*Reporters Committee v. Rokita*,
   No. 24-2927, 2025 WL 2218472 (7th Cir. Aug. 5, 2025) ............................ 1, 8

*Schenk v. Pro-Choice Network of W. New York*,
   519 U.S. 357 (1997) .................................................................................... 2, 7, 9

*Shuttlesworth v. City of Birmingham*,
   382 U.S. 87 (1965) ............................................................................................. 12

*Sisters for Life, Inc. v. Louisville-Jefferson Cnty.*,
   56 F.4th 400 (6th Cir. 2022) ............................................................................... 9

*Terrell v. Allgrun*,
   114 F.4th 428 (5th Cir. 2024) ........................................................................... 10

## TABLE OF AUTHORITIES
(*continued*)

Page(s)

*Turner v. Lieutenant Driver*,
   848 F.3d 678 (5th Cir. 2017) ............................................................................ 11

*United States v. Williams*,
   553 U.S. 285 (2008) ............................................................................................ 3

*Vanderlan v. United States*,
   135 F.4th 257 (5th Cir. 2025) ........................................................................... 10

### Statutes

Ind. Code § 35-44.1-2-14 .................................................................................... 4

La. Rev. Stat. § 14:109(a) ............................................................................ 1, 4, 6

### Other Authorities

Antonin Scalia & Bryan A. Garner, Reading Law: The
   Interpretation of Legal Texts 256 (2012) ......................................................... 5

Claire Sullivan, *Louisiana Governor Vetoes Bill to Keep People 25 Feet Away from Cops on Duty*, La. Illuminator (June 28, 2023), https://bit.ly/4lceHg1 ...........................................................................5

H.B. 85, 2023 Leg., Reg. Sess. (La. 2023), https://perma.cc/FD89-KHWK........................................................................................5

*Retreat*, Merriam-Webster Thesaurus, https://perma.cc/5DJN-Q5FJ (last visited July 31, 2025) .....................................................4

## SUMMARY OF ARGUMENT

In Louisiana—and only in Louisiana—it is a crime to "knowingly or intentionally approach within twenty-five feet of a peace officer . . . after the peace officer has ordered the person to stop approaching or to retreat," for any reason or for no reason.  La. Rev. Stat. § 14:109(a).  The only other federal court of appeals to address a comparable (but narrower) statute has held that such a law triggers First Amendment scrutiny on its face, *see Nicodemus v. City of South Bend*, 137 F.4th 654, 663–64 (7th Cir. 2025); that it must confront at least intermediate scrutiny, *see id.* at 668–70; and that the dispositive question in that analysis is whether an individual can "comply with the buffer law by remaining in place," or if officers can instead order the press and public to "move away"—forcing them to navigate at their peril a constantly roving "force field," *id.* at 669.[1]  Louisiana's law, which by its plain text authorizes orders "to retreat," La. Rev. Stat § 14:109(a), creates just that chilling risk and violates the First Amendment on its face.

---

[1]    As discussed in Plaintiffs' 28(j) letter, the Seventh Circuit has also recently held that Indiana's buffer law is void for vagueness.  *Reps. Comm. v. Rokita*, No. 24-2927, 2025 WL 2218472, at *6–7 (7th Cir. Aug. 5, 2025).

Defendants' brief response to Plaintiffs' facial First Amendment challenge engages none of those points—even as it silently invites this Court to open a direct circuit split on those issues. *See* Appellants/Cross-Appellees' Reply Br. at 43–46. And after first insisting that the Act is valid because it "does not say 'that an officer may use the buffer law to order a person to move *away*,'" Opening Br. of Appellants at 7 (quoting *Nicodemus*, 137 F.4th at 662), Defendants appear to have abandoned that claim in response to the observation that Louisiana's statute does say just that.

The result is that the press and public must be in "constant motion and constantly on alert" whenever an officer summons a 25-foot bubble, with a staggering risk of "inadvertent non-compliance." *Nicodemus*, 137 F.4th at 670. Faced with the same dangers, the Supreme Court has already made the controlling point clear. Even *if* Louisiana had developed evidence of "physically abusive conduct [and] harassment of the police"— here, it never did—this sweeping solution "cannot be sustained" because "this broad prohibition on speech 'floats,'" burdening wildly more speech than necessary. *Schenk v. Pro-Choice Network of W. New York*, 519 U.S. 357,

377 (1997). For the reasons given herein, Plaintiffs respectfully urge this Court to reverse the dismissal of Plaintiffs' facial First Amendment claim.

## ARGUMENT

### I.    The Act's plaint text allows officers to create roving forcefields.

In any facial First Amendment challenge, the first step "is to construe the challenged statute" to understand the extent to which it burdens First Amendment rights. *United States v. Williams*, 553 U.S. 285, 293 (2008). In these proceedings, though, Louisiana has struggled to commit to an account of what the Act says. In the District Court, Defendants agreed with Plaintiffs that the Act authorizes officers to order individuals to "step back" or "step away." ROA.204. On appeal, Defendants reversed course in the hopes of squaring the Act with the Seventh Circuit's decision in *Nicodemus v. City of South Bend*, arguing for the first time that the Act "does not say 'that an officer may use the buffer law to order a person to move *away*.'" Opening Br. of Appellants at 7 (quoting *Nicodemus*, 137 F.4th at 662). Their latest brief—in response to Plaintiffs' observation that Louisiana's law does in fact say that officers may issue orders "to retreat,"

La. Rev. Stat. § 14:109(a)—simply goes silent on the question, caught between what the Act's plain text provides and their prior decision to peg the Act's constitutionality to the claim that the law does not create a "floating 'forcefield,'" Opening Br. of Appellants at 7 (quoting ROA.224).

The statute is clear: The Act expressly makes it a crime to "knowingly or intentionally approach within twenty-five feet of a peace officer who is lawfully engaged in the execution of [their] duties after the peace officer has ordered the person to stop approaching *or to retreat*," La. Rev. Stat. § 14:109(a) (emphasis added), where the statute in *Nicodemus* applied only to a person "who knowingly or intentionally approaches within twenty-five (25) feet of a law enforcement officer lawfully engaged in the execution of the law enforcement officer's duties after the law enforcement officer has ordered the person to stop approaching," period, Ind. Code § 35-44.1-2-14. And to "retreat," of course, means "to move back or away." *Retreat*, Merriam-Webster Thesaurus, https://perma.cc/5DJN-Q5FJ (last visited August 17, 2025). As a result, individuals could comply with Indiana's law

"by remaining in place," *Nicodemus*, 137 F.4th at 669, but a person trying to stay on the right side of *this* statute must "be in constant motion," *id.* at 670.

If the plain text left any doubt, the statutory history makes clear that Louisiana's broader language was deliberate. *See In re Crocker*, 941 F.3d 206, 213 (5th Cir. 2019) (looking to "[e]nacted revisions in the wording of statutes" as a guide to plain meaning). When a version of the 25-foot law was first introduced in Louisiana, it mirrored Indiana's verbatim and only authorized orders "to stop approaching." H.B. 85, 2023 Leg., Reg. Sess. (La. 2023), https://perma.cc/FD89-KHWK. The law was then amended to "insert '<u>or to retreat</u>.'" Amend. No. 1, H.B. 85, 2023 Leg., Reg. Sess. (La. 2023), https://perma.cc/U328-K3CW.[2] And it should go without saying that the adoption of an amendment "presumptively connotes a change in

---

[2] House Bill 85 was ultimately vetoed by then-Governor Edwards because it would "chill exercise of First Amendment rights." Claire Sullivan, *Louisiana Governor Vetoes Bill to Keep People 25 Feet Away from Cops on Duty*, La. Illuminator (June 28, 2023) (quotation marks omitted), https://bit.ly/4lceHg1. The Act was then reintroduced during the 2024 session with the amendment baked in.

meaning." *In re Crocker*, 941 F.3d at 213 (quoting Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 256 (2012)).

Defendants cannot seriously maintain that Louisiana lawmakers voted for an amendment that changed nothing and means nothing. By authorizing orders "to retreat," La. Rev. Stat. § 14:109(a), Louisiana created exactly the sort of unconstitutional "force field" that the Seventh Circuit construed Indiana's narrower law to avoid, *Nicodemus*, 137 F.4th at 669.

## II.   The Act violates the First Amendment on its face.

As *Nicodemus* likewise explained, the Act triggers First Amendment scrutiny on its face—even if it "says nothing about speech on its face"—because it "'restricts' those who want to engage in protected First Amendment activity from 'access[ing]' traditional public forums[.]" 137 F.4th at 663 (quoting *McCullen v. Coakley*, 573 U.S. 464, 476 (2014)). And such a law survives review under the First Amendment, if at all, only if its sweep is "narrowly tailored to serve a significant government interest, and leave[s] open ample alternative channels of communication." *Id.* at 664 (quotation marks omitted). The critical question—because it determines

6

both how much speech or newsgathering is burdened and whether ample

alternative channels exist—is whether the buffer permits individuals

exercising their First Amendment rights to "stay put" and continue doing

so, or whether they must "move away" to respect a roving "force field."

*Id.* at 669. But despite the Supreme Court's clear guidance that "floating

buffer zones burden more speech than necessary to serve the relevant

governmental interests" because it is too difficult "to know how to remain

in compliance," *Schenk*, 519 U.S. at 378–79, Louisiana chose that option.

Defendants' short discussion of Plaintiffs' facial First Amendment

claim refuses to engage with the on-point analysis of *Nicodemus*, in favor of

reiterating that the facial-challenge inquiry asks "whether a substantial

number of the law's applications are unconstitutional, judged in relation to

the statute's plainly legitimate sweep." Appellants/Cross-Appellees' Reply

Br. at 43 (quoting *Moody v. NetChoice, LLC*, 603 U.S. 707, 723 (2024)). But

this Court explained both before and after *Moody* that applying the relevant

tier of scrutiny is how this Court determines what that ratio is. *See Ass'n of*

*Club Execs. of Tex. v. Paxton*, No. 24-50434, at *16 n.10 (5th Cir. July 14, 2025)

(applying intermediate scrutiny "will usually obviate the need to analyze overbreadth" (internal quotation omitted); *Doe I v. Landry*, 909 F.3d 99, 111 (5th Cir. 2018); *Nat'l Press Photographers Ass'n v. McCraw*, 90 F.4th 770, 794 (5th Cir. 2024).  Other circuits take the same approach.  *See Nat'l Ass'n for Rational Sexual Offense Laws v. Stein*, 112 F.4th 196, 207 (4th Cir. 2024) (an "overbreadth challenge . . . requires that a content-neutral statute burdening First Amendment activities pass intermediate scrutiny").

Defendants resist any discussion of First Amendment scrutiny, of course, because the Act reflects no tailoring of any kind; given yet another chance, Defendants' brief again does not dispute that an officer may issue an order for any reason or no reason—"[a] good reason, a bad reason, [or] a reason the officer just makes up[.]"  *Reps. Comm*, 2025 WL 2218472, at *6 (interpreting Indiana's police-buffer statute).  Instead, Defendants resort to insisting that no fit between means and ends is required here because "narrow tailoring is reserved for *strict* scrutiny only."  Appellants/Cross-

8

Appellees' Reply Br. at 41.[3]  Defendants are wrong.  "[T]o survive

intermediate scrutiny, a restriction on speech or expression must be

narrowly tailored to serve a significant governmental interest."  *Hines v.*

*Pardue*, 117 F.4th 769, 779 (5th Cir. 2024) (quotation marks omitted).

As discussed above, the "lack of certainty" intrinsic in attempting to

comply with a 25-foot roving forcefield would suffice to conclude that "the

floating buffer zones burden more speech than necessary to serve the

relevant governmental interests" for purposes of intermediate scrutiny.

*Schenk*, 519 U.S. at 378–79.  And while the Act "does not have to be the *least*

restrictive means of advancing the State's interest," *Hines*, 117 F.4th at 784

(emphasis added)—the difference between strict and intermediate scrutiny

that the Supreme Court reiterated in *Free Speech Coalition, Inc. v. Paxton*, 145

S. Ct. 2291, 2317 (2025)—the burden also "rests with the State to prove that

---

[3]     Defendants make their arguments relevant to intermediate scrutiny
first in response to Plaintiffs' as-applied claim, but also incorporate those
arguments by reference in their response to Plaintiffs' facial claim.  *See*
Appellants/Cross-Appellees' Reply Br. at 44 n.2.  The issue is therefore
appropriately addressed in this reply in support of Plaintiffs' cross-appeal.

it seriously undertook to address the problem with less intrusive tools readily available to it," *Hines*, 117 F.4th at 784 (quotation marks omitted).

When dealing with a prophylactic buffer zone in particular, the classic less-intrusive tool that intermediate scrutiny must weigh is a "no-obstruction law," whose "ends and means fit snugly." *Sisters for Life, Inc. v. Louisville-Jefferson Cnty.*, 56 F.4th 400, 405–06 (6th Cir. 2022) (Sutton, C.J.); *see also McCullen*, 573 U.S. at 494 (Massachusetts failed to show that obstruction statutes were ineffective before resorting to abortion buffer zone). Here, Louisiana offers no response to the observation that the state's garden-variety obstruction statute would already prohibit efforts to film law enforcement that rise to the level of physical obstruction. *See Terrell v. Allgrun*, 114 F.4th 428, 436–37 (5th Cir. 2024). And perhaps the most obvious indicator that Louisiana law already provides officers with abundant tools is the fact that Defendants continue to believe their best strategy for salvaging the Act is their (misplaced) speculation that it might never be enforced. *See* Appellants/Cross-Appellees' Reply Br. at 38.

Though Defendants refrain from saying so, their resistance to applying intermediate scrutiny to Plaintiffs' facial challenge invites this Court to split from the Seventh Circuit's analysis of a statute Defendants themselves say is "near identical," Opening Br. of Appellants at 36, without explaining where *Nicodemus* erred or attempting to distinguish it, *but see Vanderlan v. United States*, 135 F.4th 257, 268 (5th Cir. 2025) ("As we have said before, we do not create an unnecessary circuit split absent compelling reasons."). And for all that, the stakes of the maneuver are hardly clear.

Even if this Court were to prefer an unstructured tally of the Act's individual applications, the overwhelming majority of those applications will unfold in the public fora where citizens typically encounter police. Each of those restrictions on access to a public forum implicates the First Amendment, *see Nicodemus*, 137 F.4th at 663, and must—like the statute as a whole—be "narrowly tailored to serve a significant governmental interest," *Turner v. Lieutenant Driver*, 848 F.3d 678, 690 (5th Cir. 2017) (quotation marks omitted). But the set of "possible applications" that are narrowly tailored to such an interest, *Moody*, 603 U.S. at 780 (Alito, J., concurring), is

a tiny subset of the applications that aren't, because the Act requires no tailoring and authorizes officers to issue orders for any reason (or none). And even if the law has some fringe applications in nonpublic fora, those settings, too, require that an official's discretion be "guided by objective, workable standards," *Minn. Voters All. v. Mansky*, 585 U.S. 1, 21 (2018)—in other words, that there be "some sensible basis for distinguishing what may come in from what must stay out," *id.* at 16. Because the Act provides no basis (sensible or otherwise) and no standards (workable or otherwise) to guide an officer in deciding who should be ordered to retreat, the overwhelming balance of its applications violates the First Amendment.

Unsurprisingly, then, the two analytical frameworks produce the same answer—as they typically do. *See Doe I*, 909 F.3d at 111. On its face, the Act "says that a person may stand on a public sidewalk" in Louisiana "only at the whim of any police officer." *Shuttlesworth v. City of Birmingham*, 382 U.S. 87, 90 (1965). On its face, it sets the press and public the impossible task of remaining "in constant motion and constantly on alert" to avoid arrest and prosecution when an officer—at a snap—

summons a roving forcefield. *Nicodemus*, 137 F.4th at 670. And on its face, the Act poses an "ever-present potential for arbitrarily suppressing First Amendment liberties." *Shuttlesworth*, 382 U.S. at 91. This Court should reverse the dismissal of Plaintiffs' facial First Amendment challenge.

## CONCLUSION

For the reasons given herein, Plaintiffs respectfully urge this Court to reverse the dismissal of Plaintiffs' facial First Amendment claim.

Dated: August 18, 2025

Respectfully submitted,

*/s/ Grayson Clary*

Grayson Clary
REPORTERS COMMITTEE FOR
  FREEDOM OF THE PRESS
1156 15th Street NW, Suite 1020
Washington, DC 20005
Phone: (202) 795-9300
Facsimile: (202) 795-9310
gclary@rcfp.org

Scott L. Sternberg
La. Bar No. 33390
M. Suzanne Montero
La. Bar No. 21361
STERNBERG, NACCARI & WHITE, LLC
935 Gravier Street, Suite 1800
New Orleans, LA 70112
Phone: (504) 324-1887

Facsimile: (504) 534-8961
scott@snw.law | suzy@snw.law

*Attorneys for Plaintiffs-Appellees Deep
South Today, d/b/a Verite News, Gannett
Co., Inc., Gray Local Media, Inc., Nexstar
Media, Inc., Scripps Media, Inc., and
TEGNA Inc.*

Katie Townsend
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
Phone: (213) 229-7839
KTownsend@gibsondunn.com

*Attorney for Plaintiff-Appellee Deep South
Today, d/b/a Verite News*

14

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Cir. R. 32.3 and Fed. R. App. P. 28.1(e)(2)(C) because it contains 2,400 words, excluding the parts exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Cir. R. 32.2 and Fed. R. App. P. 32(a)(5), and the type-style requirements of Fed. R. App. P. 32(a)(6), because it is set in 14-point Palatino Linotype, a proportionally spaced typeface, and was prepared using Microsoft Word for Mac (version 16.78).

Date: August 18, 2025

*/s/ Grayson Clary*
Grayson Clary
*Counsel of Record for*
*  Plaintiffs-Appellees*
REPORTERS COMMITTEE
  FOR FREEDOM OF THE PRESS

## CERTIFICATE OF SERVICE

I, Grayson Clary, do hereby certify that I have filed the foregoing

Reply Brief for Plaintiffs-Appellees/Cross-Appellants electronically with

the Clerk of the Court for the United States Court of Appeals for the Fifth

Circuit using the appellate CM/ECF system August 18, 2025.

I certify that all participants in this case are registered CM/ECF users

and that service will be accomplished by the appellate CM/ECF system.


Date: August 18, 2025                    */s/ Grayson Clary*
                                         Grayson Clary
                                         *Counsel of Record for*
                                           *Plaintiffs-Appellees*
                                         REPORTERS COMMITTEE
                                           FOR FREEDOM OF THE PRESS